# EXHIBIT "G"

# ASSIGNMENT OF MANAGEMENT AGREEMENT
# AND SUBORDINATION OF MANAGEMENT FEES

This ASSIGNMENT OF MANAGEMENT AGREEMENT AND SUBORDINATION OF MANAGEMENT FEES, dated as of the Closing Date (as amended, restated, replaced, supplemented or otherwise modified from time to time, this "***Assignment***"), by and among MBMK PROPERTY HOLDINGS LLC, a Delaware limited liability company (the "***Borrower***"), COREVEST AMERICAN FINANCE LENDER LLC, a Delaware limited liability company (together with its permitted successors and assigns, collectively, "***Lender***"), and PROPERTY PALS LLC, a Pennsylvania limited liability company (together with its permitted successors and assigns, collectively, "***Manager***").

### RECITALS:

WHEREAS, Borrower is party to that certain Loan Agreement, dated as of the date hereof, by and between Borrower and Lender (as it may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "***Loan Agreement***");

WHEREAS, pursuant to that certain Property Management Agreement, between Borrower and Manager (as it may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "***Management Agreement***") (a true and correct copy of such Management Agreement is attached hereto as Exhibit A), Borrower employed Manager to rent, lease, operate and manage the Properties and Manager is entitled to certain management fees (the "***Management Fees***") thereunder;

WHEREAS, to induce Lender to make the Loan under the Loan Agreement, Borrower has agreed to assign the Management Agreement and Manager has agreed to subordinate its interest under the Management Agreement in lien and payment to the Obligations; and

WHEREAS, capitalized terms used herein without definition have the respective meanings ascribed thereto in the Loan Agreement.

NOW, THEREFORE, in consideration of the covenants set forth in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree, represent and warrant as follows:

**Section 1.**    **Assignment and Subordination of Management Agreement**.

(a)    As additional collateral security for the Obligations, Borrower hereby conditionally transfers, sets over and assigns to Lender all of Borrower's right, title and interest in and to the Management Agreement, said transfer and assignment to, at Lender's option, automatically become a present, unconditional assignment upon the occurrence and during the continuance of an Event of Default under any Loan Document.

(b)    The Management Agreement and any and all liens, rights and interests (whether choate or inchoate and including, without limitation, all mechanic's and materialmen's liens under applicable law) owed, claimed or held, by Manager in and to the Properties, are and shall be in all respects subordinate and inferior to the liens and security interests created, or to be created, for the benefit of Lender, and securing the Obligations under the Loan Documents, and all renewals, extensions, increases, supplements, amendments, modifications or replacements

thereof.

Section 2. **Subordination of Management Fees**. The Management Fees and all rights and privileges of Manager to the Management Fees are hereby, and shall at all times continue to be, subject and unconditionally subordinate in all respects in Lien and payment to the Lien and payment of the Loan Documents and to any renewals, extensions, modifications, assignments, replacements or consolidations thereof.

Section 3. **Termination**. This Assignment and all of Lender's right, title and interest hereunder with respect to the Management Agreement shall terminate on the payment and performance in full of the Obligations.

Section 4. **Cooperation With Replacement Manager**. Prior to the effectiveness of any termination of the Management Agreement, any resignation by Manager or any replacement of Manager (each a "*Transition Event*"), Manager agrees to cooperate with Borrower and Lender or its designee, and to cause Manager's officers and employees to cooperate, in the transition to one or more replacement Approved Property Managers (each, a "*Replacement Manager*"). Without limiting the foregoing, Manager shall use diligent, commercially reasonable efforts to provide, a list of all permits and licenses held by Manager, Borrower or any of their respective Affiliates that are necessary to the management of the Properties as then currently managed by Manager, together with such information relating to such Properties and reasonable access to senior corporate management and employees of Manager and the Restricted Parties that such Replacement Manager may reasonably require in order to complete all applications for any replacement licenses relating to the management of such Properties and in order for such Replacement Manager to respond to any information requests of applicable regulators. In the event of any Transition Event, Manager shall, and hereby agrees to, fully cooperate in so transferring its responsibility to one or more Replacement Managers and effectuate such transfer no later than thirty (30) days from the date the Management Agreement is terminated or the date of Manager's resignation or replacement.

Section 5. **Transition Services**. During the period commencing upon a Transition Event and continuing until the final transition of the management of the applicable Properties from Manager to one or more Replacement Managers but not in excess of ninety (90) days unless otherwise agreed to by Manager (such period, a "*Transition Period*"), Manager shall take all steps reasonably necessary to continue the provision of management services necessary to continue the uninterrupted operation of the applicable Properties and to transition management of the applicable Properties to one or more Replacement Managers (the "*Transition Services*") and shall cooperate with Lender or its designee in providing such Transition Services. Without limiting the generality of the foregoing, the Transition Services to be provided by Manager shall include:

(a) Management of the applicable Properties by Manager during the Transition Period in the same general manner in which they were managed under the Management Agreement immediately prior to the Transition Event;

(b) Delivery to any potential Replacement Manager for the applicable Properties of all business information, financial information and other books and records of

2

Borrower which are in the control of Manager and, to the extent applicable, of Manager that pertain exclusively to, or are otherwise necessary for the day-to-day operation of, the applicable Properties in order to facilitate licensing of and/or management transition to such potential Replacement Manager (including, without limitation, keys, garage door openers and other personal property held in connection with the Properties, access to and assignment of bank accounts of Borrower and Manager related to any Property or the business of Borrower and all information relating to any marketing announcements prior to or during the Transition Period (1) of promotions, discounts or other inducements to customers to be made available at the applicable Properties during the Transition Period or thereafter, or (2) events that are scheduled to be held at the applicable Properties during the Transition Period or thereafter). To the extent applicable, any information to be provided hereunder shall be in electronic format that can be accessed and downloaded onto the analogous systems of any Replacement Manager;

(c) Providing onsite access to the offices of Manager for inspection of books and records and observation of operations; and make Manager's employees available at reasonable times and on reasonable notice to discuss with Lender or its designee such matters related to transition as Lender or its designee may reasonably request in order to effect transition of uninterrupted operations of the applicable Properties to a Replacement Manager;

(d) Providing such accounting information to any Replacement Manager as may reasonably be necessary in order to prepare financial statements and accounting records for the applicable Properties;

(e) Taking such other and further preparatory steps as may be reasonably requested by Lender or its designee and not otherwise inconsistent with the Management Agreement to be performed by Manager while Transition Services are being provided to facilitate the continuation of uninterrupted operations from and after the occurrence of a Transition Event;

(f) Taking such other and further commercially reasonable steps as may be requested by Lender or its designee, to facilitate the transition of the applicable Properties from Manager to any Replacement Manager and to enable such Replacement Manager to promptly assume control over operation of the applicable Properties upon the conclusion of the Transition Period; which shall include without limitation, attending meetings with Lender or its designee and/or any potential Replacement Manager, upon reasonable notice, to discuss the transition;

(g) Taking all commercially reasonable steps within Manager's control necessary to keep in full force and effect during the Transition Period all applicable insurance policies and coverages, subject to the availability from Borrower of any necessary funds therefor; and

(h) Taking such reasonable steps as may be requested by Lender or its designee to preserve and protect the confidentiality of all confidential information in the possession of Manager, including ensuring that Lender or its designee and any Replacement Manager have access to the same and the purging, at the conclusion of the Transition Period, of all such

3

confidential information from Manager's files to the extent not otherwise required under law to be maintained by Manager.

During the Transition Period, Manager shall be compensated by Borrower for its out-of-pocket costs and expenses incurred in performing Transition Services and shall be compensated by Borrower for services provided under clause (a) above in accordance with the Management Agreement for so long as such services are actually provided by Manager.

**Section 6.** **Estoppel**. Manager represents and warrants that (a) the Management Agreement is in full force and effect and has not been modified, amended or assigned other than pursuant to this Assignment, (b) neither Manager nor Borrower is in breach of or default under any of the terms, covenants or provisions of the Management Agreement and Manager knows of no event which, but for the passage of time or the giving of notice or both, would constitute a breach of or default under the Management Agreement, (c) neither Manager nor Borrower has commenced any action or given or received any notice for the purpose of terminating the Management Agreement and (d) the Management Fees and all other sums due and payable to Manager under the Management Agreement as of the date hereof have been paid in full.

**Section 7.** **Compliance with Management Agreement.**

(a) Manager agrees that it will act in conformity with the provisions of this Assignment and Lender's rights hereunder and act in compliance with the Management Agreement. Manager agrees to promptly (i) perform and/or observe the covenants and agreements required to be performed and observed by it under the Management Agreement in a commercially reasonable manner and (ii) notify Lender of any material breach of or default under the Management Agreement of which it is aware. Further, Manager hereby agrees (w) not to contest or impede, or support any other Person in contesting or impeding, the exercise by Lender of any right it has under or in connection with this Assignment or contest or impede, or support any other Person in contesting or impeding, in any proceeding (including any insolvency or liquidation proceeding whether under bankruptcy law or otherwise) the liens and security interests granted by Borrower and its Affiliates under the Loan Agreement and the other Loan Documents; (x) that it shall, in the manner provided for in this Assignment, give at least thirty (30) days prior written notice to Lender of its intention to terminate the Management Agreement or otherwise discontinue its management of a Property, (y) not amend any of the terms or provisions of the Management Agreement without the prior consent of Lender and (z) all leases and other agreements relating to the leases and each tenant's use and occupancy of the related Property shall be entered into in either in the name of Borrower or the name of Manager as an authorized agent of Borrower and for the specific benefit of Borrower.

(b) Manager hereby agrees not to take (or permit any of its affiliates to take) any action not authorized to be taken by it with respect to Borrower or the Properties pursuant to the Management Agreement, or any action otherwise outside the scope of the authority granted to it under the Management Agreement, including without limitation, engaging in any of the following:

(i) fraud or intentional misrepresentation in connection with Borrower or the Properties;

4

    (ii) any misapplication, misappropriation or conversion of (x) any insurance proceeds paid by reason of any casualty or under any insurance policy, (y) any awards or other amounts received in connection with a condemnation or (z) any rents, proceeds, other collections or other amounts in the possession or control of Manager, in each case with respect to the Borrower or the Properties, including the failure to deposit such amounts into any account if so required pursuant to this Assignment or the Loan Documents;

    (iii) causing or suffering to exist any physical waste to any Property or causing or permitting the removal or destruction of any portion of any Property, in each case, that materially and adversely affects the value of such Property, and subject to the availability of funds from Borrower to the extent necessary to prevent any such matter from occurring; or

    (iv) committing any criminal act, or violating any antidiscrimination laws and similar laws in connection with the Properties.

  (c) Anything to the contrary contained in the Management Agreement to the contrary notwithstanding, neither Borrower nor Lender shall be responsible for indemnifying, defending or holding harmless Manager in any way relating to (i) any acts or omissions of Manager or its agents, officers or employees constituting fraud, negligence or willful misconduct or (ii) any breach of any representation, warranty or covenant made by Manager under the Management Agreement.

  (d) Manager agrees to indemnify, defend (with counsel acceptable to the indemnified party) and hold harmless Borrower and Lender and their respective members, partners, directors, officers, employees, agents, representatives, shareholders and Affiliates from and against any and all suits, liabilities, damages, or claims for damages (including any reasonable attorneys' fees and other reasonable costs and expenses relating to any such suits, liabilities or claims), in any way relating to (i) any acts or omissions of Manager or its agents, officers or employees in the performance of the services under the Management Agreement constituting fraud, negligence or willful misconduct or (ii) any breach of any representation, warranty or covenant made by Manager hereunder.

  **Section 8.** **<u>Agreement by Borrower and Manager</u>**.  Borrower and Manager hereby agree that upon the occurrence and during the continuance of an Event of Default under the Loan Documents during the term of this Assignment or upon the occurrence of any event which would entitle Lender to terminate, or cause the termination of, the Management Agreement in accordance with the terms of the Loan Documents (a) Manager shall, at the request of Lender, continue to perform all of Manager's obligations under the terms of the Management Agreement with respect to the Properties or (b) at the option of Lender exercised by written notice to Borrower and Manager, Borrower and Manager shall immediately terminate the Management Agreement and Manager shall transfer its responsibility for the management of the Properties to one or more Managers selected in accordance with the Loan Agreement.  Notwithstanding clause (a) above, Manager may, upon at least ninety days (90) notice to Lender, resign as Manager under and pursuant to the Management Agreement; provided, however, such resignation shall not be effective until such time as Borrower has executed one or more Management Agreements to replace Manager with one or more Replacement Managers.

5

**Section 9.** **Receipt of Management Fees**. Manager shall be entitled to receive any Management Fees or other fee, commission or other amount payable to Manager under the Management Agreement for and during any period of time that any Event of Default has occurred and is continuing for so long as Borrower or Lender has not exercised its right to terminate the engagement of Manager under the Management Agreement. Notwithstanding anything to the contrary (a) Manager shall not be obligated to return or refund to Lender any Management Fee or other fee, commission or other amount already received by Manager prior to the occurrence of the Event of Default, and to which Manager was entitled under this Assignment and (b) in the event Borrower loses possession of the Properties in connection with exercise by Lender of its rights or remedies pursuant to the Loan Documents, Manager shall be entitled to collect any Management Fee or other fee, commission or other amount accrued but unpaid prior to such loss of possession, and to which Manager was entitled under the Management Agreement and this Assignment with respect to such Property.

**Section 10.** **Consent and Agreement by Manager**. Manager hereby acknowledges and consents to this Assignment and the terms and provisions of Section 6.9 of the Loan Agreement (a copy of which has been received by Manager). Manager agrees that it will act in conformity with the provisions of this Assignment, such provisions of the Loan Agreement and Lender's rights hereunder or otherwise related to the Management Agreement. In the event that the responsibility for the management of a Property is transferred from Manager in accordance with the provisions hereof, Manager shall, and hereby agrees to, fully cooperate in transferring its responsibility to a new management company and use commercially reasonable efforts to effectuate such transfer no later than ninety (90) days from the date the Management Agreement is terminated. Further, Manager hereby agrees not to (a) contest or impede the exercise by Lender of any right it has under or in connection with this Assignment; (b) terminate the Management Agreement or otherwise discontinue its management of a Property without at giving at least ninety (90) days prior written notice to Lender or (c) amend in any material respect any of the terms or provisions of the Management Agreement without the prior consent of Lender.

**Section 11.** **Lender's Agreement**. So long as no Event of Default is continuing, Lender agrees to permit any sums due to Borrower under the Management Agreement to be paid directly to Borrower.

**Section 12.** **Further Assurances**. Manager further agrees to (a) execute such affidavits and certificates as Lender shall reasonably require to further evidence the agreements herein contained, (b) on reasonable request from Lender, furnish Lender with copies of such information as Borrower is entitled to receive under the Management Agreement and (c) reasonably cooperate with Lender's representatives in any inspection of all or any portion of the Properties. Manager hereby acknowledges that some, or all, permits, licenses and authorizations necessary for the use, operation and maintenance of the Property (collectively, the "***Permits***") may be held by, or on behalf of, Manager. By executing this Agreement, Manager agrees that it is holding or providing all such Permits for the benefit of Borrower. As security for the repayment of the Obligations by Borrower in accordance with the Loan Agreement, to the extent permitted by applicable law, Manager hereby grants to Lender a security interest in and to the Permits. Moreover, Manager hereby agrees that, upon the occurrence and during the continuance of an Event of Default, it will assign the Permits to Lender if such Permits are assignable or otherwise continue to hold such Permits for the benefit of Lender until such time as Lender can obtain such Permits in its own name or the name of a nominee.

6

**Section 13.    Revenues and Security Deposits.**  Manager acknowledges and agrees that, if required by the Loan Agreement, notwithstanding anything to the contrary in the Management Agreement, all Revenues relating to the Properties shall be deposited directly into to a "Rent Deposit Account" or the "Cash Management Account", Manager shall not deduct any property management fees, expenses or other amounts from Revenue received prior to depositing the same and all security deposits shall be deposited directly into a "Security Deposit Account" as required by and in accordance with the Loan Agreement.

**Section 14.    Manager Not Entitled to Rents.**  Manager acknowledges and agrees that it is collecting and processing rents solely as the agent for Borrower and Manager has no right to, or title in, rents or other Revenues.  Notwithstanding anything to the contrary in the Management Agreement, Manager acknowledges and agrees that rents and other Revenues are the sole property of Borrower, encumbered by the lien of the Loan Agreement and other Loan Documents in favor of Lender.  Furthermore, Manager acknowledges that as further security for the Loan, Borrower has executed and delivered the Mortgages assigning to Lender, among other things, all of Borrower's right, title and interest in and to all revenues of the Properties.  In any bankruptcy, insolvency or similar proceeding Manager, or any trustee acting on behalf of Manager, waives any claim to rents and other Revenues.

**Section 15.    Governing Law; Jurisdiction; Waiver of Jury Trial; Etc**.

(a)    Governing Law. THIS ASSIGNMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK PURSUANT TO SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.

(b)    Submission to Jurisdiction.  ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER, BORROWER OR MANAGER ARISING OUT OF OR RELATING TO THIS ASSIGNMENT MAY BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN NEW YORK, NEW YORK.  LENDER, BORROWER AND MANAGER HEREBY (i) IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY OBJECTION THAT THEY MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN SUCH A COURT AND ANY CLAIM THAT ANY SUCH PROCEEDING BROUGHT IN SUCH A COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM, (ii) IRREVOCABLY SUBMIT TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUCH SUIT, ACTION OR PROCEEDING, AND (iii) IRREVOCABLY CONSENT TO SERVICE OF PROCESS BY MAIL, PERSONAL SERVICE OR IN ANY OTHER MANNER PERMITTED BY APPLICABLE LAW, AT THE ADDRESSES SET FORTH ON THE SIGNATURE PAGES HERETO (EXCEPT THAT ANY PARTY HERETO MAY CHANGE ITS ADDRESS AND OTHER CONTACT INFORMATION FOR PURPOSES HEREOF AT ANY TIME BY SENDING A WRITTEN NOTICE TO THE OTHER PARTIES TO THIS AGREEMENT IN THE MANNER PROVIDED FR IN SECTION 16 HEREOF) (AND AGREE THAT SUCH SERVICE AT SUCH ADDRESS IS SUFFICIENT TO CONFER PERSONAL JURISDICTION OVER ITSELF IN ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY SUCH COURT, AND OTHERWISE CONSTITUTES EFFECTIVE AND BINDING SERVICE IN EVERY RESPECT).

(c)    Waiver of Jury Trial. BORROWER, LENDER AND MANAGER, TO THE FULLEST EXTENT THAT THEY MAY LAWFULLY DO SO, HEREBY AGREE NOT TO

ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVE ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS ASSIGNMENT, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION HEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER, LENDER AND MANAGER AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.  BORROWER, LENDER AND MANAGER ARE EACH HEREBY INDIVIDUALLY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER.

Section 16. **Notices**. All notices, consents, approvals and requests required or permitted hereunder shall be given in writing by expedited prepaid delivery service, either commercial or United States Postal Service, with proof of delivery or attempted delivery, addressed as set forth on the signature pages hereto (except that any party hereto may change its address and other contact information for purposes hereof at any time by sending a written notice to the other parties to this Agreement in the manner provided for in this Section).  A notice shall be deemed to have been given when delivered or upon refusal to accept delivery.

Section 17. **SPE**.  Manager agrees that it shall not perform its duties under the Management Agreement or otherwise act in a manner that would result in Borrower's failure to be a "Special-Purpose Entity" as defined in the Loan Agreement (a copy of which has been received by Manager). Manager further agrees that it will not seek (or consent to) any substantive consolidation with respect to Borrower in connection with a proceeding under any bankruptcy or other insolvency proceeding.

Section 18. **Cash Management**. Manager hereby agrees that, notwithstanding any provision to the contrary set forth herein or in the Management Agreements, (a) Manager shall comply, to the extent applicable, with the provisions of the Loan Documents, final copies of which Manager acknowledges receiving, (b) in the event of a conflict between the terms hereof and/or of the Management Agreement, on the one hand, and the terms of the other Loan Documents, on the other hand, the terms of the other Loan Documents shall govern and (c) Manager shall not grant any Person signing authority over any "Operating Account" or "Security Deposit Account" other than employees of Manager.

Section 19. **Modification**. No modification, amendment, extension, discharge, termination or waiver of any provision of this Assignment, nor consent to any departure by any Lender, Manager or Borrower therefrom, shall in any event be effective unless the same shall be in a writing signed by the party or parties against whom enforcement is sought, and then such waiver or consent shall be effective only in the specific instance, and for the purpose, for which given.  Except as otherwise expressly provided herein, no notice to, or demand on, Lender, Manager or Borrower shall entitle Lender, Manager or Borrower to any other or future notice or demand in the same, similar or other circumstances.  Neither any failure nor any delay on the part of Lender in insisting upon strict performance of any term, condition, covenant or agreement, or exercising any right, power, remedy or privilege hereunder, shall operate as or constitute a waiver thereof, nor shall a single or partial exercise thereof preclude any other future exercise, or the exercise of any other right, power, remedy or privilege.  In particular, and not by way of limitation, by accepting payment after the due date of any amount payable under this Assignment, Lender shall not be deemed to have waived any right either to require prompt payment when due of all

other amounts due under this Assignment, or to declare a default for failure to effect prompt payment of any such other amount. Lender shall have the right to waive or reduce any time periods that Lender is entitled to under this Assignment in its sole and absolute discretion.

**Section 20.** **Liability**. This Assignment shall be binding upon and inure to the benefit of Borrower, Manager and Lender and their respective successors and assigns forever. Lender shall have the right to assign or transfer its rights under this Assignment in connection with any assignment of the Loan and the Loan Documents. Any assignee or transferee of Lender shall be entitled to all the benefits afforded to Lender under this Assignment. Neither Borrower nor Manager shall have the right to assign or transfer its rights or obligations under this Assignment without the prior written consent of Lender, as provided in the Loan Agreement, and any attempted assignment without such consent shall be null and void.

**Section 21.** **Inapplicable Provisions; Inconsistency.** If any term, covenant or condition of this Assignment is held to be invalid, illegal or unenforceable in any respect, this Assignment shall be construed without such provision. In the event of any inconsistency between the provisions of this Assignment and the provisions of the Management Agreement, the terms of this Assignment (as amended, restated, supplemented and otherwise modified in accordance with the terms hereof) will prevail.

**Section 22.** **Headings, etc**. The headings and captions of various paragraphs of this Assignment are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

**Section 23.** **Duplicate Originals, Counterparts**. This Assignment may be executed in any number of counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument. Copies of originals, including copies delivered by facsimile, pdf or other electronic means, shall have the same import and effect as original counterparts and shall be valid, enforceable and binding for the purposes of this Assignment.

**Section 24.** **Principles of Construction**. All references to sections, schedules and exhibits are to sections, schedules and exhibits in or to this Assignment unless otherwise specified. Unless otherwise specified, the words "hereof," "herein" and "hereunder" and words of similar import when used in this Assignment shall refer to this Assignment as a whole and not to any particular provision hereof or thereof. When used in this Assignment, the word "including" shall mean "including but not limited to". Unless otherwise specified, all meanings attributed to defined terms herein shall be equally applicable to both the singular and plural forms of the terms so defined. References herein to any Loan Document include such document as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time.

**Section 25.** **Miscellaneous**.

(a) Wherever pursuant to this Assignment (i) Lender exercises any right given to it to approve or disapprove, (ii) any arrangement or term is to be satisfactory to Lender or (iii) any other decision or determination is to be made by Lender, the decision of Lender to approve or disapprove, all decisions that arrangements or terms are satisfactory or not satisfactory and all other decisions and determinations made by Lender, shall be in the sole and absolute discretion of Lender and shall be final and conclusive, except as may be otherwise expressly and specifically

9

provided herein.

      (b)      Wherever pursuant to this Assignment it is provided that Borrower shall pay any costs and expenses, such costs and expenses shall include, but not be limited to, reasonable attorney's fees and out-of-pocket disbursements of Lender.

*[Signature Pages Follow]*

IN WITNESS WHEREOF, the undersigned have executed this Assignment as of the date and year first written above.

BORROWER:

MBMK PROPERTY HOLDINGS LLC,
a Delaware limited liability company

By: /s/ Matthew Breen
Name: Matthew Breen
Title: President


Address:

18 Campus Blvd., STE 100
Newtown Square, PA 19073
Attention: Matthew Breen

SIGNATURE PAGE TO ASSIGNMENT OF MANAGEMENT AGREEMENT
AND SUBORDINATION OF MANAGEMENT FEES

LENDER:

COREVEST AMERICAN FINANCE LENDER LLC, a Delaware limited liability company

By: /s/ J C Hoeffel
Name: J. Christopher Hoeffel
Title: CFO

Address:

CoreVest American Finance Lender LLC
1920 Main Street, Suite 850
Irvine, CA 92614
Attention: Head of Term Lending
Email: termloannotices@cvest.com

With a copy to:

CoreVest American Finance Lender LLC
c/o Fortress Investment Group
1345 Avenue of the Americas, 46th Floor
New York, NY 10105
Attention: General Counsel - Credit Funds
Email: gc.credit@fortress.com

With another copy to:

CoreVest American Finance Lender LLC
c/o Fortress Investment Group
1345 Avenue of the Americas, 46th Floor
New York, NY 10105
Attention: Michael Fallacara
Email: mfallacara@fortress.com

With another copy to:

Scoville Law, PLLC
700 Sleater Kinney RD SE, STE B-130
Lacey, WA 98503
Attention: Mark Scoville
Email: mark@scovillepllc.com

SIGNATURE PAGE TO ASSIGNMENT OF MANAGEMENT AGREEMENT
AND SUBORDINATION OF MANAGEMENT FEES

MANAGER:

PROPERTY PALS LLC,
a Pennsylvania limited liability company

By: _____
Name: Matthew Breen
Title: Member

By: _____
Name: Mohsin Khawaja
Title: Member


Address:

950 Surrey Dr.
Blue Bell, PA 19422
Attention: Matthew Breen and Mohsin Khawaja

SIGNATURE PAGE TO ASSIGNMENT OF MANAGEMENT AGREEMENT
AND SUBORDINATION OF MANAGEMENT FEES

EXHIBIT A

Management Agreement

(Attached)

**PROPERTY MANAGEMENT AGREEMENT**

**THIS PROPERTY MANAGEMENT AGREEMENT** (this "**Agreement**") is entered into as of the Closing Date by and between **MBMK PROPERTY HOLDINGS LLC**, a Delaware limited liability company (the "**Owner**"), and **PROPERTY PALS LLC**, a Pennsylvania limited liability company (the "**Manager**").

**RECITALS**

The Owner owns the Properties;

The Owner intends to finance the Properties pursuant to that certain Loan Agreement, dated as of the Closing Date, between Owner and CoreVest American Finance Lender LLC., a Delaware limited liability company (the "**Loan Agreement**");

Capitalized terms used herein but not defined herein shall have the meanings ascribed to them in the Loan Agreement; and

The Owner desires to engage Manager as manager of the Properties, and Manager desires to assume such duties on the terms and conditions set forth in this Agreement.

In consideration of the covenants herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**Section 1. Appointment.** On the terms and conditions set forth herein, Owner hereby engages the Manager to perform the Management Services, Marketing Services and the Administrative Services (as such terms are defined herein; collectively, the "**Services**") as described herein. The Manager hereby accepts such engagement.

**Section 2. Management Services.** During the Term, the Manager shall, subject to the terms hereof, perform all functions reasonably necessary to maintain, manage and administer the Properties (collectively, the "**Management Services**"), all in accordance with the Operation Standards. Without limiting the generality of the foregoing, the Manager will have the following specific duties in relation to the Properties:

(a) **Property Operations.** The Manager shall monitor and manage the Owner's property rights associated with the Properties, including negotiating Leases and Lease renewals (on behalf of the Owner) in the ordinary course of business. The Manager shall perform on behalf of the Owner any obligation reasonably required of Owner pursuant to any Lease or other agreement related to the Properties.

(b) **Administration of Leases.** The Manager shall, on behalf of the Owner, (i) invoice and use commercially reasonable efforts to collect all rents and other Revenues due under the Leases and otherwise with respect to the Properties, (ii) perform all services required to be performed by the Owner under the terms of the Leases and any other agreement related to the Properties and (iii) otherwise use commercially reasonable efforts to ensure compliance on the part of the Owner with the terms of each Lease and any other agreement related to the Properties, all in accordance with the Operation Standards. Owner hereby authorizes the Manager to take any action the Manager deems to be necessary or appropriate to enforce the terms of each Lease and any other agreement related to the Properties in accordance with the Operation Standards, including, but not limited to, the right to exercise (or not to exercise) any right such Owner may have to collect rent, other Revenues due under the Leases and any other Revenues (whether through judicial proceedings or otherwise), to terminate any Lease and/or to evict any Tenant. The Manager shall also have the right, in accordance with the Operation Standards, to compromise, settle, and otherwise resolve claims and disputes with regard to the Leases and any other agreement related to the Properties. The Manager may agree to any modification, waiver or amendment of any term of, forgive any payment on, and permit the release of any Tenant on, any Lease pertaining to the Properties as it may determine to be necessary or appropriate in accordance with the Operation Standards.

(c) **Property Maintenance and Capital Expenditures.** The Manager shall use commercially reasonable efforts to:

(i) maintain the Properties in good repair and condition, including performing or causing to be performed all necessary or desirable repairs, maintenance, cleaning, painting and decorating, alterations, replacements and improvements in and to the Properties;

(ii) perform or cause to be performed all necessary Capital Expenditures; and

(iii) engage such suppliers and hire such contractors as reasonably required for the completion of such maintenance and Capital Expenditures, in each case in accordance with the Operation Standards.

(d) **Contracts and Supplies.** The Manager shall, on behalf of the Owner, undertake arrangements with third party concessionaires, licensees and suppliers for any services and supplies for the Properties, including furnace and air-conditioning maintenance, pest control, landscaping and any other services and concessions which are reasonably required in connection with the maintenance and operation of the Properties.

(e) **Reporting.** The Manager shall furnish such reports and information to the Owner and the Lender as the Owner deems reasonably necessary to satisfy its obligations under the Loan Documents.

(g) **Compliance with Law, Etc.** The Manager shall take such actions as may be necessary to comply in all material respects with any and all laws, ordinances, orders, rules, regulations, requirements, permits, licenses, certificates of occupancy, statutes and deed restrictions applicable to the Properties. The cost of complying with the foregoing sentence shall be the responsibility of the Owner.

**Section 3. Marketing Services.** The Manager shall provide to the Owner marketing and leasing services in accordance with the Operation Standards (collectively, the "**Marketing Services**"). Such services shall include marketing and procuring Leases with third party Tenants for the Properties, including market research and advertising, locating and screening potential Tenants, negotiating Leases with such Tenants and executing and/or brokering Leases as agent and attorney-in-fact for the Owner (including renewals, expansions, equipment changes, rental abatements, relocations, maintenance agreements, terminations and extensions of such Leases). The Manager shall have complete authority to negotiate all of the terms of each Lease, both economic and non-economic, as well as complete authority to negotiate and execute amendments and other modifications thereto in the name of the Owner; **provided, however**, that the terms of any Lease or amendment or modification thereof shall be on commercially reasonable terms and in accordance with the Operation Standards.

**Section 4. Administrative Services.**

**(a)** During the Term, the Manager shall, subject to the terms hereof, provide to the Owner administrative services in accordance with the Operation Standards (collectively, the "**Administrative Services**"). Without limiting the generality of the foregoing, the Manager will have the following specific duties:

1

(i) clerical, bookkeeping and accounting services, including maintenance of general records of the Owner and the preparation of financial statements and other materials, as necessary or appropriate in light of the nature of the Owner's business and the requirements of the Loan Agreement and the other Loan Documents; and

(ii) maintain accurate books of account and records of the transactions of the Owner, render statements or copies thereof from time to time as reasonably requested by the Owner and assist in all audits of the Owner.

**Section 5.** **Operation Standards.** The Manager shall perform the Services in accordance with and subject to the terms of the Loan Agreement and the other Loan Documents, the Leases and any other agreement related to the Properties, and applicable law, rules or regulations and, to the extent consistent with the foregoing, (i) using the same degree of care, skill, prudence and diligence that the Manager would employ in the management of any other property it owned and operated and that the Manager would use for other sites it manages, (ii) with the objective of timely collections of rents and other Revenues under the Leases and (iii) without regard to any affiliation or other relationship between the Manager and its Affiliates, on the one hand, and any Tenant, on the other hand. The services performed in relation to the Properties shall be of a quality not less than those generally performed by professional managers performing services of a scope consistent with those required of the Manager under this Agreement for properties similar in type and quality to the Properties that are located in the same geographical market areas as the Properties. The standards set forth in this **Section 5** shall collectively comprise the "**Operation Standards**".

**Section 6.** **Accounts.**

(a) **Operating Account.** On or prior to the Effective Date, the Owner shall establish, and at all times during the Term shall maintain, one or more operating bank accounts in the name of the Owner (such account or accounts being the "**Operating Account**"). The Owner shall deposit or cause to be deposited funds received in accordance with the Loan Agreement into the Operating Account for the payment of Operating Expenses and Capital Expenditures and leasing commissions (excluding those paid from Reserves pursuant to the terms of the Loan Agreement). At all times during the Term the Manager shall have access to the Operating Account for the purposes set forth herein, and all checks or disbursements from the Operating Account will require only the signature of the Manager. Funds may be withdrawn by the Manager from the Operating Account only (i) to pay Operating Expenses, Capital Expenditures and leasing commissions (excluding those paid from Reserves pursuant to the terms of the Loan Agreement) in accordance with the terms hereof, (ii) to withdraw amounts deposited in error and (iii) if the owner determines, in accordance with the Operation Standards, that the amount on deposit in the Operating Account exceeds the amount required to pay the Operating Expenses, Capital Expenditures, or applicable leasing commissions as the same become due and payable, to make such other distributions as the Owner may direct.

(b) **Collection Accounts.** The Manager shall cause all rents and other Revenues received by it to be deposited into the Operating Account or, if required by the Loan Agreement, into a Rent Deposit Account, as required by the Loan Agreement and the other Loan Documents within the time period(s) set forth therein.

(c) **Security Deposit Accounts.** The Manager shall cause all security deposits from the Properties to be deposited into one or more Security Deposit Accounts in accordance with the Loan Agreement and the other Loan Documents.

(d) **Disclaimer of Interest**. The Manager hereby disclaims any and all interests in each Security Deposit Account, Rent Deposit Account, and Operating Account and in any of the Revenues or security deposits.

**Section 7.** **Books, Records and Inspections.** The Manager shall, on behalf of the Owner, keep such materially accurate and complete books and records pertaining to the Properties and the Services as may be necessary or appropriate under the Operation Standards and the Loan Documents.

**Section 8.** **Insurance Requirements.** The Manager shall maintain, on behalf of and at the expense of the Owner, all insurance policies required to be maintained by the Owner and the Manager pursuant to the Loan Agreement and other Loan Documents and such other insurance policies as the Manager or the Owner shall determine to be necessary or appropriate in accordance with the Operation Standards. For the avoidance of doubt, all insurance policies required to be maintained pursuant to the Loan Agreement and other Loan Documents shall include any endorsements and/or additional insureds and meet other requirements set forth in such documents and applicable to such policies. All such payments shall be applied in accordance with the Loan Documents or, if the Loan Documents do not specify an application, shall be deposited into the Operating Account. The Manager shall provide to the Lender on behalf of the Owner such evidence of insurance and payments of the premiums thereof required pursuant to the Owner's obligations under the Loan Agreement.

**Section 9.** **Removal or Substitution of Property; Additional Owner.** If during the Term the Owner assigns or otherwise transfers all of its right, title and interest in and to any Property to a Person other than the Lender or a designee of the Lender (whether pursuant to a taking under the power of eminent domain or otherwise) or otherwise ceases to have an interest in a Property, this Agreement shall terminate (as to that Property only) on the date of such assignment or transfer or other event. Upon the termination of this Agreement as to a particular Property, the Manager and the Owner shall be released and discharged from all liability hereunder with respect to such Property for the period from and after the applicable termination date (except for rights and obligations hereunder that are expressly stated to survive such termination) and the Manager shall have no further obligation to perform any Services with respect thereto from and after such date. In addition, each parcel of residential real property acquired by the Owner during the Term shall automatically become subject to the terms hereof.

**Section 10.** **Term.**

(a) **Term**. This Agreement shall be in effect during the period (the "**Term**") commencing on the date hereof and ending at 5:00 P.M. (New York time) on the Maturity Date, unless sooner terminated in accordance with the provisions of this **Section 11.**

(b) **Resignation By Manager.** Unless and until the Loan Agreement has terminated in accordance with its terms and all Obligations due and owing thereunder and under the other Loan Documents have been fully satisfied, the Manager shall not resign from the obligations and duties hereby imposed on it hereunder except upon determination that (i) the performance of its duties hereunder is no longer permissible under applicable law and (ii) there is no reasonable action which can be taken to make the performance of its duties hereunder permissible under applicable law; **provided** that the Manager shall give at least 90 days' prior written notice to the Lender and such resignation shall not be effective until such time as the Owner has executed an Approved Management Agreement with an Approved Property Manager.

(c) **Termination By Lender.** This Agreement may be terminated by or at the direction of Lender as provided in the Loan Documents.

(d) **Assignment by Manager.** In addition to the foregoing, the Manager may assign all of its rights and responsibilities under this Agreement to an Approved Property Manager or other entity reasonably satisfactory to Lender pursuant to a management agreement and in accordance with the terms of the Loan Agreement.

2

**Section 11. Miscellaneous.**

(a) **Amendments.** No amendment, supplement, waiver or other modification of this Agreement shall be effective unless in writing and executed and delivered by the Manager and the Owner sought to be bound thereby; **provided** that, until the Loan Agreement has been terminated in accordance with its terms and all Obligations due and owing thereunder and under the other Loan Documents have been fully satisfied, any amendment, supplement, waiver or other modification of this Agreement (including any reduction in the Term or increase in any charges hereunder) shall also require the consent of the Lender (not to be unreasonably withheld or delayed).

(b) **Assignment, Etc.** The provisions of this Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and permitted assigns. None of the rights, interests, duties, or obligations created by this Agreement may be assigned, transferred, or delegated in whole or in part by the Manager or any Owner, and any such purported assignment, transfer, or delegation shall be void; **provided, however**, that (i) the Owner may assign this Agreement to the Lender and grant a security interest in its rights and interests hereunder pursuant to the Loan Agreement and the other Loan Documents and (ii) the Manager may, in accordance with the Operation Standards, utilize the services of third-party service providers to perform all or any portion of its Services hereunder and assign this Agreement to an Approved Manager in accordance with **Section 10(d)** hereof. The Manager hereby acknowledges that all of the rights of the Owner hereunder have been assigned to the Lender as collateral security for the Obligations.

(d) **Entire Agreement; Severability.** This Agreement constitutes the entire agreement between the parties hereto, and no oral statements or prior written matter not specifically incorporated herein shall be of any force or effect. In the event any one or more of the provisions contained in this Agreement should be held invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein and therein shall not in any way be affected or impaired thereby.

(e) **Governing Law.** THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF PENNSYLVANIA.

(f) **Third Party Beneficiaries.** The Manager hereby acknowledges and agrees that the Lender is a third party beneficiary to this Agreement and shall have the right to directly enforce all of the Manager's obligations hereunder.

[NO ADDITIONAL TEXT ON THIS PAGE]

3

ACTIVE 203411509v.1

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the Closing Date.

Manager:

PROPERTY PALS LLC,
a Pennsylvania limited liability company

By: *[signature]*
Name: Matthew Breen
Title: Member

By: *[signature]*
Name: Mohsin Khawaja
Title: Member

Owner:

MBMK PROPERTY HOLDINGS LLC,
a Delaware limited liability company

By: *[signature]*
Name: Matthew Breen
Title: President

4

ACTIVE 203411509v.1