# EXHIBIT "H"

MLS No. 030501664

## ASSIGNMENT OF MANAGEMENT AGREEMENT

THIS ASSIGNMENT OF MANAGEMENT AGREEMENT (this "Assignment") is made as of ___September___ _3_, 2019, by MBMK Property Holdings LLC ("Borrower"), Wilmington Trust NA as Trustee for CoreVest American Finance 2018-2, its successors and/or assigns, by and through its Master Servicer, Midland Loan Services, Inc., 10851 Mastin, Suite 300 Overland Park, Kansas 66210 (collectively, "Lender") and Bay Management Group Philadelphia, LLC ("Manager").

RECITALS:

A. COREVEST AMERICAN FINANCE LENDER LLC, a Delaware limited liability Company made a loan (the "Loan") to Borrower in the principal amount of $1,120,700.00, evidenced by that certain Promissory Note (the "Note") dated September 27, 2018 and secured by, among other things, a MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (the "Security Instrument", and together with all other instruments and agreements securing the Loan, collectively referred to herein as the "Security Documents") dated of even date therewith, covering real property more particularly described in those documents (the "Property").

B. Lender is the current owner and holder of the Note and Security Documents.

C. Lender's consent is required for the appointment of a new property manager. In order to induce Lender's consent to the appointment of Manager as the new property manager pursuant to the PROPERTY MANAGEMENT AGREEMENT dated as of ___September___ _3_, 2019 by and between Borrower and Manager (the "Management Agreement"), Borrower and Manager have agreed to execute and deliver this Agreement.

AGREEMENT:

For good and valuable consideration the parties agree as follows:

1. <u>Assignment of Management Agreement</u>. As additional collateral security for the Loan, Borrower hereby conditionally transfers, sets over and assigns to Lender all of Borrower's right, title and interest in and to the Management Agreement, said transfer and assignment to automatically become a present, unconditional assignment, at Lender's option, in the event of a default by Borrower under the Note or the Security Documents, including but not limited to escrow agreements, and the failure of Borrower to cure such default within any applicable grace period.

2. <u>Termination</u>. At such time as the Loan is paid in full and the Security Instrument is released or assigned of record, this Assignment and all of Lender's right, title and interest hereunder with respect to the Management Agreement shall terminate.

1

3. <u>Borrower's Covenants</u>. Borrower hereby covenants with Lender that during the term of this Assignment: (a) Borrower shall not transfer the responsibility for the management of the Property from Manager to any other person or entity without prior written notification to Lender and the prior written consent of Lender, which consent may be withheld by Lender in Lender's sole discretion; (b) Borrower shall not terminate or materially amend any of the terms or provisions of the Management Agreement without the prior written consent of Lender, which consent may be withheld by Lender in Lender's sole discretion; and (c) Borrower shall, in the manner provided for in this Assignment, give notice to Lender of any notice or information that Borrower receives which indicates that Manager is terminating the Management Agreement or that Manager is otherwise discontinuing its management of the Property.

4. <u>Agreement by Borrower and Manager</u>. Borrower and Manager agree that in the event of a default by Borrower (beyond any applicable grace period) under the Note, the Security Instrument or any of the other Security Documents during the term of this Assignment, at the option of Lender exercised by written notice to Borrower and Manager: (a) all rents, security deposits, issues, proceeds and profits of the Property collected by Manager, after payment of all costs and expenses of operating the Property (including, without limitation, operating expenses, real estate taxes, insurance premiums, repairs and maintenance and the fees and commissions payable under the Management Agreement), shall be applied in accordance with Lender's written directions to Manager; and (b) Lender may exercise its rights under this Assignment and may terminate the Management Agreement, without cause, upon thirty (30) days notice and require Manager to transfer its responsibility for the management of the Property to a management company selected by Lender in Lender's sole and absolute discretion.

5. <u>Lender's Right to Cure</u>. Prior to any termination of the Management Agreement becoming effective pursuant to notice given by Manager in accordance with the Management Agreement, or otherwise, Manager agrees: (a) to notify Lender in writing of any monetary default by Borrower under the Management Agreement and Manager also agrees that Lender shall have the right (but not the obligation) to cure such monetary default within sixty (60) days from the date of Lender's receipt of such notice, and (b) to notify Lender in writing of any non-monetary default by Borrower under the Management Agreement and Manager also agrees that Lender shall have the right (but not the obligation) to cure such non-monetary default within sixty (60) days from the date of Lender's receipt of such notice (or if such default is not curable within said sixty (60) day period but is capable of being cured, Lender shall have such additional time as is required to cure such default provided Lender commences to cure such default within said sixty (60) day period and thereafter diligently proceeds to cure such default).

6. <u>Lender's Right to Replace Manager</u>. In addition to the foregoing, in the event that Lender, in Lender's reasonable discretion, at any time during the term of this Assignment, determines that the Property is not being managed in accordance with generally accepted management practices for properties similar to the Property, Lender shall deliver written notice thereof to Borrower and Manager, which notice shall specify with particularity the grounds for Lender's determination.    If Lender reasonably

MLS No. 030501664

determines that the conditions specified in Lender's notice are not remedied to Lender's reasonable satisfaction by Borrower or Manager within thirty (30) days from receipt of such notice or that Borrower or Manager have failed to diligently undertake correcting such conditions within such thirty (30) day period, Lender may direct Borrower to terminate the Management Agreement upon thirty (30) days notice to Manager and to replace Manager with a management company acceptable to Lender in Lender's sole discretion.

7.  Subordination of Management Fees.  Borrower and Manager hereby agree that Manager shall not be entitled to receive any fee, commission or other amount payable to Manager under the Management Agreement for and during any period of time that any amount due and owing Lender under the Note and the Security Instrument is not paid when due; provided, however, that Manager shall not be obligated to return or refund to Lender any fee, commission or other amount already received by Manager, and to which Manager was entitled under this Assignment.

8.  Consent and Agreement by Manager.  Manager acknowledges and consents to this Assignment and agrees that Manager will act in conformity with the provisions of this Assignment and Lender's rights hereunder or otherwise related to the Management Agreement.  In the event that the responsibility for the management of the Property is transferred from Manager in accordance with the provisions hereof, Manager shall, and agrees to reasonably cooperate in transferring its responsibility to a new management company and effectuate such transfer no later than thirty (30) days from the date the Management Agreement is terminated.  Further Manager hereby agrees (a) not to contest or impede the exercise by Lender of any right it has under or in connection with this Assignment; and (b) that it shall, in the manner provided for in this Assignment, give at least thirty (30) days prior written notice to Lender of its intention to terminate the Management Agreement or otherwise discontinue its management of the Property.

9.  Lender's Agreement.  So long as there is no Event of Default (beyond any applicable grace period) under the Security Documents, Lender agrees to permit any sums due to Manager under the Management Agreement to be paid directly to Manager.

10. Manager's Representations.  As of the date hereof, (a) the Management Agreement is in full force and effect and has not been modified, amended or assigned, (b) neither Manager nor Borrower is in default under any of the terms, covenants or to the best of Manager's knowledge provisions of the Management Agreement and Manager knows of no event which, but for the passage of time or the giving of notice or both, would constitute an event of default under the Management Agreement, (c) neither Manager nor Borrower has commenced any action or given or received any notice for the purpose of terminating the Management Agreement, and (d) all sums due and payable to Manager under the Management Agreement have been paid in full.

11. Governing Law.  This Assignment shall be deemed to be a contract entered into pursuant to the laws of the State of where the Property is located and shall in all respects be governed, construed, applied and enforced in accordance with applicable federal law

and the laws of the State of where the Property is located, without reference or giving effect to any choice of law doctrine.

12. <u>Notices</u>. All notices or other written communications hereunder shall be deemed to have been properly given (i) upon delivery, if delivered in person or by facsimile transmission with receipt acknowledged, (ii) one (1) Business Day (hereinafter defined) after having been deposited for overnight delivery with any reputable overnight courier service, or (iii) three (3) Business Days after having been deposited in any post office or mail depository regularly maintained by the U.S. Postal Service and sent by registered or certified mail, postage prepaid, addressed as follows:

| | |
|---|---|
| If to Borrower: | MBMK Property Holdings LLC<br>18 Campus Blvd, Suite 100<br>Newtown Square, PA 19073 |
| If to Manager: | Bay Management Group Philadelphia, LLC<br>1080 N Delaware Ave, Suite 506<br>Philadelphia PA 19125 |
| If to Lender: | Midland Loan Services<br>10851 Mastin, Suite 300<br>Overland Park, Kansas 66210<br>Attn: Asset Management – MLS No. 030501664<br>Fax: 913-253-9001 |

or addressed as such party may from time to time designate by written notice to the other parties. For purposes of this Section 12, the term Business Day shall mean a day on which commercial banks are not authorized or required by law to close in New York, New York.

Any party by notice to the others may designate additional or different addresses for subsequent notices or communications.

13. <u>No Oral Change</u>. This Assignment, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, charge, discharge or termination is sought.

14. <u>Liability</u>. If Borrower consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several. This Assignment shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns forever.

15. Inapplicable Provisions.  If any term, covenant or condition of this Assignment is held to be invalid, illegal or unenforceable in any respect, this Assignment shall be construed without such provision.

16. Headings, etc.   The headings and captions of various paragraphs of this Assignment are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

17. Duplicate Originals, Counterparts.  This Assignment may be executed in any number of duplicate originals and each duplicate original shall be deemed to be an original.   This Assignment may be executed and delivered in counterparts and by facsimile/Portable Document Format (PDF); each such counterpart shall be deemed to be an original instrument, and all such counterparts together shall constitute one Assignment.   The failure of any party hereto to execute this Assignment, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.

18. Number and Gender.  Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine, or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

19. Secondary Market.  Lender may sell, transfer and deliver the Note and assign the Security Instrument, this Assignment and the other Security Documents to one or more investors in the secondary mortgage market.  In connection with such sale, Lender may retain or assign responsibility and/or obligations to a servicer including, but not limited to, any subservicer or master servicer, on behalf of the Investors.  All references to Lender herein shall refer to and include any such servicer to the extent applicable.

20. **Entire Agreement.  THE NOTE, THE SECURITY INSTRUMENT, THIS ASSIGNMENT AND THE OTHER SECURITY DOCUMENTS EMBODY THE ENTIRE AGREEMENT AND UNDERSTANDING BETWEEN LENDER AND THE OTHER RESPECTIVE PARTIES THERETO AND SUPERSEDE ALL PRIOR AGREEMENTS AND UNDERSTANDINGS BETWEEN SUCH PARTIES RELATING TO THE SUBJECT MATTER HEREOF AND THEREOF AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT AGREEMENTS OF THE PARTIES.   THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

21. **JURY TRIAL WAIVER.  EACH PARTY HERETO HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY TO THE FULLEST EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION HEREWITH.   THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY EACH PARTY HERETO, AND IS**

MLS No. 030501664

INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH PARTY HERETO IS HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY ANY OTHER PARTY HERETO.

MLS No. 030501664

IN WITNESS WHEREOF, the undersigned have executed this Assignment as of the date and year first written above.

**BORROWER:**

MBMK Property Holdings LLC

By: _____

Name: Matthew S. Breen

Title: President


**MANAGER:**

Bay Management Group Philadelphia, LLC


By: _____

Name: _____

Title: _____


**LENDER:**

Wilmington Trust NA as Trustee for CoreVest American Finance 2018-2, its successors and/or assigns, by and through its Master Servicer, Midland Loan Services, a division of PNC Bank, National Association


By: _____

Name: _____

Title: _____

MLS No. 030501664

IN WITNESS WHEREOF, the undersigned have executed this Assignment as of the date and year first written above.

**BORROWER:**

MBMK Property Holdings LLC

By: _____

Name: _____

Title: _____


**MANAGER:**

Bay Management Group Philadelphia, LLC

By: _____

Name: _Dana Anderson_____

Title: _President_____


**LENDER:**

Wilmington Trust NA as Trustee for CoreVest American Finance 2018-2, its successors and/or assigns, by and through its Master Servicer, Midland Loan Services, a division of PNC Bank, National Association

By: _____

Name: _____

Title: _____

7

MLS No. 030501664

IN WITNESS WHEREOF, the undersigned have executed this Assignment as of the date and year first written above.

**BORROWER:**

MBMK Property Holdings LLC

By: _____

Name: _____

Title: _____


**MANAGER:**

Bay Management Group Philadelphia, LLC


By: _____

Name: _____

Title: _____


**LENDER:**

Wilmington Trust NA as Trustee for CoreVest American Finance 2018-2, its successors and/or assigns, by and through its Master Servicer, Midland Loan Services, a division of PNC Bank, National Association

By: _____

Name: _____ Alan H. Torgler _____

Title: _____ Vice President _____
Servicing Officer

7



# PROPERTY MANAGEMENT AGREEMENT

In consideration of the covenants herein, <u>MBMK PROPERTY HOLDINGS, LLC</u> (hereinafter referred to as "Owner(s)"), and <u>Bay Management Group Philadelphia, LLC</u>, (hereinafter referred to as "Manager"),  agree to this Property Management Agreement (hereinafter referred to as the "Agreement") as follows:

**1. Exclusive Agency:**  The Owner(s) hereby employs the Manager exclusively to rent, lease, operate and manage all units in <u>Exhibit A</u> attached (hereinafter referred to as the "Property") upon the terms and conditions provided herein for the period of One (1) Year  beginning <u>09 / 01 / 2019</u> and ending <u>08 / 31 / 2020</u> and shall automatically renew thereafter for annual periods. Manager accepts the employment and shall furnish the services of the  organization for the management of the property. Owner shall pay all of the expenses in connection with this service described herein.

**A.** <u>Relationship of Manager to Owner:</u> The relationship of the parties to this agreement shall be that of principal and agent, with Manager serving as the agent of Owner and an independent contractor of Owner. Nothing in this Agreement shall be construed as creating a partnership, joint venture, or any other relationship other than agency. Manager shall not be considered an employee of Owner.

**B.** <u>Description of Property:</u> "Property", as used throughout this Agreement shall refer only to, and be limited to, the  Property listed in Exhibit A. The Exhibit may be amended or modified to add  or reduce the number of properties at any time, provided Owner and Manager agree to the changes in  writing.

**2. Manager Responsibilities**: To assist Owner with the ongoing management of the Property, Manager shall perform the following:

**A.** <u>Collection and Disbursement:</u> Manager shall collect all rent due and owing and provide to Owner all Owner Income. Manager shall remit to Owner all income, less any properly deducted fees/charges, by U.S. Mail, wire, automatic payment, or other arrangement as established by Manager and Owner. Before payment is remitted to Owner, Manager reserves the right to hold rent checks from Tenant with previous NSF or other payment issues until check has officially cleared Manager's bank. Should payment made by Tenant be refused or returned for any reason after Manager has remitted said payment to Owner, Owner shall refund to Manager any such  payment made to Owner within 5 days from Manager's written request to do so.

**B.** <u>Late Payments from Tenants: Except for those leases that are in already in effect at the time of signing this Agreement,</u> all new or renewed leases with Tenants that take effect within the term of this Agreement, shall include a 10% late rent fee. In the event  Tenant rent is not received by the 5th day of each month. All late fees shall be disbursed 50% to Manager and 50% to Owner.

**C.** <u>Lease Negotiations:</u> Manager, with collaboration of Owner, will set rents that in the opinion of the manager at the time of the rent  negotiations with the Tenant reflect the market conditions of that time and approximate rents of  comparable rental properties. However, if Manager cannot get ahold of Owner in a timely manner, Manager will set initial rent and subsequent increases which are deemed



acceptable to Manager.

Owner designates manager as its agent to negotiate and sign any and all lease agreements or related addenda on its behalf, unless expressly instructed otherwise in a written statement from Owner to Manager. Barring such instruction, Manager will employ best efforts to pursue lease terms and agreements consistent with the broad terms Owner and Manager have discussed for the property. Manager is not, nor shall it be expected to be legal counsel or a legal advisor to Owner. Owner is advised to seek its own legal counsel for legal issues or legal questions related to the Property.

**D.** Property Inspections: Manager shall complete move in and move out inspections. In addition, Manager shall  complete two (2) free periodic inspections annually upon request of the Owner. This is to ensure the property is being maintained and upheld to  satisfaction.

**E.** City Requested Inspections: Manager is not responsible or liable for any fees or costs associated with the maintenance, repair or replacement of Property to meet any inspection items noted by the city or municipality. Manager is not responsible for any fines, fees or costs assessed by any city or municipality associated with an inspection or re-inspection of the Property, unless said fines, fees or costs are the result of the negligence of Manager, which shall not be presumed, but shall be determined by a court of law or Property tribunal.

**F.** Management Fees and Expenses: As compensation for the services rendered by Manager under this agreement, Owner shall pay Manager as follows:

  I.    Manager shall be paid _ 7 _% of the gross rent  per month for managing the Property.

 II.    For leasing vacant residential units: a leasing fee of one (1) month's rent with a minimum of one thousand dollars ($1000) will be charged.  Manager agrees to cooperate with all Realtors. Leasing fees are waived if the Owner has  an on-site staff on payroll that performs leasing functions.

III.    To renew a current lease or execute new Bay Management Group Philadelphia Lease for renewal of a Tenant, Manager will charge a 10% fee of one (1) month's rent.  This will apply to any renewal that is signed for six (6) months or longer in duration and due at the time of execution of renewal.

**G.** Negotiation and Vendor/Contractor: Manager is authorized to retain the services of companies, independent contractors, and Manager's own maintenance employees and to order service contracts required for the operation and maintenance of the Property. Owner shall be responsible for the payment of the services rendered.

Manager maintains business relationships with vendors and /or contractors who may be regularly retained by Manager for maintenance and other services. Sometimes these services are contracted for and paid in bulk or on a time – spent basis, where Manager is charged for the work performed on several Properties, rather than on a per – Property basis. Due to the ongoing nature of these



relationships and the volume or bulk nature in which these services are contracted, Manager may receive such services at a price that is discounted from the same vendor or contractor's established rates or a comparable market rate for such services. Therefore, if Manager negotiates, hires, and manages such a vendor or contractor to perform work on the Property, Manager shall charge the published or market rates for such service, even in circumstances in which the fee ultimately paid by Manager (on a per service, per unit basis) are more or less than the market rate. Any difference between the market rate being charged to Owner and the rate paid by Manager (which may be more or less than such market rate) shall be paid by or retained by Manager. This shall serve as Manager's disclosure that it may receive compensation from vendors contracted by Manager, and Manager shall retain any discounts or compensation received.

**H.** Normal Property management does not include services for Property sales, refinancing, preparing Property for sale or refinancing, modernization, fire, or major damage restoration, rehabilitation, obtaining income tax, accounting, or legal advice, representation before public agencies, advising on proposed new construction, debt collection, counseling, attending Owners Association meetings, or insurance claims.

**I.** Security Deposits: Manager is to hold tenant's security deposits in a FDIC insured bank. At the end of the tenants lease, the owner is responsible for the interest due on the security deposit in accordance with Pennsylvania Real Property Code.  In the case where Manager is holding security deposits in an interest-bearing account, Manager is responsible for interest due back to the tenant per their lease.

### 3. Disbursements of Rent and other Receipts
    A. Net Proceeds: To the extent that funds are available Manager shall remit the balances due to owner monthly.
    B. Direct Deposit: Owners who wish to avoid a paper check may choose to sign up for Direct Deposit.  This program is the electronic transfer of rental income via ACH. This service is at no additional charge.
    C. Manager is not required to advance funds:  If the balance of funds held on behalf of Owner for disbursement is at any time insufficient to pay disbursements due and payable, Owner shall, not later than 10 days after written notice, remit to Manager sufficient funds to cover the deficiency.

### 4. Financial and Other reports
**A.** Owner's Reporting to Internal Revenue Service (IRS): Owner is required to file all required IRS forms and meet all IRS requirements. Owner agrees to furnish Manager with a proper TIN (Taxpayer Identification Number) via an IRS W9 form, or other applicable IRS approved documents.

**B.** Reports: Manager shall furnish Owner with a statement of cash receipts and disbursements from the operation of the Property, on a monthly basis. In addition, manager shall, on a mutually acceptable schedule, prepare and submit to Owner such other reports as are agreed on in writing by both parties. Manager shall submit as required by the IRS at the conclusion of each calendar year a Form 1099 indicating the total income received from the Property.

### 5. Leasing and Renting



**A.** <u>Manager's Authority</u>: Manager is authorized to negotiate, prepare and sign all leases, including all renewals and extensions of leases and to cancel and modify existing leases of Owners. To the extent Owner wishes to take this responsibility or wants final approval of such terms, Owner must identify this to Manager, in writing. Leases are to be written on Manager's standard lease form.

**B.** <u>Enforcement of the Leases</u>: Manager is authorized to institute, in Owner's name, all legal actions or proceedings for the enforcement of any lease term, for the collection of rent or other income from the Property, or for the eviction or dispossession of the tenants or other persons from the Property. Manager is authorized to sign and serve such notices, as Manager deems necessary for lease enforcement, including the collection of rent and other income. If Manager deems it necessary, Manager may retain an attorney of Manager's choice (unless Owner supplies Manager with the name of Manager's attorney). Owner shall pay all attorney fees and court cost.

**6. Reasonable Maintenance and Repair**
**A.** <u>Ordinary Maintenance and Repair</u>: Manager is authorized to make or cause to be made, through contracted services, employees or otherwise, all ordinary repairs and replacements reasonably necessary to preserve the Property in a habitable condition and for the operating efficiency of the Property, and all alterations required to comply with lease requirements, governmental regulations or insurance requirements. All expenses over $500, or the threshold set forth on the 'New Property Summary' page attached, associated with regular and ongoing Property maintenance shall require permission from Owner which may occur by written permission, including, phone, fax or email. Manager reserves the right to inspect Property randomly at the discretion of Manager. Owners with Home Warranty or Service plans shall provide account information to manager and must list manager as an additional member on the account. Tenants shall be responsible for maintaining Property as addressed in their lease. Fines assessed by the city, municipality or state for violations such as snow removal, lawn/tree/landscaping/issues, trash, or the like shall be paid first by Tenant (if consistent with terms of the lease).

**B.** <u>Emergency Maintenance and Repair</u>: The Manager agrees to notify the Owner(s) of all expenditures in excess of $500, or the threshold set forth, for any one item, except for the following:

    **i.** Previously approved, monthly or recurring operating charges

    **ii.** Emergency repairs that are immediately necessary for the preservation and safety of the property, to avoid the suspension of any essential service to the property, to avoid danger or life of property, or to comply with federal, state, or local law.
    **iii.** Necessary expenses if the owner is not reasonably available for consultation. Manager is authorized to immediately make any repairs to chipping or peeling paint, consistent with the Pennsylvania Department of Public Health.

**C.** <u>Property Move in Condition</u>: Both tenant and owner agree that the property will be delivered in "As Is" condition with the expectation that the following items will be addressed: professional cleaning, steam cleaned carpets where necessary, touch-up paint, working appliances and HVAC system, anything that poses a health or safety risk to tenants as well as all compliance items needed for city, state and federal housing regulations. Any additional items must be negotiated in writing prior to



entering into a lease agreement.

**D.** Smoke and CO Detectors: At Owner's expense, smoke detectors and carbon monoxide detectors will be installed on the Property in accordance with the law, prior to the tenant's occupancy. During the occupancy, it shall be the tenant's responsibility to maintain all smoke detectors and carbon monoxide detectors.

**7. Insurance**

**A.** Owners Insurance: Owner shall obtain and maintain adequate insurance against liability for loss, damage or injury to Property or persons which might arise out of the occupancy, management, use, operation, or maintenance of the Property. Owner shall name Bay Management Group Philadelphia, LLC as additionally insured.  Tenants Insurance: All tenants procured by Manager are mandated to obtain renters insurance and that Owner's insurance does not cover tenants personal items or affects. Tenant(s) will provide insurance carrier and policy to Manager before move-in and upon renewal of any lease.

**8. Manager Assumes No Liability:**

**A.** Manager assumes no liability for any damages, losses, or acts of omission by the tenant. Manager assumes no liability for any acts or omissions of Owner, previous  Owners or previous brokers. Manager assumes no liability for default by any Tenant. Manager assumes  no liability for violations of environmental or other regulations which may become known during the  term of this agreement. Any such regulatory violations or hazards discovered by Manager shall be  brought to the attention of Owner, and Owner shall promptly cure them. Manager shall not be liable in  the event of bankruptcy or failure of the depository bank where Owner's funds are deposited.

**9. Indemnification and Owner's Responsibilities to Defend:**

**A.** Generally: Owner shall indemnify, defend, and hold Manager harmless from all loss, investigation, suits, damage, cost, expense (including attorneys' fees) liability or claims for personal injury or property  damage, including vandalism, incurred or occurring in, on or about the Property.

**B.** Indemnification survives termination: All representations and warranties of the parties contained herein, including any provisions of this agreement that require owner to have insured or to defend, reimburse or indemnify Manager shall survive the termination of this agreement. If Manager becomes involved in any proceeding or litigation by reason of having been Owner's Manager, such provisions shall  apply as if this agreement were still in effect.

**C.** Litigation and Compliance Expenses: Owner shall pay all fines, penalties, or other expenses in connection with any claim proceeding, or suit involving an alleged violation of any law pertaining to fair  employment, fair credit reporting, environmental protection, rent control taxes or fair housing, including illegal discrimination on the basis of race, sex, color, religion, national origin, physical handicap, familial status, public assistance, age or all other classes protected by state, or federal law: provided, however, that owner shall not be responsible to Manager for any such expenses if Manager is  found in a court of law or tribunal of property authority to have personally, and not in a representative  capacity, violated any such law. Should Owner sue Manager, Owner shall pay the full



costs of Manager's  attorney's fees and costs expended in defending itself, in the event Manager
prevails in such suit. Nothing contained in this Agreement shall obligate Manager to employ legal
counsel to represent  Owner in any such proceeding or suit.

**10. Owner Representations:** Owner represents and warrants: that Owner has full power and authority
to  enter into this Agreement; that there are no written or oral agreements affecting the Property other
than  disclosed tenant leases, copies of which have been furnished to Manager; that there are no
recorded easements, restrictions, reservations or rights of way which adversely affect the use of the
Property for the purposes intended  under this Agreement; that the Property is zoned for the intended
use; that all permits for the operation of the Property have been secured and are current; that any
underlying mortgages or related liens permit rental of the Property or Property steps have been taken to
ensure the Property being used in a manner consistent with how it has been represented to third
parties, that the building and its construction and operation do not violate any applicable statutes, laws,
ordinances, rules, regulations, orders or the like; that the information supplied by Owner is dependable
and accurate; and that any loans, notes, mortgages, dues or trust deeds are fully paid or are current
without defaults.

### 11. Termination

Early Termination: This Agreement may be terminated by either party at any time with 30 days'
notice. Owner shall immediately pay Manager the greater of $1,500.00 or 1 month's rent if an approved
applicant has been secured and Owner terminates this agreement prior to a move in taking place.
Manager is authorized to withhold funds from the owner to cover this amount or funds provided by the
tenant to move into the unit.

A. Termination for Violation of Agreement or Law: Manager reserves the right to terminate this
Agreement with 30 days written notice if Owner is found to have violated the agreement.
Manager  reserves the right to terminate this Agreement immediately if Owner acts in a manner
which, at the  discretion of Manager, creates a hostile or otherwise harmful relationship with
Manager, or Owner is  found in violation of any federal, state, or local law that may create a
liability to Owner, impact the  goodwill or public reputation of Manager, or otherwise endanger
Manager in any way.

C. Owner Responsible for Payments: Upon termination, Owner shall pay Manager any fees,
commissions, and expenses due to Manager for services already rendered or payments due through
the  month of termination. Owner shall assume and satisfy the obligations of any contract or
outstanding bill  incurred by Manager under this Agreement. Manager may withhold funds for up to
60 days after the  end of the month in which this Agreement is terminated in order to pay bills
previously incurred but not  yet invoiced and to close accounts. Manager shall deliver to Owner,
within 60 days after the end of the  month in which this Agreement is terminated, any balance of
monies due Owner, which were held by  the manager with respect to the Property, as well as a final
accounting reflecting the balance of income  and expenses with respect to the Property as of the
date of termination or withdraw.

### 12. Lead Based Paint Disclosure



Housing built before 1978 may contain lead – based paint. Before renting pre-1978 housing, Owner must disclose the presence of known lead-based and /or lead- based paint hazards in the Property. Owner represents that:

(  ) The Property was **constructed on or after January 1, 1978**.

( x) The Property was **constructed prior to 1978**. Check (i) or (ii) or (iii) below.

I.      ___MB___ Owner has no knowledge of lead based paint and /or lead based paint hazards in the Property outlined in Exhibit A

II.     _____Owner has knowledge of Lead based paint and /or lead based paint hazards in the Property outlined in Exhibit A. (Owner has had Property inspected and can show proof of such inspection)

**13. Complete Agreement.** This Agreement shall be binding upon the parties, and each of their respective heirs, executors, administrators, successors and assigns. No amendment is valid unless in writing and signed by the parties. There are no warranties or representations not herein contained.

The undersigned parties acknowledge that they have thoroughly read and understand each provision of this Agreement and have received a copy.

Executed this___3rd___day of _September_, 20_19_____.

MBMK PROPERTY HOLDINGS LLC,
a Delaware limited liability company

By: _____
Name: Matthew Breen
Title: President

BAY MANAGEMENT GROUP PHILADELPHIA LLC,
a _____ limited liability company

By: _____
Name: Dana Anderson
Title: _____



Housing built before 1978 may contain lead – based paint. Before renting pre-1978 housing, Owner must disclose the presence of known lead-based and /or lead- based paint hazards in the Property. Owner represents that:

(   ) The Property was **constructed on or after January 1, 1978**.

( x) The Property was **constructed prior to 1978**. Check (i) or (ii) or (iii) below.

I. _____Owner has no knowledge of lead based paint and /or lead based paint hazards in the Property outlined in Exhibit A

II. _____Owner has knowledge of Lead based paint and /or lead based paint hazards in the Property outlined in Exhibit A. (Owner has had Property inspected and can show proof of such inspection)

**13. Complete Agreement.** This Agreement shall be binding upon the parties, and each of their respective heirs, executors, administrators, successors and assigns. No amendment is valid unless in writing and signed by the parties. There are no warranties or representations not herein contained.

The undersigned parties acknowledge that they have thoroughly read and understand each provision of this Agreement and have received a copy.

Executed this_____day of_____, 20_____.

MBMK PROPERTY HOLDINGS LLC,
a Delaware limited liability company

By: _____
Name: Matthew Breen
Title: President

BAY MANAGEMENT GROUP PHILADELPHIA LLC,
a _Maryland_____ limited liability company

By: _____
Name: Dana Anderson
Title: _President_____



### EXHIBIT A – The "Property"

| Prop. # | Property Address | City | State | Zip |
|---|---|---|---|---|
| 1 | 412 Long Ln. - U1 | Upper Darby | PA | 19082 |
| 1 | 412 Long Ln. - U2 | Upper Darby | PA | 19082 |
| 2 | 2131 Brighton St. | Philadelphia | PA | 19149 |
| 3 | 355 Avon Rd. | Upper Darby | PA | 19082 |
| 4 | 347 Avon Rd. | Upper Darby | PA | 19082 |
| 5 | 599 Timberlake Rd. | Upper Darby | PA | 19082 |
| 6 | 40 E. Rittenhouse St. | Philadelphia | PA | 19144 |
| 7 | 526 Timberlake Rd. | Upper Darby | PA | 19082 |
| 8 | 418 Timberlake Rd. | Upper Darby | PA | 19082 |
| 9 | 419 Glendale Rd. | Upper Darby | PA | 19082 |
| 10 | 8513 Lansdowne Ave. | Upper Darby | PA | 19082 |
| 11 | 37 Walnut St. | Clifton Heights | PA | 19018 |
| 12 | 245 Burmont Rd. | Drexel Hill | PA | 19026 |
| 13 | 4690 State Rd. | Drexel Hill | PA | 19026 |