# EXHIBIT "N"

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE HOLDERS OF COREVEST AMERICAN FINANCE 2018-2 TRUST MORTGAGE PASS-THROUGH CERTIFICATES, | : COURT OF COMMON PLEAS : DELAWARE COUNTY : : : NO. CV-2020-008284 : |
| Plaintiff, | : |
| v. | : |
| MBMK PROPERTY HOLDINGS LLC, | : |
| Defendant. | : |

## STIPULATED ORDER

AND NOW, this /8 day of March 2022, upon consideration of Plaintiff's Emergency Motion for Appointment of a Receiver (the "Motion"), and for good cause shown, and upon stipulation of the parties, through undersigned counsel, it is hereby:

ORDERED AND DECREED as follows:

1. Plaintiff's Emergency Motion is GRANTED, as modified by this Order.

2. James Paul of the ALPS Group will be appointed as Receiver (the "Receiver") in the above-captioned action for the real properties situated at: (1) 245 Burmont Road, Upper Darby, PA 19082; (2) 347 Avon Road, Upper Darby, PA 19082; (3) 355 Avon Road, Upper Darby, PA 19082; (4) 37 Walnut Street, Clifton Heights, PA 19018; (5) 412 Long Lane, Upper Darby, PA 19082; (6) 4690 State Road, Drexel Hill, PA 19026; (7) 8513 Lansdowne Avenue, Upper Darby, PA 19082; (8) 419 Glendale Avenue, Upper Darby, PA 19082; (9) 526 Timberlake Road, Upper Darby, PA 19082; (10) 418 Timberlake Road, Upper Darby, PA 19082; and (11) 599 Timberlake Road, Upper Darby, PA 19082 (collectively the "Property"), effective March _____, 2022 subject to the terms and condition set forth in this Order.

3. The Receiver is authorized and directed to immediately take and have exclusive control, possession, and custody of the Property and all contract rights, bank accounts, tax accounts, escrow accounts, receivables, causes of action, and other assets connected with the Property. The Receiver's control extends over (A) the entire Property (B) all assets associated with or derived from the Property, and (C) all income the Property has generated or generates after the Effective Date.

4. Defendant, and/or its representatives, property managers (including Bay Management Group Philadelphia ("BMG")) and any persons acting under its direction or control, shall immediately transfer or deliver the following to the Receiver:

(A) all deposits, rents, profits, and proceeds derived from the Property on hand as of the Effective Date or collected thereafter;

(B) to the extent any deposits are held in escrow, the location of the escrow account, any escrow agreements, and all correspondence and agreements concerning such escrowed funds;

(C) all agreements of sale, leases, purchaser lists, prospective purchaser lists, tenant lists, tenant files, rent payment records, sale records, deposit records and any and all correspondence with tenants and/or buyers;

(D) equipment leases, employment agreements, supply or service agreements, and other contracts affecting the Property or items used in association with the Property;

(E) all contracts and agreements with parties holding mechanic's liens on the Property;

(F) insurance certificates and policies and correspondence with agents and insurance companies regarding coverages for the Property;

(G) banking documents and statements for all funds, revenues, deposits and expenses administered for or concerning the Property;

(H) bills and account statements for items or services acquired from vendors or suppliers over the last 16 months (or for time periods past the last 16 months if the Receiver requests such bills and statements as the Receiver deems necessary to perform his duties under this Order);

   (I)  real estate tax bills and all tax sale notices related to the Property;

   (J)  notices of assessment or re-assessment for the Property;

   (K)  notices of taking or of eminent domain proceedings affecting the Property;

   (L)  notices and correspondence regarding any violation of local, State or Federal law regarding the Property;

   (M)  a list of account numbers for all utilities serving the Property, or copies of the most recent billings from each one of those utility companies;

   (N)  a list of any pending proceedings in any court regarding or relating to leases or contracts on the Property;

   (O)  all inventory and equipment lists;

   (P)  books and records pertaining to accounts payable and accounts receivable with respect to the Property;

   (Q)  all environmental reports and test results in Defendant's possession relating to the Property or any portion thereof;

   (R)  copies of cumulative monthly operating statements for the Property generated over the last 16 months (or for time periods past the last 16 months if the Receiver requests such statements as the Receiver deems necessary to perform his duties under this Order);

   (S)  all architectural, engineering plans, surveys, electrical plans and site plans for the Property;

   (T)  all documents relating to legal actions between Defendant and any tenant or vendor arising out of any services, property or interest pertaining to the Property; and

   (U)  all such other items, records or documents that the Receiver may reasonably require to operate, manage and maintain the Property.

Primary responsibility for providing the items to the Receiver required under this paragraph shall be that of BMG; however, the Receiver reserves the right to request such items from any other party.

  5.  Defendant, and/or its representatives, property managers (including BMG) and any persons acting under its direction or control, shall immediately transfer or deliver to the

Receiver (A) all keys, security cards and access devices for the Property, and (B) all passwords, usernames and other information needed to access any computer program or software used at the Property or used in conjunction with the administration of the Property. The documents and data to be turned over or made available to the Receiver include all hard copies as well as permanent and removable media for the storage of images or data, including hard drives (fixed, external, and portable), DVDs, CD's flash drives, and memory sticks and cards, that contain information only related to the Property. Primary responsibility for providing the items to the Receiver required under this paragraph shall be that of BMG; however, the Receiver reserves the right to request such items from any other party.

6. Defendant, its representatives, property managers (including BMG) and any persons acting under its direction or control are directed to immediately turn over to the Receiver all of the monies currently in their possession held as unapplied rent or as deposits or down payments, which funds are to be held by the Receiver in a segregated account at a bank insured by the FDIC, pursuant to the terms and provisions of any lease or agreements of sale entered into by the parties who made the deposits. Defendant, its representatives, property managers (including BMG) and any persons acting under its direction or control are also directed to supply to the Receiver, within ten (10) days, an accounting of all security deposits or down payments held in connection with any lease or sale of the Property or any part of the Property, including the name and identification number of the accounts in which such security deposits are held, the name and address of the financial institutions in which such security deposits are held, and the name of the person to contact at such institutions, along with any authority or release necessary for Plaintiff to obtain information regarding such accounts from such financial institutions.

7. The Receiver shall maintain, preserve and operate the Property pursuant to all licenses and permits issued to Defendant, including without limitation, business licenses, building permits, governmental approvals, state health department licenses, licenses to conduct business, and such other permits, licenses and rights obtained from any governmental, quasi governmental, or private personal entity whatsoever, and all licenses issued to the Defendant shall remain on the Property.

8. Immediately upon presentation of this Order, Defendant, and/or its representatives, property managers (including BMG) and any persons acting under its direction or control, shall give over to the Receiver copies of all records of income, expense, receivables and payables relating to the Property for the last 16 months (or for time periods past the last 16 months if the Receiver requests such records as the Receiver deems necessary to perform his duties under this Order) which are in Defendant's possession and/or that of its representatives, property managers (including BMG) and any persons acting under its direction or control. Primary responsibility for providing the items to the Receiver required under this paragraph shall be that of BMG; however, the Receiver reserves the right to request such items from any other party. In the event such records exist but are not in Defendant's possession, custody or control and have not yet been given over to the Receiver, then within ten (10) days of the date of this Order Defendant shall undertake good faith efforts to collect from its representatives, property managers (including BMG) and any persons acting under its direction or control copies of all records of income, expenses, receivables and payables relating to the Property since that same date and forward those materials to the Receiver, provided that, this paragraph shall not require Defendant to initiate any litigation to obtain and give over such records. This Order shall be

sufficient grounds for any vendor or provider to supply this information to the Receiver should it become necessary for the Receiver to make the request.

9. Revenues generated by the Property are to be deposited in a segregated operating account at a financial institution insured by the FDIC.

10. The Receiver is authorized, but not obligated, to do the following without further order of this Court:

(A) to receive payment of any insurance benefit or claim on a policy issued to or for the benefit of Defendant;

(B) to continue, manage and operate the Property as if said Receiver were the permittee under any permits;

(C) to collect, refund and compromise claims regarding tenant security deposits;

(D) to arrange and pay for liability and casualty insurance for the Property, and to include the Receiver as an insured party in that coverage;

(E) to buy, acquire and order supplies, machinery, equipment, and services the Receiver deems reasonably necessary to maintain and repair the Property;

(F) to engage contractors and to hire employees as necessary to maintain and repair the Property;

(G) to engage, obtain and arrange for payment of any testing, appraisal, surveying, engineering or environmental consulting services the Receiver deems reasonably necessary;

(H) to pay taxes, to pay for services, supplies, and equipment and to pay other bills associated with the ordinary operation, upkeep and maintenance of the Property;

(I) to make expenditures from the income, receipts, and collected rents to pay installments of principal and interest due on existing encumbrances on the Property or for equipment of fixtures leased or acquired for use at the Property;

(J) to open checking, savings or other bank accounts, and to utilize those new accounts or pre-existing accounts as operating accounts for the Property;

(K) to contest and appeal real estate tax assessments, but only upon first receiving Plaintiff's written approval for the institution of any such appeal or contest;

(L)   to employ and pay personnel to maintain, secure and operate the Property, including individuals to be hired in place of or to replace any employee presently or previously employed by Defendant; and

(M)   to advertise for new leases or contracts and to enter into new or renewed leases or contracts.

11.   Promptly after the Effective Date, the Receiver shall send a letter to all purchasers, tenants, and account debtors of the Defendant notifying them of the Receiver's appointment and their duty, if any, to make payments to the Receiver. Within 30 days after receiving any deposit money or security deposits and an accounting of such deposits and security deposits from BMG or Defendant, the Receiver shall notify each tenant, by hand delivery or first-class mail, of the amount of deposit money or security deposit the Receiver holds for each such tenant or purchaser.

12.   Defendant, its representatives, property managers (including BMG) and any persons acting under its direction or control shall not collect, remove, transfer, compromise, release, waive, forgive, or divert or in any way dispose of security deposits, rents, profits and proceeds of the Property except as permitted by this Order, and shall not exercise control or dominion over the operations and conduct of the Property, or interfere with the Receiver's control of the Property. Defendant shall not collect, receive or pay any management fee or any other fee or money from the security deposits, rents, profits or proceeds of the Property, provided that the Receiver is authorized to pay any remaining amounts due to BMG under the terms of the September 1, 2019 management agreement, pursuant to the process set forth in paragraph 18(b).

13.   The Receiver is authorized to engage a law firm for legal representation in the performance of its duties, and to pay those attorneys their standard hourly rates and costs, all without further order of this Court.

7

14. The Receiver is also authorized to engage an accounting firm for accounting services the Receiver deems reasonably necessary to assist in the performance of the Receiver's duties, and to pay those accountants their standard hourly fees and costs, all without further order of this Court.

15. The Receiver is authorized to engage the services of such other professionals, such as surveyors, appraisers, environmental engineers, and other consultants, as the Receiver deems reasonably necessary to assist in the performance of the Receiver's duties, and to pay those professionals their standard charges, all without further order of this Court.

16. Within sixty (60) days of the effective date of this Order, the Receiver shall prepare and file with the Court, on notice to all parties, an initial budget (the "Initial Budget") itemizing, in reasonable detail, the estimated expenditures for the Property for the succeeding twelve (12) months. The Receiver may amend the Initial Budget, and any replacement budget, on fifteen (15) days notice to all parties

17. Notwithstanding any provision of this Order to the contrary, the Receiver shall not be authorized to incur or pay any single obligation or expense in excess of $10,000.00 per property on an annual basis unless the Receiver deems necessary in the event of an emergency.

18. Within sixty (60) days of the effective date of this Order, the Receiver shall provide all parties with:

    (A) An accounting of rents turned over by BMG or any other party; and

    (B) An evaluation and recommendation on any compensation claimed due to BMG, with all supporting documentation and subject to the right of any party to object to payment of same from the rents and revenues of the Property. Any objection must be filed within five (5) days of the receipt of the report or it is deemed approved.

19. The Receiver shall keep a true and accurate account of any and all receipts and expenditures, to be reported in the Receiver's monthly accountings, which are to be provided to the parties and the Court until further order of the Court.

20. All funds expended by the Receiver on account of the Property shall be added to the Borrower's indebtedness to the Plaintiff and shall be reimbursed;; subject, however, to the right of any party to object to the propriety and reasonableness of such expenditures under the Mortgage and otherwise applicable law.

21. The appointment of the Receiver shall terminate at the earlier of (A) the mutual written consent of the parties, (B) any conveyance of the Property (including a sheriff's sale), (C) the Receiver's resignation, or (D) an Order of Court. Upon termination of the receivership, the Receiver is instructed to pay all outstanding expenses (including fees and costs) and return the excess balance, if any, to the party entitled to the receipt of those funds.

22. Pursuant to Pa.R.C.P. 1533(d), the Receiver is directed to post security, in cash or by way of a bond in the amount of $50,000.00.

23. The Receiver and any party hereto may, at any time, upon proper notice of the parties who have appeared in this action, apply to this Court for further or other instructions, for further power necessary to enable the Receiver to properly fulfill its duties as Receiver, for limitations of such powers or for other modifications to protect such parties' interests.

24. Defendant is enjoined from obstructing or interfering with (A) the Receiver's full and unfettered access to the Property, or (B) the Receiver's efforts to receive, collect and administer income and materials associated with the Property. Defendant is also enjoined from retaining, taking possession of, exercising control over, assigning, or conveying any asset, right, privilege, or interest regarding the Property, or rights and privileges associated with the Property.

25. The Receiver shall serve in the capacity of a court appointed receiver and have such immunities from claims, liabilities, or lawsuits, whether in contract or in tort, arising from the performance of duties authorized by this Order, and as are provided under applicable law.

26. The Receiver shall provide any party with reasonable access to the Property or any portion thereof, for the purposes of inspection of condition and occupancy, or appraisal thereof, and shall provide such other information as is reasonably requested by any licensed, professional appraiser for the purposes of appraisal of the Property or any portion thereof.

27. Notwithstanding anything to the contrary above, nothing in this Order shall limit or disturb Plaintiff's right to foreclose and execute on the Property and divest all junior lien holders of their interest pursuant to a Sheriff's Sale of the Property.

28. The Defendant and Intervenor (Mohsin Khawaja), through their undersigned counsel, have consented to the appointment of the Receiver, under and subject to the terms and conditions of this Stipulated Order and on the further condition that nothing herein shall be construed as, or have the effect of an admission to any fact, or waiver or limitation of any claim or defense relating to the underlying Complaint in foreclosure in this action or in any related proceedings, all such claims and defenses being expressly preserved hereby.

29. The Court retains jurisdiction over this matter as necessary to enforce or modify the powers of the Receiver and/or to compel a performance of and compliance with this Order. The Receiver and any party hereto are authorized, upon application to this Court, to seek further enforcement and relief as necessary.

STIPULATED AND AGREED TO BY:

| WEIR GREENBLATT PIERCE LLP | REGIONAL BANKRUPTCY CENTER OF SOUTHEASTERN PA, P.C. |
|---|---|
| */s/ David V. Dzara* | */s/ Roger V. Ashodian* |
| David V. Dzara, Esquire | Roger V. Ashodian, Esquire |
| The Widener Building, Suite 500 | 101 West Chester Pike, Suite 1A |
| 1339 Chestnut Street | Havertown, PA 19083 |
| Philadelphia, PA 19107 | (610) 446-6800 |
| (215) 665-8181 | rashodian@schollashodian.com |
| ddzara@wgpllp.com | *Attorneys for Defendant* |
| *Attorneys for Plaintiff* | |

FOEHL & EYRE, P.C.

*/s/ Robert B. Eyre*
Robert B. Eyre, Esquire
432 North Easton Road
Glenside, PA 19038
(610) 566-5926
rob@foehllaw.com
*Attorneys for Intervenor*


IT IS SO ORDERED.

_____  3/18/22
BARRY C. DOZOR, J.

FILED
03-22-2022 09:55 AM
OFFICE OF JUDICIAL SUPPORT
DELAWARE COUNTY, PA