## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>MBMK PROPERTY HOLDINGS, LLC<br><br>        Debtor. | Chapter 11<br><br>Bankruptcy No.: 22-13121-mdc |
| MBMK Property Holdings, LLC,<br><br>Plaintiff,<br><br>v.<br><br>Wilmington Trust, National Association, As Trustee for the Benefit of the Holders of CoreVest American Finance 2018-2 Trust Mortgage Pass-Through Certificates; Bay Management Group of Philadelphia, LLC; James Paul, d/b/a James Paul of the ALPS Group; and, ALPS Group, Inc. d/b/a James Paul The ALPS Group,<br><br>Defendants. | Adv. Pro. No.: 23-00062-mdc |

**WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE HOLDERS OF COREVEST AMERICAN FINANCE 2018-2 TRUST MORTGAGE PASS-THROUGH CERTIFICATES, MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COUNTS I, II, IV, AND V OF ADVERSARY COMPLAINT FOR FAILURE TO STATE A CLAIM**

Comes now, Wilmington Trust, National Association, as Trustee for the Benefit of the Holders of CoreVest American Finance 2018-2 Trust Mortgage Pass-Through Certificates ("Lender"), by its undersigned counsel, and files this Memorandum of Law in Support of its Motion to Dismiss Counts I, II, IV, and V of Debtor's Adversary Proceeding under Rule 12(b)(6) of the Federal Rules of Civil Procedure, applicable in this proceeding pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, for failure to state a claim upon which relief may be granted.

## STATEMENT OF FACTS

Lender is a secured creditor asserting a claim of $2,084,794.88 in this Case. Adversary Complaint ("Compl") ¶ 30. On September 27, 2018 CoreVest American Finance Lender LLC ("Lender"), predecessor-in-interest to Lender, entered into a commercial Loan Agreement (the "Loan Agreement") with Debtor (the "Loan"). Compl. ¶¶ 29, 31. On that same date, Debtor also executed and delivered to Lender a Promissory Note (the "Note") in the original principal amount of $1,120,700.00. Compl. ¶ 31. To induce Lender to make the Loan, both Matthew Stephen Breen ("Breen") and Mohsin Khawaja ("Khawaja") also executed a Sponsor Guaranty with Lender. ("Sponsor Guaranty") that, in part, obligated Breen and Khawaja to irrevocably and unconditionally guarantee all of Borrower's monetary obligations under the Note and Loan Agreement. Compl. ¶ 31.

To secure payment of the Loan, Debtor further executed and delivered to Lender an Open-Ended Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated September 26, 2019, to be effective as of September 27, 2018 (the "Philadelphia County Mortgage"), on two real properties situated in Philadelphia County, Pennsylvania (collectively, the "Philadelphia County Mortgaged Property"). To secure payment of the Loan, Debtor further executed and delivered to Lender an Open-Ended Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated September 26, 2019, to be effective as of September 27, 2018 (the 'Delaware County Mortgage"), on 11 real properties situated in Delaware County, Pennsylvania (collectively, the "Delaware County Mortgaged Property"). Compl. ¶ 31. On or about December 13, 2018, the Loan Documents were assigned to Lender in connection with an Omnibus Assignment of Loan Document. Compl. ¶ 29.

On August 30, 2019, Khawaja filed an individual Chapter 7 bankruptcy petition in this

Court, *In re Mohsin Khawaja*, Case No. 19-15430-mdc (the "Khawaja Bankruptcy"). Compl. ¶ 40.

As the result of Khawaja's bankruptcy filing, he lost his management rights in MBMK Asset

Management, LLC, the sole managing member of Debtor. ¶ 41.

Pursuant to Section 8.1(d) of the Loan Agreement, Khawaja's Bankruptcy filing

constituted an event of default, authorizing Lender to exercise enforcement of its rights thereunder.

Compl. ¶ 42. On September 3, 2019, Lender, in response to the Khawaja Bankruptcy, and in

accordance with the effective Property Management Agreement in place with Debtor, agreed to

replace the existing property management company, Property Pals, LLC, with Bay Management

Group of Philadelphia, LLC ("BMG") to assume the role of Property Manager of the Debtor

Properties. Compl. ¶ 44. BMG served as the property manager from this time until March of 2022.

Compl. ¶ 72. Shortly thereafter, on January 9, 2020, Lender, through its loan servicer, Midland

Loan Services, a Division of PNC Bank, National Association ("Midland"), declared Debtor to be

in default and sent notice to the Debtors of its intent to accelerate the debt and initiate foreclosure

proceedings on the properties in Pennsylvania state court. Compl. ¶ 49.

On November 30, 2020, Lender notified Debtor of its intent to exercise its rights under the

assignment of security instrument provisions of the two mortgage documents, respectively

("Assignment Agreement"). Compl. ¶ 68. On December 9, 2020, Lender filed complaints in

Delaware County and Philadelphia County state courts to foreclose on the Debtor Properties

("State Court Receivership Cases"). Compl. ¶ 78. In addition to foreclosure relief, Lender filed an

Emergency Motion seeking appointment of a Receiver to take possession of the Debtor Properties

from Debtor accordingly, nominating Defendants James Paul ("Paul") of the ALPS Group, LLC

("ALPS") to serve as Receiver. Compl. ¶ 86. The Emergency Motion was initially denied, and

before a hearing could take place on the Receivership request generally, on February 10, 2021,

Debtor filed a Chapter 11 bankruptcy case before this Court, *In re. MBMK Property Holdings, LLC*, Case No. 21-10332-mdc. Compl. ¶ 89.

Debtor's first Chapter 11 bankruptcy case, which was filed immediately before the hearings on the foreclosure and receivership motions, was ultimately dismissed for failure to comply with various provisions of the Bankruptcy Code. Compl. ¶ 90. For nearly an entire calendar year, Breen failed to file any statements, schedules, Statement of Financial Affairs, proposed plan, nor monthly operating reports, and further failed to appear at any of the multiple rescheduled meetings of creditors, all of which inevitably resulted in the dismissal of Debtor's Chapter 11 bankruptcy case on January 25, 2022. Compl. ¶ 90.

Following dismissal, on February 23, 2022, Lender promptly sought to pursue its foreclosure of the Debtor Properties in the State Court Receivership Cases and filed an Emergency Motion for appointment of Defendant Paul to serve as Receiver in the Philadelphia County case and resumed its pending Emergency Motion in the Delaware County case for Paul's appointment as receiver in that case. Compl. ¶ 94. Lender's motions were granted on March 10, 2022 and March 18, 2022, respectively, and Orders appointing Paul as Receiver ("Receiver") were entered. Compl. ¶ 99.

On October 31, 2021, Breen filed an individual Chapter 13 bankruptcy before this Court, *In re Matthew S. Breen*, Case No. 21-129680-mdc, in which multiple adversary proceedings, objections to confirmation, and objections to claims were filed by multiple parties, including both the Debtor and Khawaja himself. *In re Matthew S. Breen*, Case No. 21--129680-mdc, Dkt. Nos. 48, 51, 53.

On June 30, 2022, Khawaja, who, less than one year prior, had filed a personal Chapter 7 bankruptcy and received a discharge of his personal liability on all debts owed at the time,

including the debt owed to Lender, was approved by this Court to purchase Breen's interest in

MBMK Asset Management and assumed control of the Debtor. Compl. ¶ 110. Instead of seeking

removal of Defendant Paul as Receiver in the Pennsylvania state courts in which he was appointed

just four months prior, on November 21, 2022 ("Petition Date"), Khawaja had the Debtor file the

current Chapter 11 case. Compl. ¶ 123.

On January 2, 2023, six weeks after the Petition Date, Debtor filed its Motion for Order

Compelling James Paul of ALPS Group, LLC and Agents to Comply with Bankruptcy Code

§ 543(b)(11 U.S.C. § 543(b)) ("Turnover Motion"). Compl. ¶ 128. On January 17, 2023, Lender

filed its Response to the Turnover Motion "and Affirmative Request for Relief Under

11 U.S.C. § 543(d)(1)" ("Response to Turnover Motion"). Dkt. No. 41. In its Response to

Turnover Motion, Lender also requested that the Court excuse the Receiver from turnover pursuant

to 11 U.S.C. §543(d)[1]. *Id*. On January 20, 2023, Lender also filed a Motion for Relief from the

Automatic Stay in order to continue to pursue its rights and remedies against the Debtor and the

Debtor Properties in the State Court Receivership Cases. Dkt. No. 34.

On June 12, 2023, the Debtor and Lender entered an Agreed Order resolving the Turnover

Motion, in which the Receiver would surrender the Debtor Properties and the receivables

associated therewith, to the Debtor. Compl. ¶ 130. At no time prior to the entry of this Agreed

Order did Debtor file any motion to utilize cash collateral (i.e., rent receivables) or seek

authorization from the Court or from Lender permitting Debtor to control, use and/or manage the

Lender's cash collateral for the ongoing operation and preservation of Debtor's business. *See*

*generally In re MBMK Property Holdings, LLC*, Case No. 22-13121-mdc, ECF Docket Report.

---

[1] Lender requested that the Court "enter an order denying the Motion of the Debtor for Order Compelling James Paul of ALPS Group, LLC and Agents to Comply with Bankruptcy Code § 543(b)(11 U.S.C. § 543(b)), and *further enter an Order excusing the Receiver from the turnover requirements of § 543 pursuant to § 543(d)(1)*." Response to Turnover Motion, pp. 4 & 28-29.

## SUMMARY OF ARGUMENT

Debtor's Complaint alleges that Lender's legitimate efforts to protect its interests in the Debtor Properties, including the state court receivership appointment, created as a matter of law, an agency relationship between Lender and the Receiver that imposes vicarious liability upon the former for the actions of the latter. Counts I (Accounting), II (Breach of Contract), IV (Violation of Bankruptcy Code §§ 543(b) and 362(d)), and Count V (Equitable Subordination) of the Complaint fail to state claims against Lender.

Count II of the Complaint attempts to assert a claim against Lender for breach of contract. This claim fails to allege any action by Lender amounting to a breach of the Loan Documents. In Count II of the Complaint, Debtor alleges that Lender breached the Loan Documents by exercising its rights under the Loan Documents by declaring default against Debtor and seeking the enumerated relief thereafter. The Court should note that Debtor admits the filing of the Khawaja Bankruptcy was an enumerated "Event of Bankruptcy" under the Loan Agreement:

> 42.     The filing of the Khawaja Bankruptcy was also within the literal terms of an "Event of Bankruptcy" with respect to a "Restricted Person" (Khawaja), listed as an "Event of Default" in Section 8.1(d) of the Loan Agreement.

Compl. ¶ 42. None of the actions in declaring a default and pursing subsequent relief following the default are contract breaches. Debtor's claim for breach of contract must be dismissed.

Count IV of the Complaint seeks to hold Lender liable for alleged violations of 11 U.S.C. §§ 543 and 362. This effort to hold Lender legally and financially accountable for the alleged violation of these Bankruptcy Code sections by the Receiver is plainly erroneous and fails to state a claim upon which relief can be granted. This Count fails to state a claim because 11 U.S.C. § 543(b) does not provide a private right of action, Lender properly pursued relief under

11 U.S.C. §§ 543(d) and 362(d), and Lender was not a custodian or receiver nor was the Receiver acting as Lender's agent – rather, Receiver was acting it his capacity as an appointed officer of the Court.

Count V of the Complaint asserts that Lender's claim should be equitably subordinated "to all unsecured priority and non-priority claims in this case and/or (ii) transfer of the lien securing its claim to the Debtor's estate to allow the use of property otherwise subject to its lien for the payment of expenses of the estate." This Count fails to state a claim because the allegations in the Complaint do not describe how any particular alleged "inequitable conduct" caused any injury to other creditors, nor can it, because in fact there are no other creditors in this case to have been injured by the Lender's alleged wrongful conduct. The Complaint also fails to allege any unfair advantage vis-a-vis other creditors in this case (even assuming there were any) that would justify relief to the Debtor under 11 U.S.C. § 510(c).

Count I of the Complaint asks the Court to require an accounting from Lender under Bankruptcy Code §§ 105 and 543(b) and Bankruptcy Rule 6002. This claim also fails to state a claim upon which relief can be granted because there is no claim for an "accounting" recognized under the Bankruptcy Code or Rules.

### MOTION TO DISMISS STANDARD

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is applicable in adversary proceedings under Fed. R. Bankr. P. 7012. A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the factual allegations of a complaint, *see Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993), and determines whether the plaintiff is entitled to offer evidence to support the claims, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A defendant is entitled to dismissal of a complaint only if the

plaintiff has not pled enough facts to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 547, 127 S.Ct. 1955. A claim is facially plausible where the facts set forth in the complaint allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

In evaluating the plausibility of the plaintiff's claim, the court conducts a context-specific evaluation of the complaint, drawing from its judicial experience and common sense. *See, e.g., Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009); *In re Universal Marketing, Inc.*, 460 B.R. 828, 834 (Bankr. E.D. Pa. 2011) (citing authorities). In doing so, the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, viewing them in the light most favorable to the plaintiff. *See, e.g., Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Taliaferro v. Darby Township Zoning Board*, 458 F.3d 181, 188 (3d Cir. 2006). But, the court is not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955; *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. The Third Circuit Court of Appeals has condensed these principles into a three-part test:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pled factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quotations and citations omitted).

In assessing a Rule 12(b)(6) motion, the court may "consider the allegations in the complaint, exhibits attached to the complaint and matters of public record ... [as well as] 'undisputedly authentic' documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss. *Unite Nat'l Ret. Fund*

*v. Rosal Sportswear, Inc*., 2007 WL 2713051, at *4 (M.D. Pa. Sept. 14, 2007) (citing *Pension*

*Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993)); *see also*

*In re Angulo*, 2010 WL 1727999, at *12 n. 1 (Bankr. E.D. Pa. Apr. 23, 2010). *In re Boltz-*

*Rubinstein*, 574 B.R. 542, 547–48 (Bankr. E.D. Pa. 2017).

LEGAL ARGUMENT

**I.    Debtor's Claim for Breach of Contract Fails to State a Claim Against Lender**

Debtor's claim for breach of contract (Count II) alleges that Lender breached the Loan

Documents by: (a) declaring an Event of Default on January 9, 2020 based on the August 30, 2019

Khawaja Bankruptcy (Compl. ¶ 168a); (b) exercising remedies for the enforcement of the Khawaja

Bankruptcy event of default (Compl. ¶ 168b); and (c) using the Khawaja Bankruptcy event of

default "as a pretense for imposing new, unwarranted, and oppressive demands that [Lender] knew

or should have known the Debtor was incapable of performing" (Compl. ¶ 168c). It is clear,

however, that each of the allegations set forth above are valid and permissible actions Lender may

take pursuant to the Loan Documents in light of Debtor's Event of Default and its legal contractual

rights as a creditor.

Debtor further alleges that the Lender breached the Loan Documents by pursuing the

following remedies, which remedies are clearly enumerated in the Loan Documents between

Lender and Debtor: (a) taking possession and control of the Custodial Property (Compl. ¶ 171a);

(b) commencing the foreclosure actions in the State Court Receivership Cases (Compl. ¶ 171b);

(c) requesting the appointment of Defendants Paul and ALPS as Receiver in March of 2022

(Compl. ¶ 171c); (d) filing a proof of claim in this Case including "substantial, additional amounts

for Default Interest, Late Charges, Special Servicing Fees, Prepayment Penalty and Attorneys'

Fees (Compl. ¶ 171d); (e) asserting ownership of the rents for the Debtor Properties (Compl. ¶

171e); (f) objecting to the Turnover Motion (Compl. ¶ 171f); and (g) objecting to the Debtor's

June 20, 2023 Sale Motion (Compl. ¶ 171g). Debtor further argues that Lender's pursuit of its

contractual remedies is also a breach of the covenant of good faith and fair dealing. Although every

one of Debtor's claims is an action or remedy specifically enumerated in the Loan Documents,

Debtor seeks to attach liability for such action and pursuit of remedies to Lender. Here, Debtor's

claims against Lender must fail because each action taken by Lender – and each contractual

remedy pursued as well – constitutes Lender's valid exercise of its remedies under the Loan

Documents, to which Debtor expressly agreed to upon executing the Loan Documents.

At the outset, this Court should take judicial notice of two items with regard to Debtor's

claims. First, this Court must take notice that Debtor has never contested that the Loan Agreement

itself is not valid, nor has Debtor contested the validity of the other Loan Documents. Second, this

Court must also take notice that Debtor readily admits the filing of the Khawaja Bankruptcy was

– inarguably – an "Event of Bankruptcy" under the Loan Agreement:

> 42.      The filing of the Khawaja Bankruptcy was also within the literal terms of an
> "Event of Bankruptcy" with respect to a "Restricted Person" (Khawaja), listed as an "Event of
> Default" in Section 8.1(d) of the Loan Agreement.

Compl. ¶ 42. Ironically, in the very next breath, Debtor takes issue with Lender's declaration of

an Event of Default based upon the Khawaja Bankruptcy[2]. Debtor now argues that Lender was in

breach by pursuing remedies to which Debtor claims Lender was not entitled to under the Loan

Documents. Contrary to Debtor's assertion, none of the actions taken after Lender's declaration of

the Event of Default is a breach of contract under the Loan Documents; rather, such actions are

---

[2] Pursuant to Section 8.1(d) of the Loan Agreement, Khawaja's Bankruptcy filing constituted an Event of Default, authorizing Lender to exercise enforcement of its rights thereunder. Compl. ¶ 42.

lawful and permissible remedies that Lender can pursue under its contractual rights as a creditor.

     A.    <u>Debtor Fails to State a Claim for Breach of Contract Against Lender</u>

Under Pennsylvania law, a plaintiff must establish three elements to support a breach of contract claim: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages. *Udodi v. Stern*, 438 F.Supp.3d 293 (E.D. Pa 2020) (quoting *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003)). Here, Debtor has failed to set forth any factual allegations that Lender breached a single duty imposed by the contract (*i.e.*, Loan Documents). Rather, Debtor has identified – and outright admitted – the patently lawful and permissible actions Lender took to enforce its contractual rights while pursuing remedies as a result of Debtor's Event of Default.

Debtor states that "[t]he exercise of such remedies could only be proper if authorized by a valid and enforceable Event of Default under Loan Agreement." Compl. ¶ 172. Debtor admitted that Lender's declaration of the Event of Default based upon the Khawaja Bankruptcy was a valid action under the Loan Documents. Compl. ¶ 42. Debtor's breach of contract claim, however, is an affirmative statement and defense of its denial of liability to Lender. Under Debtor's proposed framework, every single party denying liability under a contract would have a claim for breach. In this way, Debtor argues that not only was Lender's declaration of an Event of Default under the Loan Documents a breach of contract by Lender, but Lender's *exercise of its valid contractual remedies as set forth in the Loan Documents*, was also a breach of contract. Not one of Lender's actions in declaring the Event of Default as a result of the Khawaja Bankruptcy and pursuing its contractual remedies under the Loan Documents thereafter are breaches of contract and Debtor's claim for breach of contract must be dismissed.

It is inarguable, and the Court can take judicial notice of these facts, that Lender's declaration of an Event of Default based upon the Khawaja Bankruptcy, and exercise of remedies

for the enforcement of the Event of Default, such as commencing the foreclosure actions in the State Court Receivership Cases, requesting appointment of a receiver over the Debtor Properties, filing a proof of claim in this Case, objecting to the Turnover Motion, objecting to the June 20, 2023 Sale Motion, and asserting ownership of the rents for the Debtor Properties are (1) lawful and specifically enumerated remedies Lender is entitled to under the Loan Documents, and (2), in the case of filing the proof of claim, objecting to the Turnover Motion, and Objecting to the June 20, 2023 Sale Motion, lawful and valid exercise of Lender's rights under the Bankruptcy Code. Debtor has no right and no basis to argue that Lender is not fully entitled to the rights and protections under the law. Debtor's claim for breach of contract must be dismissed for failure to state a claim upon which relief can be granted.

B.    The Duty of Good Faith Does *NOT* Extend to the Lender-Borrower Relationship

Debtor further alleges that Lender's pursuit and exercise of remedies under the Loan Documents after the Event of Default (the Khawaja Bankruptcy) was a violation of the implied covenant of good faith and fair dealing. Compl. ¶ 168b. As set forth below, Lender's pursuit of contractual remedies is not a breach of the implied duty of good faith and fair dealing because Pennsylvania has never extended the duty of good faith to the borrower-lender relationship.

Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. *Creeger Brick & Bldg. Supply, Inc. v. Mid-State Bank and Trust*, 560 A.2d 151, 153 (Pa.Super.1989). The duty of "good faith" has been defined as "honesty in fact in the conduct or transaction concerned." *Cable & Associates Ins. Agency, Inc. v. Commercial National Bank of Pennsylvania*, 875 A.2d 361, 364 (Pa.Super.2005) (quoting Restatement (Second) of Contracts § 705, Comment a)). Pennsylvania has further recognized a duty of "good faith" inherent in certain legal relationships, such as insurer and insured. *Cable*, 875 A.2d at 364

(quoting *Creeger*, 560 A.2d at 153). However, this inherent duty of good faith does <u>not</u> extend to

the lender-borrower relationship. *Id.* (emphasis added); *Creeger*, 560 A.2d at 154. A lender does

not violate a separate duty of good faith by adhering to its agreement with borrower and enforcing

its legal and contractual rights as a creditor. *Id.* "A party proceeding on the theory that a lender

violated its contractual duty of good faith must demonstrate more than the fact that a lender

negotiated terms of a loan which are favorable to itself." *Cable & Associates*, 875 A.2d at 364

(quoting *Creeger*, 560 A.2d at 153). The duty of good faith imposed on contracting parties does

not compel a lender to surrender rights granted by statute or conferred to the lender by the terms

of the loan contract.

In *Cable & Associates*, the borrower filed claims against lender under theories of "Lender's

Liability" and "Bad Faith," accusing lender of violating its contractual duty of good faith by

refusing to surrender its security interest on a portion of borrower's property – accounts receivable

– so that borrower could sell or otherwise transfer the property. The court in *Cable & Associates*

found that borrower failed to state a valid claim, as a matter of law, that lender breached a

contractual duty of good faith by its refusal to release collateral, to which it was entitled under the

terms of the loan agreement, to enable borrower to obtain additional financing by factoring its

accounts receivable.

Citing to *Creeger*, the *Angino* court likewise found that lender did not violate a duty of

good faith and fair dealing allegedly owed to a borrower by merely adhering to the parties'

agreement and enforcing its legal rights as creditor upon borrowers' default, notwithstanding the

allegation that lender had failed to strictly enforce technical contract terms prior to the housing

market downturn. *Angino & Rovner, PC, et al v. Santander Bank, N.A.*, No. 489 MDA 2014, 2015

WL 645714 (Pa.Super. Jan. 28, 2015). The *Angino* court found that lender simply adhered to the

parties' agreement and enforced its legal rights as borrower's creditor. *Id.*

Here, like *Cable & Associates* and *Angino*, Debtor and Lender have the relationship of borrower and lender, and a lending institution does not violate a duty of good faith by adhering to its agreement with the borrower or by enforcing its legal and contractual rights against a creditor. *Creeger*, 560 A.2d 151. The duty of good faith imposed on contracting parties does not compel a lender to surrender rights granted by statute or conferred to the lender by the terms of the loan contract. Pursuant to the Loan Documents, upon an Event of a Default, Lender has the right to seek the following remedies: (i) declare the entire unpaid Debt to be immediately due and payable; (ii) institute proceedings, judicial or otherwise, for the complete or partial foreclosure of the mortgages under any applicable provision of law; (iii) seek appointment of a receiver over the Debtor Properties; (iv) assert ownership of the rents for the Debtor Properties; (v) take possession and control of the Debtor Properties; and (vi) exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, among others.

Not only does the duty of good faith not extend to the borrower-lender relationship, which exists here between Debtor and Lender, but Lender's ultimate decision to exercise its contractual rights pursuant to the Loan Documents, as a matter of law, simply cannot constitute a breach of contractual good faith under Pennsylvania law.

There is no argument that Debtor and Defendant are before this Court due to any relationship other than that of borrower and lender. Because Pennsylvania law has never extended the duty of good faith to the borrower-lender relationship, Debtor's claim fails to state a claim upon which relief can be granted. Moreover, even if the Court found such a duty to exist in this borrower-lender relationship, Pennsylvania case law is clear that Lender's ultimate decision to exercise its contractual rights pursuant to the Loan Documents, as a matter of law, simply cannot

constitute a breach of contractual good faith under Pennsylvania law. Debtor's claim for breach of contract under Count II must be dismissed as a matter of law.

      C.    <u>Debtor's Fails to State a Claim for Bad Faith Against Lender</u>

While Debtor fails to bring a standalone claim of "bad faith" against Lender, Debtor's Complaint does allege that Lender's action to enforce its contractual remedies, demand for Default Interest upon the Event of Default, and other conduct were also taken in bad faith. Compl. ¶¶ 54, 63, and 67. In effect, Debtor is making an argument for "bad faith breach of contract" without plainly stating so. Debtor's bad faith allegations, as applied to the breach of contract claim in Count II, must be denied because (1) Debtor has failed to bring standalone bad faith claim in its Complaint, (2) the bad faith claim sounds in tort, and (3) the courts of Pennsylvania have never permitted a tort claim based entirely upon an alleged breach of contract.

There is "no common law remedy in Pennsylvania for bad faith conduct." *Sheehan v. Anderson*, No. 98-5516, 2000 WL 288116, at *4 (E.D. Pa. Mar. 17, 2000), *aff'd* 263 F.3d 159 (3d Cir. 2001), citing *Polelli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 530 (3d Cir. 1997). Breach of the duty of good faith and fair dealing is an impermissible attempt to transform a breach of contract action into a tort action to recover punitive damages. *AM/PM Franchise v. Atlantic Richfield*, 542 A.2d 90 (Pa.Super.1988), *rev'd on other grounds*, 584 A.2d 915 (Pa. 1990). Here, any allegation of violation of the Loan Documents must be properly brought as a breach of contract and not as any separate county, claim, or allegation.

Debtor's Complaint further lacks a sufficient factual basis upon which Debtor's attempt to allege a claim for bad faith can be founded. Debtor's allegations further fails to meet the stringent pleading standards of Fed. R. Civ. P. 9(b), to allege fraud or mistake, Debtor must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, or other

conditions of a person's mind may be alleged generally. *Id.* Further, Debtor "must state the circumstances of the alleged fraud with sufficient particularity to place Lender on notice of the "precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188 (2007) (citing *Lum v. Bank of America*, 361 F.3d 217, 223-224 (3d Cir. 2004).

In *Frederico*, the Court of Appeals agreed with the District Court's finding that Federico's fraud claim did not meet the stringent pleading requirements of Fed. R. Civ. P. 9(b) and that Frederico further failed to state with particularity the circumstances of the alleged fraud or otherwise inject the requisite precision into her allegations. *Frederico*, 507 F.3d at 200. Likewise, Debtor's Complaint fails to meet the stringent pleading requirements of Rule 9(b) as it fails to state with particularity the circumstances of the alleged bad faith actions taken by Lender.

Further, because Debtor has presented no standalone bad faith claim in its Complaint, any bad faith claim brought would have to sound in tort, and the courts of Pennsylvania have never permitted a tort claim based entirely upon an alleged breach of contract, Debtor's claim for breach of contract must be dismissed and any further allegations regarding a "bad faith breach of contract" must also be dismissed by this Court.

## II.    Debtor's Claims of Violations of 11 U.S.C. § 543(b) and § 362(a) Do Not State a Cause of Action Against Lender.

### A.    No Private Right of Action Contemplated Under 11 U.S.C. § 543(b).

In Count IV, Debtor asserts that Lender is vicariously liable for the alleged misconduct of the Receiver in the months following MBMK's second bankruptcy filing. The claims of misconduct cited by Debtor and submitted as the basis upon which its claim in Count IV is asserted, are: 1) the unauthorized continued possession of the Debtor Properties after the Petition Date; 2) the unauthorized assessment and payment of management fees and other expenses related to the Receivership administration; 3) allowing the Debtor Properties to fall into disrepair for the seven

month period between the Petition Date and the Receiver's turnover to the Debtor; 4) deprivation

of Debtor's use of the Debtor Properties; 5) accrual of fees and penalties for nonpayment of

property taxes; 6) frustration of Debtor's efforts to dispose of the Debtor Properties; and 7)

interference with and damage to Debtor's contractual relationships with tenants. Although every

one of these claims is based on the actions and conduct of the Receiver, as an officer appointed by

the courts, Debtor seeks to extend any liability for such alleged misconduct, to Lender.[3] However,

the claim against Lender must fail because Congress never established a private cause of action

for debtors affected by a custodian's noncompliance with the turnover requirements – let alone a

non-custodian lender under 11 U.S.C. § 543(b).

Cases in which a party seeks to hold others accountable for another's alleged violations of

rights and/or confrontations on matters that are the subject of federal legislation based on what

might arguably be considered an implied private right of action have been overwhelmingly in the

context of infringement upon individual constitutional rights. In these cases, the analysis most

commonly applied by courts considering whether an action might exist centers around the

availability of alternative remedies, either established within the framework of that law or

elsewhere. In *Anderson v. Sandoval*, 532 U.S. 275 (2001), the Supreme Court explicitly set forth

this standard:

> The judicial task is to interpret the statute Congress has passed to determine whether
> it displays an intent to create not just a private right but also a private remedy.
> Statutory intent on this latter point is determinative. Without it, a cause of action
> does not exist and courts may not create one, no matter how desirable that might be
> as a policy matter, or how compatible with the statute.

*Id*. at 286-87 (internal citations omitted).

---

[3] "[Wilmington] did nothing to address the lack of any authorization of Defendants Paul and ALPS to continue in possession, custody and control or to account for their administration of the Debtor's property pending resolution of the Turnover Motion." Compl. ¶ 197.

When necessary, courts also turn to the law's legislative history for any inference that may be gleaned from the relevant sources associated with the law's creation, such as congressional hearings, revisions and changes, recorded statements from bill sponsors, and other policy considerations contextually underlying the law generally. *See, Wisniewski v. Rodale, Inc*., 510 F.3d 294, 303 (3d Cir. 2007) ("In the aftermath of *Sandoval* and its post-*Cort* predecessors, we have made Congressional intent the 'sole touchstone of our inquiry.'"); *McGovern v. City of Philadelphia*, No. 08-1632, p. 15 (3d Cir. 2009) ("The legislative history shows that the addition of subsection (b) was targeted at *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), which Congress declared had a "disastrous" impact on race discrimination claims by narrowly interpreting the meaning of "make and enforce contracts" in § 1981. H.R. Rep. No. 102-40(II), at 36 (1991), *reprinted in* 1991 U.S.C.C.A.N. 694, 731.")).

There exists no legislative history indicating any intent to create a private right of action that may be pursued by a debtor – let alone a remedy – against a creditor for its failure to turnover property under the control of a court-appointed receiver to the bankruptcy estate under 11 U.S.C. § 543(b). Count IV of Debtor's Complaint asserts that Defendants are all equally liable to the Debtor for monetary and other equitable damages, including punitive damages, for their alleged ongoing refusals to turnover property to the bankruptcy estate, thus violating 11 U.S.C. § 543(b). Debtor's claims in Count IV must fail because, under 11 U.S.C. § 543, no private cause of action exists allowing such claims to be brought against a receiver in the first place – let alone against a non-custodian lender not in possession of the property – for the receiver's failure to turnover property upon the filing of a Chapter 11 bankruptcy petition.

Debtor has provided no statutory reference or common law precedent to establish any such individual right for a custodian's alleged violation of the requirements of section 543, because

simply stated, none exist. An entity's "mere retention" of estate property after the filing of a bankruptcy petition does not on its own violate section 362(a). *City of Chicago v. Fulton*, 19-357, 592 U.S. __ (2021). If mere retention by a custodian of property does not automatically give rise to a claim for stay violation, then certainly a non-custodian lender who has no control over estate assets in the hands of a duly court-appointed receiver cannot be liable for that the custodian's failure to turnover property under section 362(a). While under section 105, the Court is bestowed with discretion to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," this does not provide the Court with the means to create a cause of action where none exists. *E.g.*, *In re Continental Airlines*, 203 F.3d 203, 211 (3rd Cir. 2000); *Thomas v. City of Philadelphia*, 759 F. App'x 110, 111 (3rd Cir. 2019).

Debtor's claim against Lender based on allegations of the Receiver's non-compliance with section 543 fails to state a claim against Lender, and therefore must be dismissed accordingly.

B.      No Claim Exists Against Lender for Pursuing Relief Under § 543(d) and § 362(d)

Under § 543(d), a creditor can seek to excuse the receiver from compliance with the turnover requirements of 11 U.S.C. § 543(a) and (b). Pursuant to § 543(d)(1), the court must consider whether the interest of creditors is better served by the receiver remaining in possession of the debtor's assets, or turning them over. Courts typically consider some of the following non-exhaustive factors: likelihood of reorganization; probability that funds required for reorganization will be available; whether there are instances of mismanagement by the debtor; whether the debtor will use the turnover property for the benefit of creditors; and the existence of avoidance claims. *See In re Poplar Springs Apartments of Atlanta, Ltd.*, 103 B.R. 146, 150 (Bankr. S.D. Ohio 1989); *In re Falconridge LLC*, 2007 Bankr. LEXIS 3755, *21, 22 (Bankr. N.D. Ill. 2007) (citations omitted); *Dill v. Dime Sav. Bank, FSB (In re Dill)*, 163 B.R. 221, 225 (E.D.N.Y. 1994) (citations

omitted). Even if these factors are resolved in favor of the debtor, the court may still excuse compliance if turnover would be injurious to creditors. *In re Poplar Springs Apartments of Atlanta, Ltd*., 103 B.R. at 150.

A request for excuse from the turnover requirements under § 543(d) is similar in nature to the abstention doctrine of § 305.  *See In re Constable Plaza Assocs, L.P.*, 125 B.R. 98, 103 (Bankr. S.D.N.Y. 1991) (citing *In re Pine Lake Village Apt. Co.*, 17 B.R. 829, 833 (Bankr. S.D.N.Y. 1982)). Section 305(a) authorizes dismissal or suspension of proceedings only in the interest of both the creditors and the debtor. *Foundry of Barrington P'ship v. Barrett*, 129 B.R. at 555. Unlike § 305, with § 543(d) the sole concern is the interests of all creditors. *In re Poplar Springs Apartments of Atlanta, Ltd*., 103 B.R. at 150. The interests of the debtor are not to be considered in the court's decision. *Id*. (citing *Dill*, 163 B.R. at 226; *Foundry of Barrington P'ship,* 129 B.R. at 557). While § 543(d) discusses excuse from the turnover requirements "after notice and hearing," nothing in the statute necessarily requires an evidentiary hearing be held. *Dill*, 163 B.R. at 224.

Lender is essentially the only creditor involved in this bankruptcy proceeding. As the fundamental objective of the reorganization process is the preservation and protection of the interests of creditors, Lender, which was not responsible for the alleged failure to turnover property to the estate, is the exact intended recipient of the latitude contemplated under the abstention doctrine, and the Chapter 11 process generally. As stated above, mere retention of an estate asset does not on its own constitute a violation of section 362(a). *See Chicago v. Fulton*. In this case, Lender requested in its Response to Motion for Turnover to allow the Receiver to retain control of the Debtor Properties pursuant to 11 U.S.C. § 543(d). Lender also simultaneously requested relief from the automatic stay under 11 U.S.C. § 362(d) in order to pursue its remedies in the State Court

Receivership Cases. In doing so, Lender merely sought relief available to it under 11 U.S.C. §§ 362(d) and 543(d), asserting its preference that the disputes with the Debtor be resolved in the State Court Receivership Cases. There is no support under the Bankruptcy Code for a claim against the Lender for pursuing relief under these Bankruptcy Code sections.

As such, Debtor's claims for damages based on Lender's request for the Court to permit the Receiver to retain custody of the Debtor Properties and request for stay relief does not state a cause of action, and Count IV should be dismissed under 12(b)(6) accordingly.

     C.    <u>Wilmington Trust Not a Receiver/Custodian.</u>

Lender violated neither § 543(b) nor § 362(a) because, as a matter of law, Lender was not, and was not at the time the alleged violations occurred, a "custodian" or "receiver" and did not otherwise have any authority or control or influence over the actions and/or conduct of the Receiver duly appointed by Pennsylvania state courts prior to the filing of this Chapter 11 case. In Pennsylvania, the decision to appoint a receiver lies within the sound discretion of the court. *Metropolitan Life Ins. Co. v. Liberty Center Venture*, 650 A.2d 887, 889 (Pa.Super.1994); *Bogosian v. Foerderer Tract Committee, Inc.*, 399 A.2d 408, 411 (Pa.Super.1979). The Bankruptcy Code, which identifies the role of "receiver" as "custodian," defines the pertinent characteristics, authorities, and duties of custodian as follows:

> (A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;
> (B) assignee under a general assignment for the benefit of the debtor's creditors; or
> (C) trustee, receiver, or agent under applicable law or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

11 U.S.C. § 101(11).

The Receiver, irrespective of Lender's initial nomination thereof and presentation to the

courts as a qualified candidate, was properly appointed by the Pennsylvania state courts in proceedings permitted under the Loan Documents and otherwise authorized by state law, as receiver of the Debtor Properties. Lender was never custodian, agent or otherwise in control over actions of the Receiver. Rather, a receiver is "the officer, the executive hand, of a court of equity." *Warner v. Conn.*, 32 A.2d 740, 741 (Pa. 1943) (*citing Schwartz v. Keystone Oil Co.*, 25 A. 1018, 1018–19 (Pa.1893)). Moreover, Debtor failed to take any action to seek relief against the Receiver in either of the State Court Receivership Cases – the courts of competent jurisdiction who granted power to Receiver in the first place.

A non-custodian that does not possess property cannot exercise possession nor can it turnover property. *See In re Camdenton United Super, Inc.* 140 B.R. 523, 525 (Bankr. W.D. Mo. 1992) (explaining, based on the legislative history of § 101(11), that "to be considered a custodian, an entity must be engaged in the general administration of the debtor's assets for the benefit of creditors.") (*citations omitted*). The legislative history explains that the word "custodian" was used "to facilitate drafting, and means prepetition liquidator of the debtor's property.... The definition is intended to include other officers of the court if their functions are substantially similar to those of a receiver or trustee." H.Rep. No. 595, 95th Cong., 1st Sess. 310 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6267.). Despite an interested party's proximity to the subject asset of the bankruptcy estate, such circumstances alone are insufficient to establish a legally identifiable receivership. *See In re Buccino*, 439 B.R. 761 (2010) (Bank was not "custodian" of debtor's property so as to be subject to turnover order for money which bank held in escrow as result of agreement to resolve dispute that arose at time of closing of sale of debtor's assets, where bank was acting neither under court appointment nor under assignment for benefit of creditors, and bank was not administering escrow funds for benefit of debtor's creditors.).

22

At no point did Lender exercise any control, nor did it ever have authority on which to attempt any such action, with respect to the Debtor Property or the conduct of the Receiver at any time following the Petition Date. Indeed, only a custodian and/or receiver, duly appointed by a court of competent jurisdiction, has any authority or control over the subject property. *See In re. Greenleaf Apartments Ltd*., 158 BR 456, 458 (1993) ("the allegation that [lender] maintained control over the apartment project once the Receiver was appointed is incorrect as a matter of law.").

D.       No Agency Relationship between Wilmington Trust and Receiver.

Just as Lender was manifestly not a custodian with any measure of control over the Debtor Properties, neither did it have any degree of control or influence over the actions or objectives of the Receiver. Rather, once appointed by the Pennsylvania state courts, the Receiver became an officer of the courts, subject only to the courts' control. *See Greenleaf Apartments Ltd*., at 458 ("Mr. Soltesz, as Receiver, cannot be an agent of Wells Fargo, Wells Fargo would have had to have had the control over him required for an agency relationship. However, a receiver is a court appointed officer who is controlled exclusively by the court.); *Ledbetter v. Farmers Bank & Trust Co.,* 142 F. 2d 147, 150 (4th Cir. 1944) (Affirming the lower court's dismissal of the complaint, the Court of appeals for the Fourth Circuit held that the receiver was not the agent of the mortgagees, but was the agent only of the court which had appointed him….").).

Here, Lender sought appointment of a receiver in the State Court Receivership Cases and suggested Defendant Paul as Receiver to take possession of the Debtor Properties as set forth under the applicable Loan Documents and Receivership Orders. After the Receiver was appointed, Lender took no further action nor intervened in any manner that involved management or maintenance or physical presence at the Debtor Properties. Lender's only interactions in the case

thereafter were limited to communications with Debtor's counsel and filing miscellaneous pleadings throughout this case since the receivership was approved. None of Lender's conduct involved the various duties, tasks and obligations commonly or statutorily associated with the role of receiver or custodian. Because a receiver is an officer of the court, he is not to be regarded as an agent or representative of either party to an action." *In re. Greenleaf Apartments*, at 459.

In *Ledbetter,* the plaintiffs contended that a receiver appointed by a state court in a mortgage foreclosure proceeding acted as the agent and representative of the mortgagees in wrongfully dealing with the receivership property. *Ledbetter*, 142 F.2d at 150. The Court reaffirmed the rule that *"[i]t is well recognized that a receiver is the agent only of the court appointing him; he represents the court rather than the parties. He is custodian of property which is under the control of the court." Id.* (quoting *Booth v. Clark*, 58 U.S. 322, 338 (1854)). Though a receiver appointed by the court acts for all parties interested, he is not the agent of the parties in the sense that each or any of the parties is responsible for his acts. *Id*. Further, the fact that Lender originally presented Defendants Paul and ALPS to serve as Receiver has no relevance and certainly does not impose any manner of agency relationship, affiliation, influence or control over or between Lender and the Defendant Receivers. *Greenleaf Apartments, Ltd*., at 459 (quoting *Marshall v. Walter A. Caverly Co*., 18 Ohio Dec. 157, 158 (C.P. Montgomery County 1907).) ("Suggestion to appoint receiver is irrelevant because 'a receiver derives his authority from the act of the court appointing him, and not from the act of the parties at whose suggestion or by whose consent he is appointed'").

    E.    No Factual or Legal Basis to Support Debtor's Allegations

As established herein, Plaintiff has not met the applicable 12(b)(6) standard. Debtor's Complaint, which at times appears to be more of an exercise in creative writing than a properly

supported pleading, claims (without any factual reference or supporting basis) that Lender "exercised effective influence and control over, acted in concert with and aided and abetted Defendants Paul and ALPS in the continued exercise of possession and control of the Custodial Property in violation of Bankruptcy Code §§ 543(b) and 362(a)." Compl. ¶ 202. Aside from the total void of factual support for this statement, and despite the fact that Lender could not have exerted any such control in the first place (as established above), Lender is unaware of any provision in the Bankruptcy Code that establishes an actionable claim for "aiding and abetting" a court appointed Receiver in the administration of its duties. Simply stated, one does not exist.

Debtor further characterizes Lender's alleged violations as "willful, malicious and in callous disregard for the interests of the Debtor and its bankruptcy estate," thereby "warranting the award of actual and punitive damages, attorneys' fees and costs against the Defendants." *Id.* ¶ 204. Debtor seems to be referring to conduct described in 11 U.S.C. § 523(a)(6), in which a debtor's discharge may be denied if the subject debt was for "willful and malicious injury by the debtor to another entity or to the property of another entity." Unfortunately, as with multiple other claims throughout its Complaint, Debtor fails to identify the source and/or authority upon which such claim is asserted. Assuming this claim is referencing the almost identical language of § 523(a)(6), such provision does not establish a claim against Lender, nor is it even relevant under the circumstances of this case. To begin with, this section addresses the dischargeability of a debt, and as such can only be asserted by a creditor against the debtor, not the other way around. Obviously, Lender is not seeking to discharge a debt owed to the Debtor. Nevertheless, "willful and malicious injury" under § 523(a)(6) requires a showing that the injuries inflicted were deliberately or intentionally meant to injure, not merely a deliberate or intentional act that leads to an injury, and thus requires more than solely "reckless or negligent conduct." *In re. Picard*, 640 B.R. 545, 553

(Bankr. E.D. PA. June 10, 2022). Debtor seems to have fabricated a nonexistent claim under a mistaken and misunderstood theory of liability in an effort to not only attribute liability to Lender where none exists, but to go even further and generate its own version of the facts and the law in order to include an additional claim for punitive damages.

Because Debtor has failed to identify to identify any legitimate, ascertainable or even coherent basis upon which a cause of action for violation of sections 543(b) and 362(a) exists against Lender, Count IV fails to meet the pleading requirements of 12(b)(6) and therefore must be dismissed accordingly.

### III.    Debtor's Claim for Equitable Subordination Does Not State a Claim Against Lender Under 11 U.S.C. § 510(c).

Plaintiff fails to plead facts to justify the application of equitable subordination under 11 U.S.C. § 510(c). In Count V, Plaintiff merely incorporates the entirety of the prior Complaint allegations by reference and summarily asserts "the actions of [Lender] set forth in the Complaint constitute inequitable conduct that has caused injury to other creditors or conferred an unfair advantage to [Lender]." (Compl. ¶¶ 205 & 208). This Count fails to state a claim for equitable subordination against Lender. Specifically, the Complaint does not describe how any particular alleged "inequitable conduct" caused any injury to other creditors, nor can it, because there are no other creditors that could have been injured by the Lender's alleged wrongful conduct. Similarly, the Complaint fails to allege any unfair advantage vis-a-vis other creditors (even assuming there were any) because, once again, none exist. Therefore, Count V fails to state a claim against Lender for equitable subordination under 11 U.S.C. § 510(c).

Bankruptcy Code section 510(c)(1) provides that "the court may—under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another

allowed interest." 11 U.S.C. § 510(c)(1). The Third Circuit has described equitable subordination as a "remedial rather than penal" doctrine designed "to undo or to offset any inequality in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of the bankruptcy results." *Lucent Techs. Inc.* (*In re Winstar Commc'ns, Inc.*) 554 F.3d 382, 411 (3d Cir. 2009) (*quoting Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 323 F.3d 228, 233–34 (3d Cir. 2003)). Three conditions must be established for application of equitable subordination: (1) "[t]he claimant must have engaged in some type of inequitable conduct;" (2) "[t]he misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant;" and (3) "[e]quitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy [Code]." *Id.* (quoting *Benjamin v. Diamond* (*In re Mobile Steel Co.*), 563 F.2d 692, 699–700 (5th Cir. 1977)).

While equitable subordination can apply to a non-insider creditor, such as a lender, the circumstances supporting such claim are few and far between. *United States v. State Street Bank and Trust Co.*, 520 B.R. 29, 87 (Bankr. D. Del. 2014) (*citing ABF Capital Mgmt. v. Kidder Peabody & Co.* (*In re Granite Partners, L.P.*), 210 B.R. 508, 515 (Bankr. S.D.N.Y. 1997)). Courts have described the type of inequitable conduct needed to equitably subordinate a non-insider creditor as "gross and egregious," "tantamount to fraud, misrepresentation, overreaching or spoliation," or "involving moral turpitude." *Id.* Equitable subordination is an extraordinary remedy, which is generally not invoked against a non-insider creditor unless the claimant can demonstrate that the creditor has engaged in grossly egregious misconduct tantamount to fraud, overreaching, or spoliation. *In re Winstar Commc'ns, Inc.*, 554 F.3d at 412; *see also In re M. Paolella & Sons, Inc.*, 161 B.R. 107, 122 (E.D. Penn. 1993). Further, the claimant seeking

subordination must show detrimental reliance by a creditor on the alleged wrongdoing creditor's misconduct. *Id.*

In making an equitable subordination determination, the conduct of non-insider creditors is subject to less exacting scrutiny than that of insider creditors. *Matter of Teltronics Serv., Inc.*, 29 B.R. 139, 169 (Bankr. E.D.N.Y. 1983). In addition, the party seeking subordination must establish the egregious conduct with particularity by a preponderance of the evidence. *Id.* Courts commonly recognize that normal lender conduct, including enforcement of contract rights in accordance with the contract, is generally not inequitable conduct. A lender's goal is to recover as much of the outstanding amount as possible, which is "understandable" and "permissible." *In re M Paolella & Sons*, 161 B.R. at 120 ("Generally, a creditor does not act inequitably in exercising its contractual rights."). Thus, to be actionable, the conduct of a non-insider creditor must rise to the level of "gross misconduct tantamount to fraud, misrepresentation, overreaching, or spoliation." *Dornier Aviation (N. Am.)*, 2005 WL 4781236, at *17; *In re Wilson*, 359 B.R. 123, 138 (Bankr. E.D. Va. 2006).

This type of conduct typically involves deception that causes other creditors to waive rights or extend credit in reliance on the misrepresentations of the creditor. *E.g.*, *In re Winstar Commc'ns, Inc.*, 554 F.3d 412-13 (creditor used its position to force debtor to incur unnecessary equipment purchases and debt and creditor delayed publishing notices which induced other creditors to provide funds to debtor); *In re Just for the Fun of It of Tenn., Inc.*, 7 B.R. 166, 180 (Bankr. E.D. Tenn. 1980) (mechanics lien creditor filed misleading notice in property records causing creditors to delay or abstain from filing lien documents, improperly influencing priority of claims); *In re Osborne*, 42 B.R. 988, 1000 (W.D. Wis. 1984) (subordinating secured creditor to injured creditor that extended credit in reasonable reliance on secured creditor's representation that payment was

forthcoming); *cf. In re Kreisler*, 546 F.3d 863, 865–66 (7th Cir. 2008) (no equitable subordination where individual debtors' purchase of secured claims did not harm other creditors in their cases). Additionally, claims may only be subordinated to other claims, not interests, such as equity positions. *In re Winstar Commc'ns, Inc.*, 554 F.3d at 414; *In re Northfield Laboratories, Inc.* 467 B.R. 582, 587 (Bankr. D. Del. 2010).

Here, Plaintiff's Complaint is devoid of any factual allegations that Lender's alleged "inequitable conduct" injured any creditor or gave Lender any unfair advantage over other creditors. The conduct described throughout the Complaint relates to Debtor's dispute with Lender's declaration of default, calculation of the amounts due under the Loan Documents, and enforcement of its remedies under the Loan Documents and applicable law. Debtor also takes issue with Lender's pursuit of its rights and claims in this Bankruptcy Case. But nowhere in the Complaint does the Debtor allege facts that would support a finding that Lender's conduct was tantamount to fraud, misrepresentation, overreaching, or spoliation that took advantage of another creditor or harmed another creditor acting in reliance on Lender's actions with the Debtor.

Even assuming, solely for purposes of this Motion, that the Complaint states facts supporting the assertion that Lender has engaged in "inequitable conduct", Debtor fails to allege facts that Lender's conduct resulted in injury to the Debtor's creditors or conferred an unfair advantage on Lender in relation to another creditor. Indeed, the record in this Case establishes that there are no other secured creditors whose claims remained unsatisfied after the sale of the Debtor Properties and only one unsecured claim of $119.12 (owed to the City of Philadelphia), excluding administrative claims. *See* Docket No. 87, Subchapter V Plan of Reorganization, Art. 1.5. Debtor's mere assertion that Lender's alleged misconduct "caused injury to other creditors or conferred an unfair advantage to [Lender]" is no more than a recitation of the second factor required to establish

equitable subordination. But, without more, this assertion falls short of the pleading requirements under Rule 12(b)(6). *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955; *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937; *Santiago v. Warminster Twp.*, 629 F.3d at 130.

Debtor's claim for equitable subordination fails to state a claim because the allegations in the Complaint do not allege any inequitable conduct by Lender that caused any injury to other creditors or provided any unfair advantage to Lender in relation other creditors in this case which is the foundation to provide the relief requested by Debtor under 11 U.S.C. § 510(c). Accordingly, Count V of the Complaint should be dismissed pursuant to Rule 12(b)(6).

## IV.    Debtor's Claim for an "Accounting" Does Not State a Claim Against Lender Under 11 U.S.C. § 105.

Count I of Debtor's Complaint should be dismissed under Rule 12(b)(6) because there is no claim for "accounting" under 11 U.S.C. § 105. In the Complaint, Debtor asserts that the requested accounting is "required within the jurisdiction of this Court, under Bankruptcy Code § 105 and in accordance [sic] the requirements of Bankruptcy Code § 543(b), Bankruptcy Rule 6002, and generally applicable fiduciary accounts." Complaint, ¶ 165. No such private right of action exists against Wilmington as a secured creditor of Debtor under the Bankruptcy Code or Rules.

Bankruptcy judges cannot award equitable relief independent of rights arising in or under the Bankruptcy Code. *In re Continental Airlines*, 203 F.3d 203, 211 (3rd Cir. 2000); *Thomas v. City of Philadelphia*, 759 F. App'x 110, 111 (3rd Cir. 2019); *In re Knox*, 237 B.R. 687, 701 (N.D. Ill. 1999) (*citing Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988)). As argued in Section I above, Bankruptcy Code section 543(b) does not impose any turnover or accounting requirements on a party such as Lender who is not a custodian of debtor property. Similarly, Rule 6002 directs a "custodian" required to deliver property in the custodian's possession or control to the trustee to file and transmit to the United States Trustee "a report and account with respect to

30

the property of the estate and the administration thereof." By its express language this Rule does not apply to Lender because Lender is not a "custodian" under 11 U.S.C. § 543.

Simply stated, there is no claim under the Bankruptcy Code that would permit the Court to provide the relief requested in Count I of the Complaint. Even if all the allegations were true in Complaint (and they are not), there is no general claim for an "accounting" under section 543(b) of the Bankruptcy Code or Rule 6002 of the Federal Rules of Bankruptcy Procedure. As such, Count I of the Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim against Lender.

### CONCLUSION

For the foregoing reasons, Lender hereby respectfully requests that this Court grant its motion to dismiss Counts I and IV of the Complaint for failure to state a claim.

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

By: */s/ D. Wesley Meehan*_____
    D. Wesley Meehan (PA #327704)
    Three Logan Square
    1717 Arch Street, Suite 1610
    Philadelphia, PA 19103
    Phone: (973) 549-2504
    wmeehan@grsm.com

    -and-

    David P. Cañas (TN #016623), *pro hac vice*
    4031 Aspen Grove Drive, Suite 290
    Franklin, TN 37067
    Phone: (615) 772-9002
    dcanas@grsm.com

    *Attorneys for Wilmington Trust, National*
    *Association, as Trustee for the Benefit of the*
    *Holders of CoreVest American Finance 2018-2*
Dated:  November 13, 2023    *Trust Mortgage Pass-Through Certificates*

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:

MBMK Property Holdings, LLC

      Debtor.

Chapter 11

Bankruptcy No.: 22-13121-mdc

## CERTIFICATE OF SERVICE

I, D. Wesley Meehan (PA #327704), hereby certify that on this 13th day of November 2023,

Secured Creditor Wilmington Trust, National Association, as Trustee for the Benefit of the

Holders of CoreVest American Finance 2018-2 Trust Mortgage Pass-Through Certificates'

Motion to Dismiss Count I, II, IV, and V of the Adversary Complaint for Failure to State a Claim

and Memorandum of Law in Support of Motion to Dismiss Counts I, II, IV, and V of Adversary

Complaint for Failure to State a Claim was served on the following parties by Court-generated

ECF notice and/or by email, as indicated below, to the following addresses:

*Chapter 11, Subchapter V Trustee*
Leona Mogavero, Esq.
Friedman Schuman, P.C.
275 Commerce Drive, Suite 210
Fort Washington, PA 19034
(215) 690-3826
LMogavero@fsalaw.com

*Counsel for Debtor*
Robert B. Eyre
Law Office of Foehl & Eyre
432 N. Easton Road
Glenside, PA 19038
(610) 892-9307
rob@foehllaw.com

*Counsel for the U.S. Trustee*
Kevin P. Callahan, Esq.
Office of the U.S. Trustee
Robert N.C. Nix Federal Building
900 Market Street, Suite 320
Philadelphia, PA 19107
(215) 597-4411
Kevin.p.callahan@usdoj.gov

Dated: November 13, 2023                By: _/s/ D. Wesley Meehan_____
                                            D. Wesley Meehan (PA #327704)
                                            Gordon Rees Scully Mansukhani, LLP