IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: <br><br> MBMK PROPERTY HOLDINGS, LLC, <br><br> Debtor | CHAPTER 11 <br><br> Bankruptcy No. 2:22-bk-13121 (MDC) |
| MBMK PROPERTY HOLDINGS, LLC, <br> Plaintiff, <br><br> v. <br><br> WILMINGTON TRUST, NATIONAL ASSOCIATION, As Trustee, For The Benefit of The Holders Of Corevest American Finance 2018-2 Trust Mortgage Pass-Through Certificates; <br><br> BAY MANAGEMENT GROUP OF PHILADELPHIA, LLC; <br><br> JAMES PAUL, d/b/a James Paul the ALPS Group; <br><br> and <br><br> ALPS GROUP, INC. d/b/a James Paul the ALPS Group, <br><br> Defendants. | Adversary Proceeding No. 23-00062 (MDC) |

**MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
PURSUANT TO FED.R.CIV.P. 12(b)(1)**

Defendant, James Paul ( "Mr. Paul"), the Court-appointed Receiver of Debtor MBMK

Property Holdings, LLC ("MBMK" or the "Debtor"), should be dismissed from this matter

because MBMK failed to obtain the permission of the courts who appointed him (*see e.g.*,

1

4871-0224-2699

*Barton v. Barbour*, 104 U.S. 126, 26 L. Ed. 672 (1881); *In Re: VistaCare Group, LLC,* 678 F.3d 218 (3d Cir. 2012), and in accordance with *Warner v. Conn*, 32 A.2d 740, 741-2 (Pa. 1943)). Mr. Paul, therefore, brings this Motion to Dismiss based on this Court's lack of subject matter jurisdiction and, in furtherance thereof, Mr. Paul avers as follows:

## INTRODUCTION

This Court lacks subject matter jurisdiction to hear any of the claims brought by MBMK against the court appointed receiver, Mr. Paul. It is well established that MBMK was required to obtain leave of the courts, which appointed Mr. Paul as a prerequisite to the filing of any lawsuit against him. As a receiver, Mr. Paul performed his duties as an extension of the courts that appointed him, and the appointing courts' orders naming Mr. Paul as receiver specifically retained jurisdiction to hear the very claims that MBMK improperly seeks to assert before this Court. MBMK's failure to seek leave to bring its claims against Mr. Paul before asserting them in this Court is a fatal flaw requiring their dismissal.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY[1]

1. As alleged in the instant Adversary Complaint (the "Complaint"), MBMK is a Delaware limited liability company which owned and operated thirteen rental properties in Delaware County (11) and Philadelphia County (2), Pennsylvania since their acquisition in and around September 2018. *See* ¶¶ 1-4 of Complaint.

2. MBMK is a Chapter 11 debtor-in-possession in the subject bankruptcy proceeding related to the matter *sub judice*. *See id.* at ¶¶3 & 89.

---

[1] While Mr. Paul disputes the characterization and content of the facts alleged in the Complaint, for purposes of the instant motion, the facts as alleged in the Complaint are viewed in the light most favorable to MBMK. Mr. Paul reserves all rights to supplement and add to the following factual recitation, to raise additional arguments that MBMK's claims should be dismissed because they fail to state claims upon which relief may be granted, and/or to deny factual allegations of MBMK in the event that this Motion is denied or denied in part.

3. Mohsin Khawaja ("Khawaja") and Matthew Breen ("Breen") formed MBMK in and around August 2018 to acquire, own, and operate the thirteen rental properties in issue in this matter. *See id. at* ¶¶23-27.

4. Khawaja and Breen were the sole members of MBMK. *See id. at* ¶¶23-27.

5. Co-Defendant Wilmington Trust, National Association ("Wilmington"), provided financing through various instruments for the thirteen rental properties for an amount in excess of $2 million dollars. *See id. at* ¶¶6-11, 28-39.

6. Co-Defendant Bay Management Group of Philadelphia, LLC ("BMG") served as a property manager for the thirteen rental properties during portions of the relevant time period. *See id. at* ¶¶12-14.

7. Mr. Paul served as a court appointed receiver, tasked with taking over the management of the thirteen rental properties from BMG.[2] *See id. at* ¶¶15-19.

8. Between 2018 and 2019, Khawaja went on a gambling spree at various casinos throughout the United States, incurring millions of dollars in gambling debts. *See generally,* Adversary Complaints, Docket No. 1, case docket nos. 19-00233-mdc, 19-00234-mdc, 19-00236-mdc, 20-00101-mdc & 20-00102-mdc.

9. On or about August 30, 2019, Khawaja filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the Eastern District of Pennsylvania (docket 19-15430-mdc). *See* ¶¶40-48 of Complaint.

---

[2] MBMK alleges that ALPS Group, Inc. was also appointed receiver. While Mr. Paul's position is that he was appointed as receiver in his individually capacity only, Mr. Paul understands that ALPS Group, Inc. is represented by counsel and will be responding to the Adversary Complaint separately.

10. The Khawaja indebtedness and subsequent bankruptcy triggered an event of default with Wilmington on the financing of the thirteen rental properties owned and operated by MBMK. *See id. at* ¶42.

11. On or about December 8, 2020, Wilmington initiated its foreclosure action (December Term 2020, Docket No. 00225) on the two Philadelphia County MBMK rental properties in Philadelphia County, Pennsylvania, and filed an Emergency Motion to Appoint Receiver filed on or about January 8, 2021. *See* Exhibit M of Complaint.

12. On or about December 9, 2020, Wilmington initiated its foreclosure action (Docket CV-2020-008284) on the eleven Delaware County MBMK rental properties in Delaware County, Pennsylvania, and filed an Emergency Motion to Appoint Receiver filed January 13, 2021. *See* Exhibit N of Complaint.

13. On March 10, 2022, Judge Anne Marie B. Coyle of the Philadelphia County Court of Common Pleas entered an order on consent appointing Mr. Paul receiver to manage the two Philadelphia County rental properties. *See* Exhibit M of Complaint.

14. On March 18, 2022, Judge Barry C. Dozor of the Delaware County Court of Common Pleas entered an order on consent appointing Mr. Paul receiver to manage the eleven Delaware County rental properties. *See* Exhibit N of Complaint.

15. The Orders appointing Mr. Paul specifically retain jurisdiction to hear any dispute regarding Mr. Paul's services as receiver. In particular, the Orders both state: "[the] Court retains jurisdiction over this matter as necessary to enforce or modify the powers of the Receiver and/or to compel a performance of and compliance with this Order. The Receiver... [is/are] authorized, upon application to this Court, to seek further enforcement and relief as necessary." *See* Exhibits M (¶24) & N (¶29) of Complaint.

16. On or about September 18, 2023, during the pendency of the underlying Chapter 11 Bankruptcy, MBMK filed the subject adversary complaint against Mr. Paul and others, asserting as to Mr. Paul's claims for an accounting (Count I), breach of fiduciary duty and waste (Count III) and violation of the Bankruptcy Code (Count IV). *See* Complaint.

17. The thirteen rental properties listed in Exhibit "A" of the instant adversary complaint around which MBMK's allegations center as Mr. Paul are the same thirteen rental properties listed in Judges Dozor and Coyle's orders appointing Mr. Paul as receiver and for which Mr. Paul was tasked to manage in the Wilmington foreclosure actions. *Compare* Complaint, Exhibits A, M & N thereto.

## **LEGAL ARGUMENT**

18. Lack of subject matter jurisdiction may be raised at any time by any party or by the Court, *sua sponte*. *See, e.g., Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 124 S.Ct. 1920, 1924, 158 L.Ed.2d 866 (2004) (It has long been the case that "the jurisdiction of the court depends upon the state of things at the time of the action brought." *Id., quoting*, *Mollan v. Torrance*, 9 Wheat. 537, 539, 6 L.Ed. 154 (1824)).

19. "A court may inquire into the jurisdictional facts without viewing the evidence in a light favorable to either party." *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76-77 (3d Cir. 2003), *cert. denied*, 541 U.S. 959, 124 S.Ct. 1714, 158 L.Ed.2d 400 (2004), citing, *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

**A**.  **The Barton Doctrine**

20. The *Barton* doctrine provides that before suit is brought against a receiver, leave of the court by which he was appointed must be obtained. *Barton v. Barbour*, 104 U.S. 126, 128, 26 L. Ed. 672 (1881); s*ee also, Davis v. Gray, 83 U.S. 203, 218, 21 L. Ed. 447 (1872)*(holding

that the court appointing a receiver "will not allow him to be sued touching the property in his charge, nor for any malfeasance as to the parties, or others, without [the court's] consent"); *Seitz v. Freeman (In re CitX Corp.)*, 302 B.R. 144, 148-49 (Bankr.E.D.Pa. 2003) (as a matter of federal common law, before suit is brought against a receiver, leave of the court by which the receiver was appointed must be obtained and without such leave, no other forum has jurisdiction to entertain the suit); *Kaliner v. Antonopolos (In re DMW Marine, LLC)*, 509 B.R. 497, 499 (Bankr.E.D.Pa. 2014) (the *Barton* doctrine generally provides that a party seeking to sue a court-appointed receiver must first obtain leave of the appointing court, and absent such leave of the appointing court, no other court has jurisdiction to hear a suit against the receiver).

21. The *Barton* doctrine has been imposed in "an unbroken line of cases . . . as a matter of federal common law." *In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998).

22. Although the *Barton* doctrine is a common law doctrine, it has not been abrogated by the Bankruptcy Code. *DMW Marine*, 509 B.R. at 503, *citing VistaCare Group*, 678, F.3d at 224.

23. In bankruptcy cases, the Barton doctrine applies not only to actions a third party brings against bankruptcy trustees, but also against actions that a bankruptcy trustee or debtor-in-possession brings against federal and state court appointed receivers. *Id.*, *citing VistaCare Group*, 678, F.3d at 227-28; CitX, 302 B.R. at 156 ("[T]o the extent the trustee's claims in this proceeding seek recovery from receivership property or seek to obtain some control over that property, then federal common law would restrict such relief").

24. The *Barton* doctrine implicates the very subject matter jurisdiction of the non-appointing court such that, absent prior permission from the court that appointed the receiver, the non-appointing court lacks jurisdiction over any action commenced against a receiver in that

6

court. *Id., e.g., citing In re Kashani*, 190 B.R. 875,884 (B.A.P. 9th Cir. 1995) citing *Richardson v. Monaco (In re Summit Metals, Inc.)*, 477 B.R. 484, 494-95 (Bankr.D.Del. 2012); *In re Triple S Restaurants, Inc.*, 342 B.R. 508, 511-12 (Bankr.W.D.Ky. 2006).

25. The result of failure to comply with the mandates of the *Barton* doctrine were stated best by the *Barton* Court itself; if permission is not obtained, the district or state court lacks jurisdiction over the matter. *Barton*, 104 U.S. at 136-37.

26. Numerous bankruptcy courts have dismissed claims against a receiver where the claimant failed to first seek leave from the court that appointed the receiver. *DMW Marine*, 509 B.R. at 499 (the *Barton* doctrine generally provides that a party seeking to sue a court-appointed receiver must first obtain leave of the appointing court and absent such leave of the appointing court, no other court has jurisdiction to hear a suit against the receiver); *CitX Corp.*, 302 B.R. at 148-49 (Bankr.E.D.Pa. 2003) (as a matter of federal common law, before suit is brought against a receiver, leave of the court by which the receiver was appointed must be obtained and without such leave, no other forum has jurisdiction to entertain the suit); *Summit Metals*, 477 B.R. at 494-95 (plaintiff failed to seek leave of court to file his complaint and it was subsequently dismissed pursuant to the *Barton* doctrine).

27. Further, Courts have held that the failure to first seek leave of the appointing court cannot be rectified after the suit has been filed because the case is void *ab initio*. *See, e.g., Summit Metals,* 477 B.R. at 497; *In re Kids Creek Partners, L.P.*, 248 B.R. 554, 558-59 (Bankr. N.D. Ill. 2000), *aff'd*, 2000 U.S. Dist. LEXIS 17718, 2000 WL 1761020 (N.D. Ill. Nov. 30, 2000) (the appointing court dismissed the case under the *Barton* doctrine when plaintiffs requested leave to sue the Trustee only after filing suit in non-appointing court); *Heavrin v. Schilling (In re Triple S Rests., Inc.)*, 342 B.R. 508, 512 (Bankr. W.D. Ky. 2006), *aff'd*, 519 F.3d 575 (6th Cir. 2008) (the

7

appointing court dismissed the case under the *Barton* doctrine because the plaintiff did not seek or obtain leave of that court before filing suit against the Trustee in state court), *In re Coastal Plains, Inc.*, 326 B.R. 102 (Bankr. N.D. Tex. 2005) (same).

28. Accordingly, if there is a subject matter jurisdictional bar against suing a receiver without first obtaining leave of the appointing Court under the *Barton* doctrine, that issue may be raised at any time and cannot be waived. Moreover, a jurisdictional defect that is present at the time a Complaint is filed cannot later be cured by, for example, setting forth the required information in another document or pleading, which information had to have been set forth in the Complaint. *Mollan,* 9 Wheat. 537 at 539 (stating it has long been the case that "the jurisdiction of the court depends upon the state of things at the time of the action brought.").

29. Here, MBMK's complaint must be dismissed as to Mr. Paul because MBMK failed even to seek, much less obtain, approval from the two separate courts that appointed Mr. Paul as receiver over MBMK's properties, as required under the *Barton* doctrine.

30. Further, the orders appointing Mr. Paul as receiver specifically retain jurisdiction regarding the receiver's management of the properties in issue. As a result, the claims against Mr. Paul must be dismissed for lack of subject matter jurisdiction.

B. **Neither of the Exceptions to the Barton Doctrine are Applicable in this Case**

   1. **The "Business" Exception under 28 U.S.C. § 959(a)**

31. There are two (2) exceptions to the *Barton* doctrine, neither of which applies to this case. The first, 28 U.S.C. § 959(a), provides that trustees (or other court-appointed officers) may be sued without permission of the appointing court if the act in question occurred while "carrying on business" connected with the estate. *Id*. at 496; *see also DMW Marine,* 509 B.R. at 499.

8

32. This narrow exception, sometimes referred to as the "business" exception, was codified in order to allow for claims against a receiver without first obtaining permission from the appointing court only in connection with conducting the business in the ordinary sense of the word, "for example, personal injury suits brought for accidents occurring while the businesses is operated under the control and management of the trustee during the bankruptcy case." *Id*. at 496; *See Carter v. Rogers*, 220 F.3d 1249 (11th Cir. 2000), 220 F.3d at 1254; *Lebovits v. Scheffel* (*In re Lehal Realty Assocs.*), 101 F.3d 272, 276 (2d Cir. 1996) (holding that when the trustee only administered the estate and did not conduct business, the bankruptcy court's permission is required before suit against the trustee is filed in state court). Other courts have interpreted the §959(a) exception similarly. *See, e.g., Crown Vantage* 421 F.3d 963 (9th Cir. 2005), 421 F.3d at 972 (holding that the section 959(a) exception only applies to "acts or transactions in conducting the debtor's business in the ordinary sense of the words or in pursuing that business as an operating enterprise").

33. The application of the business exception to the *Barton* Doctrine was aptly described by Judge Frank in *DMW Marine*, an analogous case in which a complaint filed by a Chapter 7 trustee against a receiver appointed to operate a marine crane manufacturing company was dismissed under the *Barton* doctrine because the Chapter 7 trustee failed to first seek approval from the District Court that appointed the receiver.

34. The Chapter 7 trustee's argument that the *Barton* doctrine did not apply because of the business exception codified in 28 U.S.C. § 959(a) was summarily rejected by *the DMW Marine* Court because:

> The Trustee's claims for negligence and breach of fiduciary duty do not stem from the conduct of the Debtor's business in the statutory sense of 28 U.S.C. § 959(a), even though the Receiver was authorized to carry on the Debtor's business during the receivership.

9

> Rather, the Trustee's claims are based on the alleged misconduct in the Receiver's administration of the Debtor's estate causing injury to the Debtor; not actions alleging injury to third parties that interacted with the Debtor as the Receiver conducted its ordinary business operations. Therefore, the negligence and breach of fiduciary duty claims fall outside of the §959(a) Exception. *See Fleeger v. Clarkson Co. Ltd.*, 86 F.R.D. 388, 394-95 (N.D. Tex 1980); *see also Muratore,[v. Darr]*, 375 F.3d [140] at 147 [(1st Cir 2004)] (§959(a) is not intended to created a "generalized tort exception" to the *Barton* Doctrine).

*Id*. at 505.

35. Similarly, the *DMW Marine* Court held that the Trustee's Bankruptcy Code based claims fall outside the business exception to the Barton Doctrine because they are also grounded in injury to the bankruptcy estate and not to third parties arising from the Receiver's operation of the business. *Id*.

36. Here, Mr. Paul was acting solely in his capacity as Receiver as appointed by the Orders of Judge Dozor and Coyle. MBMK's claims are based solely on the alleged misconduct in ALPS's administration of the real property, which made up the Debtor's estate prior to its court-authorized sale, causing injury to the Debtor, not actions alleging injury to third parties that interacted with the Debtor as the Receiver conducted its ordinary business operations.

37. MBMK's Bankruptcy Code based claims also allege only harm to MBMK's bankruptcy estate, and in no way implicate any tort claim that could have caused harm to a third party.

38. For the foregoing reasons, all claims alleged against Mr. Paul fall outside the business exception to the Barton doctrine encompassed in 28 U.S.C. § 959(a).

### 2. **The "Ultra Vires" Exception**

39. The second exception, commonly referred to as the "ultra vires" exception, provides that the *Barton* doctrine only protects the trustee for acts "done in the trustee's official

10

4871-0224-2699

capacity and within the trustee's authority as an officer of the court." *Summit Metals*, 477 B.R. at 494-95, citing *Allard v. Weitzman (In re: Delorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993).

40. Put another way, a receiver can lose the protection of the *Barton* Doctrine where the receiver undertakes actions that are beyond the scope of the authority granted to the receiver by the appointing court. *Summit Metals*, 477 B.R. at 496; *see also DMW Marine*, 509 B.R. at 506 ("the classic application of the "ultra vires" exception is the case of an action against a receiver who seizes or otherwise attempts to administer property that is not receivership property, but that actually belongs to a third party").

41. The ultra vires exception is similarly not applicable in this case. As discussed above, Mr. Paul's actions were directed by the Orders of Judge Dozor and Coyle and conducted within the parameters of those Orders.

42. The Receiver orders put Mr. Paul in charge of all thirteen (13) rental properties owned by MBMK prior to the Bankruptcy Court approving the sale of the properties. *See* Exhibits M (¶24) & N (¶29) of Complaint.

43. The orders further required MBMK to turn over the rental properties to Mr. Paul, tasked Mr. Paul with the management of the rental properties, and authorized Mr. Paul to take all actions with respect to the rental properties within the parameters of the orders. *See* Exhibits M & N of Complaint.

44. Judges Dozor and Coyle's Orders governed, *inter alia*, what Mr. Paul's obligations were vis-à-vis the operation and management of the rental properties. *Id*.

11

45. The Complaint does not (and cannot) allege that Mr. Paul acted outside the scope of his authority. Rather, the Complaint asserts claims based on Mr. Paul's alleged failure to adhere to the applicable standard of care necessary to manage the properties.

46. For the foregoing reasons, all claims alleged against Mr. Paul fall outside the ultra vires exception to the Barton doctrine encompassed in 28 U.S.C. § 959(a).

**C.** **Conclusion**

47. MBMK failed to seek leave from the state courts that appointed Mr. Paul as receiver over MBMK's properties before attempting to sue him in this Court. MBMK's failure to obtain leave requires that its claims be dismissed against Mr. Paul.

**WHEREFORE**, Defendant, Mr. Paul, respectfully prays that the Court dismiss this Complaint for lack of subject matter jurisdiction.

Respectfully,

/s/ *Michael Vagnoni*
Matthew A. Green (I.D. No. 91592)
Michael Vagnoni (I.D. No. 78374)
Lars J. Lederer (I.D. No. 89719)
OBERMAYER REBMANN
MAXWELL & HIPPEL LLP
Centre Square West, 34th Floor
1500 Market Street
Philadelphia, Pennsylvania 19102
(Phone) 215-665-3000
Attorneys for Defendant,
James Paul

Dated: November 13, 2023

4871-0224-2699

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion was electronically filed with the Clerk of Court on November 13, 2023, using CM/ECF. I further certify that a true and correct copy of the foregoing Motion was served on the following counsel via electronic submission:

| | |
|---|---|
| Robert B. Eyre, Esq.<br>Law Offices of Foehl & Eyre<br>rob@foehllaw.com<br>Attorneys for<br>MBMK Property Holdings, LLC | Daniel W. Meehan, Esq.<br>Gordon & Rees<br>wmeehan@grsm.com<br>Attorneys for<br>Wilmington Trust, National Association, as trustee for the benefit of the Holders of Corevest American Finance 2018-2 Trust Mortgage Pass-Through Certificates |
| Alan Ehrenbert, Esq.<br>Alan L. Ehrenberg, LLC<br>1902 Northbrook, IL 60062<br>aehrenberg@aielegal.com<br>Attorneys for<br>ALPS Group, LLC | |

        Respectfully,

        /s/ *Michael Vagnoni*
        Matthew A. Green (I.D. No. 91592)
        Michael Vagnoni (I.D. No. 78374)
        Lars J. Lederer (I.D. No. 89719)
        OBERMAYER REBMANN
        MAXWELL & HIPPEL LLP

        Centre Square West, 34th Floor
        1500 Market Street
        Philadelphia, Pennsylvania 19102
        (Phone) 215-665-3000
        Attorneys for Defendant,
        James Paul

Dated: November 13, 2023

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: . <br><br> MBMK PROPERTY HOLDINGS, LLC, <br><br> Debtor | CHAPTER 11 <br><br> Bankruptcy No. 2:22-bk-13121 (MDC) |
| MBMK PROPERTY HOLDINGS, LLC, <br> Plaintiff, <br><br> v. <br><br> WILMINGTON TRUST, NATIONAL ASSOCIATION, As Trustee, For The Benefit of The Holders Of Corevest American Finance 2018-2 Trust Mortgage Pass-Through Certificates; <br><br> BAY MANAGEMENT GROUP OF PHILADELPHIA, LLC; <br><br> JAMES PAUL, d/b/a James Paul the ALPS Group; <br><br> and <br><br> ALPS GROUP, INC. d/b/a James Paul the ALPS Group, <br><br> Defendants. | Adversary Proceeding No. 23-00062 (MDC) |

**ORDER**

**THIS COURT** having considered Defendant, James Paul's, Motion to Dismiss Plaintiff's / Debtor's MBMK Property Holdings, LLC Adversary Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim Pursuant to Fed R. Civ. P. 12(b) and 28 U.S.C. §

4871-0224-2699

1332, any opposition and argument related thereto, and for good cause shown, it is hereby

**ORDERED** that the motion is **GRANTED** for lack of subject matter jurisdiction, and all claims in the Complaint against Defendant, James Paul, are hereby dismissed.

                                                              _____
                                                                    **COLEMAN, J.**

DATED: _____