# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **MBMK PROPERTY HOLDINGS, LLC,** | : | **Bankruptcy No. 22-13121 (AMC)** |
| **Debtor** | : | |
| | : | |
| | : | |
| **MBMK PROPERTY HOLDINGS, LLC,** | : | |
| | : | |
| **Plaintiff** | : | **Adversary Proceeding No. 23-00062 (AMC)** |
| | : | |
| **v.** | : | |
| | : | |
| **WILMINGTON TRUST, NATIONAL ASSOCIATION, As Trustee, [etc.]; BAY MANAGEMENT GROUP OF PHILADELPHIA, LLC; JAMES PAUL, [etc.] and ALPS GROUP, INC. [etc.]** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW this _____ day of _____, 2024, upon consideration of Debtor's Motion for a Preliminary Injunction Compelling an Equitable Accounting [Adv. Doc No. 1] (the "Motion") and the answers and responses of the Defendants, (i) Wilmington Trust National Association, As Trustee, For The Benefit Of The Holders Of Corevest American Finance 2018-2 Trust Mortgage Pass-Through Certificates ("Wilmington Trust"), (ii) Bay Management Group of Philadelphia, LLC, (iii) James Paul ("Paul") and (iv) ALPS Group, Inc. ("ALPS"); and, after an evidentiary hearing, it being found by the Court that each of the Defendants used, possessed and/or controlled all or some portion of the property of the Debtor, MBMK Property Holdings, LLC, for some part of the period November 30, 2020 through June 13, 2023, while in a fiduciary relationship

1

to the Debtor, without accounting for their use, possession, custody and/or control; and good cause otherwise appearing for this Court's entry of this Order requiring each Defendant to account in equity for same;

IT IS HEREBY ORDERED and DECREED as follows:

1.      Each of the Defendants shall, within thirty (30) days of the entry of this Order, complete and file an accounting in compliance with the terms of this Order for the use, possession, management, care, custody and/or control of "Custodial Property" (as defined in paragraph 2 of this Order), each for the "Accounting Period" ascribed to such Defendant in paragraph 3 of this Order.

2.      "Custodial Property" as used in this Order shall refer to all of the following:

   a.   The real properties previously owned by the Debtor and located at 245 Burmont Road, Upper Darby, PA 19026; 347 Avon Road, Upper Darby, PA 19082; 355 Avon Road, Upper Darby, PA 19082; 37 Walnut Street, Clifton Heights, PA 19018; 412 Long Lane, Upper Darby, PA 19082; 4690 State Road, Drexel Hill, PA 19026; 8513 Lansdowne Avenue, Upper Darby PA 19082; 419 Glendale Avenue, Upper Darby, PA 19082; 526 Timberlake Road, Upper Darby, PA 19082; 418 Timberlake Road, Upper Darby, PA 19082; 599 Timberlake Road, Upper Darby, PA 19082; and 2131 Brighton Street, Philadelphia, PA 19149 and 40 E. Rittenhouse Street, Philadelphia, PA 19144 (collectively the "Debtor Properties");

   b.   The leases, licenses, permits and other agreements for use or occupancy of the Debtor Properties;

2

c. The deposits, escrows, rents, profits, income or proceeds of or relating to the Debtor Properties;

d. The contract rights, bank accounts, tax accounts, escrow accounts, receivables, causes of action, agreements of sale relating to the Debtor Properties or the deposits, escrows, rents, profits, income or proceeds form same;

e. The equipment, supplies, personal property and fixtures located at or used in the maintenance, supply, care or repair of the Debtor Properties;

f. The employment agreements, supply agreements, service agreements, maintenance agreements, management agreements, equipment leases, licenses or other agreements used in the care, maintenance or repair of, or otherwise benefitting, the Debtor Properties or other Custodial Property or items used in association with the Real Property;

g. All other property and assets connected with, associated with, derived from, generated from, or benefitting the Debtor Properties or other Custodial Property;

h. All records of foregoing received during the Accounting Period.

3. Each Defendant shall account for their use, possession, management, care, custody and/or control of Custodial Property for the Accounting Period ascribed to them below:

a. Defendant Wilmington Trust shall account for the period beginning November 30, 2020 and ending on March 18, 2022;

b. Defendant BMG shall account for the period beginning November 30, 2020 and ending on March 18, 2022;

3

   c. Defendant Paul shall account for the period beginning March 10, 2022 and ending on June 13, 2023; and

   d. Defendant ALPS shall account for the period beginning March 10, 2022 and ending on June 13, 2023.

4.    The Accounting of each Defendant shall provide the following, verified under oath, in a form and substance understandable to a reasonably literate ordinary person, so as to allow the Court to determine the reasonableness and propriety of each Defendant's use, possession, management, care, custody and/or control of Custodial Property, and any material transactions relating to same, during the Accounting Period ascribed to such Defendant in paragraph 3:

   a. an inventory and valuation of all Custodial Property at the beginning of such Accounting Period;

   b. a statement of liens, liabilities and obligations encumbering the Custodial Property at the beginning of such Accounting Period;

   c. an accounting of all rents and other income received, disbursements made, obligations incurred, losses or damages incurred and other material transactions affecting the Custodial Property during such Accounting Period;

   d. an inventory and valuation of the Custodial Property at the end of such Accounting Period;

   e. a statement of liens, liabilities and obligations encumbering the Custodial Property at the beginning of such Accounting Period;

   f. such other information as is necessary to explain any loss, damage or diminution in the value of any Custodial Property during such Accounting Period; and

g.  documentation of the foregoing (including vouchers, receipts, payroll records, bank

statements and similar records) as is customarily provided in support of fiduciary

accounts to verify the accuracy of the Accounting information;

all the foregoing to be filed with and subject to examination before this Court, including

the right of the Debtor or any creditors or party in interest in Debtor's Bankruptcy Case to

take exception to such accounts and request disallowance of claims and compensation,

avoidance of improper transfers, recovery of damages for mismanagement, neglect or

waste, surcharge of the Defendants or other appropriate relief.

5.      The Debtor, any Defendant in the above-captioned Adversary Proceeding and any

creditors, interest holders or other parties in interest in the above-captioned Bankruptcy Case, may

file exceptions to any Accounting required by this Order within sixty (30) days after notice of

filing of same, after which the Court will determine the process and schedule for adjudication of

the accounts and any surcharge or other relief to be granted.


BY THE COURT


_____

Ashley M. Chan, Chief Judge

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | |
| | : | **Chapter 11** |
| **MBMK PROPERTY HOLDINGS, LLC,** | : | |
| | : | **Bankruptcy No. 22-13121 (AMC)** |
| Debtor | : | |
| | : | |
| | : | |
| **MBMK PROPERTY HOLDINGS, LLC,** | : | |
| | : | |
| Plaintiff | : | **Adversary Proceeding No. 23-** |
| | : | **00062 (AMC)** |
| v. | : | |
| | : | |
| **WILMINGTON TRUST, NATIONAL** | : | |
| **ASSOCIATION, As Trustee, [etc.]; BAY** | : | |
| **MANAGEMENT GROUP OF** | : | |
| **PHILADELPHIA, LLC; JAMES PAUL, [etc.]** | : | |
| **and ALPS GROUP, INC. [etc.]** | : | |
| | : | |
| Defendants | : | |
| | : | |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION COMPELLING**
**EQUITABLE ACCOUNTING FROM ALL DEFENDANTS**

Plaintiff, MBMK Property Holdings, LLC, Debtor in the above-captioned Bankruptcy

Case, moves this Court in the above-captioned Adversary Proceeding for a preliminary injunction

to compel the Defendants to account in equity for their respective use, possession, management,

care, custody and/or control of certain property (referred to herein as the "Custodial Property")

during the "Accounting Period" ascribed to each Defendant. In support of this relief, Plaintiff

alleges as follows, relying also on the arguments set forth in the accompanying Plaintiff's

Memorandum of Law in Support of Motion for Preliminary Injunction (herein, "Plaintiff's

Memorandum"):

6

# I.    FACTUAL BACKGROUND

## A. Introduction.

1.    Plaintiff is MBMK Property Holdings, LLC, the Debtor in the above-captioned bankruptcy case (the "Bankruptcy Case") under Chapter 11, Subchapter 5, of Title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Bankruptcy Code"), commenced by voluntary petition filed in this Court on November 21, 2022 (the "Petition Date"). Plaintiff is referred to herein as "Plaintiff," "MBMK"[1] or "Debtor."

2.    The relief of a preliminary injunction sought herein is ancillary to the claims for equitable accounting against these Defendants in Count I (¶¶154-165) of the Complaint in the Adversary Proceeding [Adv. Doc 1], which were sustained by the Court's June 25, 2024 Memorandum and Order [Adv. Doc Nos 49 and 49] (together, "Decision on Motions to Dismiss"), granting in part and denying in part the various Motions of Defendants to dismiss the Complaint.

3.    Until August 31, 2023, Plaintiff owned thirteen residential rental properties – eleven in Delaware County, Pennsylvania and two in Philadelphia County, Pennsylvania – referred to herein as the "Debtor Properties."[2]

4.    Plaintiff operated the Debtor Properties from their acquisition in September of 2018 and until the "Custodial Period" – a period that lasted from November 30, 2020 to approximately June 13, 2023, during which the Debtor Properties, rents, leases and related

---

[1] "MBMK" is used herein to refer to the Plaintiff and Debtor, MBMK Property Holding, LLC, as distinguished from its affiliate, and sole member, MBMK Asset Management, LLC, also a Delaware limited liability company.
[2] The Debtor Properties were sold in August 31, 2023, pursuant to this Court's Order of August 16, 2023 [Bankruptcy Docket No.146] (the "Sale Order"). Pursuant to paragraph 11 of the Sale Order the net sale proceeds of $1,706,715.53 are held subject to the liens, security interests and claims not satisfied at closing on the sale, and the objections and claims asserted by the Debtor to same.

property (referred to herein as the "Custodial Property") were in the possession, custody and control of one or more of the Defendants named herein, and for which it is alleged herein that the Defendants are liable to account in equity.

### B. The Defendants.

5.      The Defendants are (i) Wilmington Trust National Association, As Trustee, For The Benefit Of The Holders Of Corevest American Finance 2018-2 Trust Mortgage Pass-Through Certificates ("Wilmington Trust"), (ii) Bay Management Group of Philadelphia, LLC ("BMG"), (iii) James Paul ("James Paul"), and (iv) ALPS Group, Inc. ("ALPS").

6.      Defendant Wilmington Trust was Plaintiff's prepetition lender and is a creditor and party in interest in the above-captioned Bankruptcy Case, asserting a secured claim in the amount of $2,084,794.88 (the "Wilmington Trust Claim"), filed as Proof of Claim No. 15-1 in the above-captioned Bankruptcy Case.

7.      The Wilmington Trust Loan was in the original principal amount of $1,120,070.00, made on or about September 27, 2018 to finance Debtor's purchase of the Debtor Properties, and is evidenced and secured by the "Loan Documents" identified and described in paragraphs 30-39 of the Complaint in this matter.

8.      Defendant, BMG served from approximately September of 2019 through March of 2022, as manager of the Debtor Properties, initially as agent under contract with the Debtor and later, for the first sixteen months of the Custodial Period (from November 30, 2020 to approximately March, 2022), as agent for Wilmington Trust.  The relevant Property Management Agreement is included in the Second Assignment of Management Agreement attached to the Complaint as Exhibit "H," (and also in the November 30, 2020 Notice attached to the Complaint as Exhibit "K").

9.    Defendant James Paul and Defendant ALPS do business together as "James Paul of the ALPS Group."

10.    In March of 2022 Defendant Paul, doing business as "James Paul of ALPS Group," was appointed receiver ("Receiver") of the Custodial Property by Orders of the Pennsylvania Courts of Common Pleas for Delaware and Philadelphia counties, and employed Defendant ALPS in its work as Receiver.

### C. The Custodial Period.

### 1. The Wilmington Trust/BMG Custodial Period.

11.    On November 30, 2020, Wilmington Trust gave notice it was exercising its rights under the assignment of leases and rents provisions ("Assignment of Rents") in Section 1.02 of the Mortgages on the Debtor Properties (Exhibits "D" and "E" to the Complaint), to seize control of the rents on the Debtor Properties.

12.    To do so, Wilmington Trust had its counsel, Walter Weir, Esquire, of Weir & Partners, LLP, notify BMG, through its president, Dana Andersen, that the Debtor had defaulted on the Loan and that Wilmington Trust was acting pursuant to the Second Assignment of Management Agreement with the Debtor and BMG (Exhibit "H" to the Complaint), to take control of the properties, leases and rents, as follows:

> Pursuant to the rights [under the Assignment of Rents and the Second Assignment of Management Agreement], the Borrower [the Debtor] authorized the Lender [Wilmington Trust] to direct Bay Management Group Philadelphia LLC, as property manager, under the various leaseholds [on the Debtor Properties] (the "Leases"), and the Lender so directs, Bay Management to collect and hold the rents from any of the Leased Properties, now in, or hereafter coming into, your possession, as agent for Lender, pending further instructions from the Lender.

A true and correct copy of the November 30, 2020 letter from Attorney Weir to BMG's Dana Andersen, providing this instruction (herein the "November 30, 2020 Notice") is attached to the Complaint as Exhibit "K."

13.    At the time of the November 30, 2020 Notice, BMG was exercising managerial possession, custody and control of all thirteen of the Debtor Properties, responsible for all leasing and tenant relations, maintenance and repair, and collecting and receiving all rents from the properties, under the terms and conditions of the BMG Property Management Agreement attached to the Second Assignment of Management Agreement and included in Exhibit "K" to the Complaint.

14.    Prior to the November 30, 2020 Notice, BMG exercised this possession, custody and control and performed these responsibilities on behalf of, and as agent for, the Debtor under and subject to the Debtor's oversight and control.

15.    After the November 30, 2020 Notice, and until March of 2022, BMG exercised this possession, custody and control and performed these responsibilities on behalf of, and as agent for, Wilmington Trust under and subject to Wilmington Trust's oversight and control.

16.    This agency of BMG was the clear and express intention and effect of the November 30, 2020 Notice as to the rents from the Debtor Properties: they were to be collected and held by BMG, as agent for Wilmington Trust, to be used only as instructed by Wilmington Trust.

17.    The same rents, however, were the Debtor's only source of cash flow, and their seizure by Wilmington Trust rendered the Debtor unable to pay for the management, operation and care of the Debtor Properties.

10

18.     Wilmington Trust's control over the rents, therefore, meant Wilmington Trust exercised effective control over the management, operation and care of the Debtor Properties, and not just the rents themselves, between November 30, 2020 (when BMG began collecting and holding the rents as its agent) and March of 2022, when James Paul assumed control of the Debtor Properties, rents and other Custodial Property, as Receiver.

19.     In fact, as described further below, Wilmington Trust allowed the rents to be used during this time period in ways that materially changed the operation, management and care of the Debtor Properties and leases.

20.     As such, Wilmington Trust not only exercised control over the rents, but through its control of the rents, exercised actual and effective control over the operation, management and care of the Debtor Properties and leases, and constructive and effective possession and control of same, through BMG as its agent.

**2.   Wilmington Trust's December 9, 2020 Foreclosure Actions and Requests for a Receiver.**

21.     On December 9, 2020, Wilmington Trust filed Complaints in Mortgage Foreclosure in two state courts: one in the Delaware County Court of Common Pleas (No. CV-2020-008284) (the "Delaware County Foreclosure"), to foreclose on the eleven Debtor Properties in Delaware County; and the other in the Philadelphia County Court of Common Pleas (No. CV-2020-00225) (the "Philadelphia County Foreclosure"), to foreclose on the two Debtor Properties in Philadelphia County.  The Delaware County Foreclosure and Philadelphia County Foreclosure are referred to together as the "Foreclosure Actions".

22.     Other than referencing different properties, the Complaints in each of the two Foreclosure Actions contained essentially identical allegations in support of the request for foreclosure on the Mortgages and appointment of a receiver for the Debtor Properties, leases and

rents.  A true and correct copy of the Complaint filed in the Delaware County Foreclosure is attached to the Complaint as Exhibit "L."

23.    With the Foreclosure Complaints, Wilmington Trust also filed Emergency Motions (the "Receiver Motions") in each of the Foreclosure Actions, seeking appointment of "James Paul of the ALPS Group" (that is, Defendant James Paul) as Receiver for the Debtor Properties as well as the rents.

24.    The Foreclosure Actions and Receiver Motions were delayed by the filing of an earlier chapter 11 bankruptcy case for the Debtor – Chapter 11 Case No. 21-10332-mdc in this Court (the "First MBMK Bankruptcy"), commenced in February of 2021 by a prior manager, Matthew Breen.[3]

25.    Approximately a year later, the First MBMK Bankruptcy was dismissed by Order of this Court dated January 25, 2022 [Bankruptcy Docket No. 97 in First MBMK Bankruptcy], on Motion of the United States Trustee, for failure of the Debtor to file Schedules and Statements of Financial Affairs, appear for the Creditor's Meeting, or file monthly operating reports in the case.

26.    Meanwhile, in the year that the First MBMK Bankruptcy Case was pending, Wilmington Trust continued to exercise possession, custody and control over Custodial Property, including all 13 of the Debtor Properties and leases and rents relating to same, through BMG as its agent and property manager, and failed to account for the use, management, care and disposition of these assets.

### 3.    The James Paul/ALPS Custodial Period.

---

[3] Debtor's current manager, Mohsin Khawaja ("Khawaja") was not involved in the management of the Debtor at the time of the filing of the First Bankruptcy Petition and had not part in its filing, nor was he involved in the management of the Debtor at the time Wilmington Trust declared a default under the Loan Documents, seized the rents or secured the appointment of James Paul as Receiver.

27.     Following the dismissal of the First MBMK Bankruptcy, Wilmington Trust renewed its efforts in the Foreclosure Actions to have Defendant James Paul appointed as Receiver of the Custodial Property.

28.     As a result, Defendant James Paul, doing business as "James Paul of the ALPS Group," was appointed Receiver of the Debtor Properties, leases, rents and other Custodial Property, including (i) of the two Philadelphia County Properties and related leases and rents, by Order of the Court of Common Pleas in the Philadelphia County Foreclosure dated March 10, 2022 (the "Philadelphia Order"); and (ii) of the eleven Delaware County Properties and related leases and rents by Stipulated Order in the Delaware County Court of Common Pleas in the Delaware County Foreclosure dated March 18, 2022 (the "Delaware County Order").  Copies of the two referenced Orders are attached to the Complaint as Exhibits "M" and "N," respectively, and referred to herein as the, "Receiver Orders."

29.     James Paul used other agents and employees of ALPS to take possession, manage and maintain the Custodial Property and, with ALPS, remained in possession, custody and control of such property from the dates of the Receiver Orders (March 10 and 18, 2022) and until it returned possession and control of same to the Debtor pursuant to the Agreed Order Regarding Motion of Debtor for Order Compelling James Paul of ALPS Group, LLC and Agents to Comply with Bankruptcy Code § 543(b) (11 U.S.C. § 543(b)) [Bankruptcy Docket No.109] entered by this Court on June 13, 2023 (herein the "June 13, 2023 Turnover Order").

30.     The June 13, 2023 Turnover Order followed approximately seven months of possession, custody and control of the Custodial Property by Defendants James Paul and ALPS during the pendency of this Bankruptcy Case, in violation of Bankruptcy Code §543(b).

31.    Defendant Paul has still not filed a proper accounting for their period of possession, custody and control of the Custodial before or after the Petition Date, and continues to be in violation of the obligation to account under Bankruptcy Code §543(b)(2) and the June 13, 2023 Order of this Court. [4]

32.    The Debtor is filing a separate motion (the "Receiver Sanctions Motion") in the Bankruptcy Case, seeking sanctions for this continuing violation of Bankruptcy Code §§543(b)(2), and the June 13, 2023 Order.  To assure the accounting of Defendant Paul is consistent in form and substance with the accounting of the other Defendants, Plaintiff proposes the relief on the Receiver Sanctions Motion be limited to the monetary sanctions, and the accounting to be required of Defendant Paul be part of the equitable relief sought on this Motion, and in the form and substance of the proposed order submitted with this Motion.

33.    The Complaint alleges that Defendants Paul and ALPS acted as a common enterprise for the purpose of securing business for ALPS through the court-appointment of Paul as a receiver of assets.  (Complaint, ¶¶15-18)  As such, while Defendant Paul would be the Receiver (and therefore the "custodian," responsible to account for the purposes of Bankruptcy Code §543(B)(2)), it is submitted that, in the context of the common enterprise, and the clear reliance on ALPS employees and agents in Defendant Paul's possession, custody and control of

---

[4] Defendants Paul and ALPS will undoubtedly argue they have accounted by the filing on June 12, 2024 of a, "Section 543(B)(2) Accounting Report" [Bank. Doc Nos. 188 and 188-1], signed by Defendant Paul as "Receiver." This "Receiver Report" does not satisfy the requirements of a proper accounting by a receiver under Pennsylvania law or a custodian under Bankruptcy Code §543(b)(2).  It is a 655-page document dump that relies extensively on the regurgitation of its interim reports to the State Courts, and not a reasonably concise and understandable explanation of its administration if the Custodial Property required in a fiduciary account. See Plaintiff's Memorandum at pp. 16-21.  Nor does it submit to any process for review and adjudication of the propriety of its administration of the property in its charge, and surcharge for improprieties, after notice and opportunity to the Debtor and parties in interest in the Bankruptcy Case to be heard on such issues. See *id.* and compare Pa.R.C.P. No 1534; Bankruptcy Code §1534 and Bankruptcy Rule 6002.

the Custodial Property, it is appropriate that the relief of an equitable accounting be granted as to both Defendants Paul and ALPS for this James Paul – ALPS Custodial Period.

34.     Based on the evidence produced by these Defendants to date, it is clear that Defendant Paul relied extensively on Defendant ALPS for the actual management, custody and care of the Debtor Properties that were charged to him as Receiver, and that an accounting will confirm this and that ALPS was paid large amounts for such services, without approval of any Court.

**4. Need for Accountings from the Defendants.**

35.     As set forth above, each of the Defendants were, during all or a portion of the Custodial Period, in possession, custody or control of all or part of the Custodial Property.

36.     As a result, each of the Defendants owed fiduciary duties to the Debtor and/or its bankruptcy estate: (i) to manage, operate, lease, protect, preserve, repair, maintain and care for the Custodial Property as would an owner of such property; (ii) to diligently collect the rents owed on the Debtor Properties for application to their operation, repair, maintenance and care, and/or to the reduction of the indebtedness on the Wilmington Trust Loan; and to refrain from acts and omission constituting waste.

37.     Each of the Defendants have a duty to account as fiduciaries for their use, management, care and disposition of the Custodial Property, jointly and severally with other Defendants in possession, custody or control during the Custodial Period.

38.     Additionally, pursuant to Section 1.02(b) of the Mortgages, and otherwise applicable law, Wilmington Trust was obligated to disburse and/or apply any rents in its possession or control, in accordance with the terms of the Loan Agreement, either to the proper

operation, maintenance and care of the Debtor Properties or to the indebtedness under the Loan to apply, and to account for same.

39.    As set forth above, Defendant Paul is additionally obligated to account pursuant to Bankruptcy Code §543(b)(2) and Bankruptcy Rule 6002, and was specifically ordered to do so under paragraph 1.g of this Court's June 13, 2023 Order; but Plaintiff intends to limit the relief sough there to monetary sanctions and asks that the order for an accounting by Defendant Paul be issued in this matter, to assure that the accountings of the Defendants are in the same form and provide, together, for one, cohesive and understandable accounting for the entire Custodial Period.

40.    None of the Defendants have accounted for their use, possession, management, care, custody and/or control of Custodial Property during the Custodial Period.

41.    The need for an accounting is further supported by the compelling evidence of gross mismanagement and waste by one or more of Defendants, including the following:

    a.  Based on the performance of the Debtor Properties in the 14 months prior to the Custodial Period, the Debtor conservatively estimates that, had the properties continued to be reasonably managed and cared for, there should have been at least $305,000 in net rents (after payment of the expenses of management, operation and care of the properties) to be applied to the indebtedness on the Loan or turned over to the Debtor.

    b.  To date, Wilmington Trust has accounted for no rents applied to the indebtedness on its loan to Debtor, and yet only $25,078.83 in rents were turned over by Paul/ALPS at the end of the Custodial Period.

c.  In the 14 months prior to the Custodial Period, when BMG managed the Debtor Properties under the direction and control of the Debtor, BMG reported spending approximately $21,546 for maintenance and repair of the properties.  In the first 17 months of the Custodial Period, when BMG managed the properties under the direction and control of Wilmington Trust, the expenditures reported by BMG for maintenance and repair appear to have skyrocketed to approximately $131,932.  This is a five-fold increase in expenses paid from rents (from an average of $1,539 a month during the Debtor's period of control, to an average of $7,760.70 a month during the period of Wilmington Trust control of the rents), clearly evidencing the extent to which Wilmington Trust's control of the rents directly and materially affected the management and operation of the Debtor Properties.

d.  Despite this massive increase in expenditures for maintenance and repair of the Debtor Properties during the first 17 months of the Custodial Period, Defendants Paul and ALPS reported the properties were already in disrepair when they assumed possession and control in March of 2022.

e.  Defendants Paul and ALPS appear to have done little or nothing to maintain, repair, lease or collect rent on the Debtor Properties in the 16 months they had possession, yet charged $40,135 in management fees, in addition to $48,437 in Receiver fees – more than 7 times the monthly expense of prior management under BMG; while leaving $54,200 in rent uncollected in the same time period.

17

f.  Another $40,575 charged or claimed as expenses during the administration of
the Custodial Property by Defendants Paul and ALPS, appears to be for
payments made or amounts claimed by ALPS that were not specifically
authorized by the State Courts or this Court.  Such transactions are, under
applicable law, presumed invalid, fraudulent and inequitable, and to be
avoided and/or returned to the Debtor unless and until proven fair, reasonable
and properly authorized.

g.  The grave condition of the Custodial Property upon its return to the Debtor
(see paragraph 133, above), the precipitous ($435,000) decline in value of the
Debtor Properties in the last 10 months of the Custodial Period as evidenced
by the Petrone appraisals, and the substantial ($790,005.48) cost of needed
repairs estimated in the AAG reports in July of 2023, all demonstrate that the
Custodial Property was seriously mismanaged and neglected, resulting in
waste while in the possession, custody and control of Defendants Paul and
ALPS – including during the last 7 months when these Defendants, aided and
abetted by Defendant Wilmington Trust, exercised that possession, custody
and control in continuing violation of the turnover and accounting
requirements of Bankruptcy Code §543(b) and the automatic stay in
Bankruptcy Code §362(a).

42.    Plaintiff believes and avers that $1,555,000 is a conservative estimate of the
unaccounted for asset value loss suffered by the Custodial Property during the Custodial Period,
based on the above estimate of $305,000 for the unaccounted for net rents *plus* $700,000 – the
latter figure being the difference between (i) the $1,750,000 the Debtor Properties sold for and

(ii) $3,000,000, being Plaintiff's current estimate of what the Debtor Properties would have been worth if properly maintained during the Custodial Period.[5]

## II.    REQUEST FOR RELIEF.

43.    For the reasons set forth above and in the accompanying Plaintiff's Memorandum, and evidence to be adduced at a hearing on this Motion:

a.    Plaintiff has a reasonable probability of success on the merits of the claim for an equitable accounting by each of the Defendants based upon (i) the possession, custody and/or control of Custodial Property during the Accounting Period attributable to them; and (ii) the fiduciary duties each of them owed to Plaintiff while in possession, custody and control and/or the complexity of the accounting needed;

b.    Plaintiff will be irreparably harmed if the Defendants are not required to account, in that (i) it will be irreparably deprived of the benefits of the enforcement of the fiduciary obligations of Defendants to provide a complete, understandable and fair account of what occurred with the Custodial Property during the Defendants' respective possession, custody and control; (ii) it will be irreparably deprived of the benefits of process of review, adjudication and surcharge of the Defendants under the equitable standards applicable to them as fiduciaries; and (iii) will incur the unnecessary and unreasonable expense of adversarial discovery to secure

---

[5] This estimate will be supported by the testimony of Debtor's principal, Mohsin Khawaja, based on his familiarity with the value of Debtor Properties at the time of the closing on the Wilmington Trust Loan, the trends in value of similar properties in the relevant market area, and the prices obtained for recent sales of some of the properties after repairs by the purchaser under the Sale Order.

information the Defendants are affirmatively obligated to provide without

such expense;

   c.  the balance of the equities favors granting such relief; and

   d.  the public is served by providing the Plaintiff, the creditors and parties in

interest in the Debtor's Bankruptcy Case, and this Court, with an

accounting and the opportunity to adjudicated the rights and obligations of

the Defendants through an accounting process.

44.     Plaintiff requests that the completion of a proper accounting by all Defendants in

the form of the proposed Order submitted with this Motion to provide this Court, the Debtor and

all parties in interest with a complete, cohesive accounting for the entirety of the Custodial

Period, with each Defendant accounting for their own use, possession, management, care,

custody and/or control of Custodial Property during the Custodial Period attributed to them.[6]

WHEREFORE, Plaintiff requests this Court enter an Order in the form submitted

herewith, (i) requiring the Defendants to account in equity and submit to the adjudication of their

accounts and claims relating thereto by this Court; (ii) staying discovery by the defendants in the

---

[6] An annotated explanation of the proposed Order submitted with this Motion is included in the accompanying Plaintiff's Memorandum of Law in Support of Motion for Preliminary Injunction ("Plaintiff's Memorandum"), relating both the form and substance of the proposed Order to the requirements of a proper fiduciary accounting.

meantime; and (iii) granting such other relief as this Court deems equitable and just under the circumstances.

Respectfully Submitted,

**FOEHL & EYRE, P.C.**

Dated: 12/22/2024                    BY: _____

Robert B. Eyre, Esquire
ATTORNEY I.D. #41990
432 North Easton Rd.
Glenside, PA 19038
Phone: 610-566-5926
Email: rob@foehllaw.com
Attorneys for Plaintiff