## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **In re:** | : | |
| | : | **Chapter 11** |
| **MBMK PROPERTY HOLDINGS, LLC,** | : | |
| | : | **Bankruptcy No. 22-13121 (AMC)** |
| **Debtor** | : | |
| | : | |
| **MBMK PROPERTY HOLDINGS, LLC,** | : | |
| | : | |
| **Plaintiff** | : | **Adversary Proceeding No. 23-00062 (AMC)** |
| | : | |
| **v.** | : | |
| | : | |
| **WILMINGTON TRUST, NATIONAL ASSOCIATION, As Trustee, [etc.]; BAY MANAGEMENT GROUP OF PHILADELPHIA, LLC; JAMES PAUL, [etc.] and ALPS GROUP, INC. [etc.]** | : | |
| | : | |
| **Defendants** | : | |
| | : | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION COMPELLING EQUITABLE ACCOUNTING FROM ALL DEFENDANTS

Plaintiff, MBMK Property Holdings, LLC, Debtor in the above-captioned Bankruptcy Case, moves this Court in the above-captioned Adversary Proceeding for a preliminary injunction to compel the Defendants to account in equity for their respective use, possession, management, care, custody and/or control of certain property (referred to herein as the "Custodial Property") during the "Accounting Period" ascribed to each Defendant.

The relief of a preliminary injunction sought herein is ancillary to the claims in Count I of the Complaint in the Adversary Proceeding for an equitable accounting from the Defendants. (See

Complaint [Adv. Doc 1][1], at ¶¶154-165)  Plaintiff incorporates by reference herein the factual allegations set forth in the accompanying Motion of Plaintiff for Preliminary Injunction Compelling Equitable Accounting from All Defendants (herein, "Motion"), reserving the right to supplement these facts at an evidentiary hearing on the Motion.  An abbreviated summary of those facts follows immediately below.

## I.    INTRODUCTION AND SUMMARY OF FACTS.

The Defendants are (i) Wilmington Trust National Association, As Trustee, For The Benefit Of The Holders Of Corevest American Finance 2018-2 Trust Mortgage Pass-Through Certificates ("Wilmington Trust"), (ii) Bay Management Group of Philadelphia, LLC ("BMG"), (iii) James Paul ("Paul"), and (iv) ALPS Group, Inc. ("ALPS").

The essence of the claims for an equitable accounting can be summarized as follows: During a period referred to in the Complaint and Motion as the "Custodial Period" (November 30, 2020 to June 13, 2023), essentially all of the Debtor's operating assets – referred to as the "Custodial Property" – consisting of 13 residential rental properties (the "Debtor Properties") and the leases, rents and other related assets[2] – were in the possession, custody and/or control of one or more of the Defendants, who were also fiduciaries of the Debtor, obligated to account for their role in the possession, management, care, custody and/or control of that property.

---

[1] "[Adv. Doc 1]" refers to document number 1 on the electronic docket in the Adversary Proceeding.  References to the documents filed in the Bankruptcy case will use the "[Bankr. Doc __]" format.

[2] The term "Custodial Property" is defined in paragraph 2 of the proposed Order submitted with the Motion, and it used in the same manner in this Memorandum. That definition is consistent with the property that the Receiver Orders (Exhibits "M" and "N" to the Complaint) charged Defendant Paul to take possession of as Receiver in March of 2022. It includes the 13 Debtor Properties, and leases and rents on such properties, but also other property and information concerning the maintenance, operation and management of Debtor Properties, leases and rents.  It is not known if Defendant Paul or any other Defendants had possession, custody or control of *all of* the Custodial Property; but for the reasons set forth below, it is clear that each of the Defendants was in possession, custody or control of *some part of* the Custodial Property.  One important purpose of the accountings is to have the Defendants answer the question of who possessed or exercised control over which parts, and what actions they took that affected the value returned to the Debtor.

The Custodial Period was initiated by Wilmington Trust's action on November 30, 2020 to take control of the leases and rents for all 13 Debtor Properties through the property manager, Defendant BMG. BMG had previously managed the Debtor Properties, leases and rents *as agent of the Debtor*, under a property management agreement with the Debtor (the "BMG Property Management Agreement" included in Exhibit "H" to the Complaint). Wilmington Trust had a collateral assignment of the leases and rents (the "Assignment of Rents") in Section 1.02 of its Mortgages (Complaint, Exhibits "D" and E"), and a collateral assignment of the BMG Management Agreement, pursuant to an "Assignment of Management Agreement" (Exhibit "H" to the Complaint), between the Debtor, BMG and Wilmington Trust.

These relationships changed fundamentally on November 30, 2020, when Wilmington Trust notified the Debtor and BMG that it was exercising its rights under the Assignment of Management Agreement to have BMG collect and hold all rents *as agent of Wilmington Trust* pending further instructions from Wilmington Trust. (See Motion at ¶¶11-15)

This was the beginning of the Custodial Period, during which others besides the Debtor were in possession, custody and control, of the Debtor Properties, leases, rents and other property referred to herein as the "Custodial Property."

During the first 17 months of the Custodial Period (herein, the "Wilmington Trust/ BMG Custodial Period") possession, custody and control was shared between Wilmington Trust and BMG. (See Motion at ¶¶11-26)    This changed in March of 2022, when Defendant Paul (literally, "James Paul of the ALPS Group")[3] was appointed Receiver of the Debtor Properties by Orders of the Courts of Common Pleas in Philadelphia County (on March 10) and Delaware County (on

---

[3] The Complaint alleges that Defendants Paul and ALPS acted as a common enterprise for the purpose of securing business for ALPS through the court-appointment of Paul as a receiver of assets (Complaint, ¶¶15-18)

March 18) (together, the "Receiver Orders"), and charged with exclusive possession of the Custodial Property.

This marked the end of the Wilmington Trust/BMG Custodial Period, and the beginning of an approximately 16-month period (herein, the "James Paul/ALPS Custodial Period") in which Defendant Paul used other agents and employees of ALPS to take possession of, manage and maintain (albeit poorly) the Custodial Property. (See Motion at ¶¶27-34)

The last seven months of this James Paul/ALPS Custodial Period was *after the Petition Date* in the instant Bankruptcy Case, during which these Defendants were obligated under Bankruptcy Code §545(b) to turnover and account for the Custodial Property, or request interim permission from this Court. Defendants Paul and ALPS took none of those actions, but continued to exercise dominion over the Custodial Property in violation of Bankruptcy Code §545(b), until this Court Ordered them to turn it over to the Debtor pursuant to the Agreed Order Regarding Motion of Debtor for Order Compelling James Paul of ALPS Group, LLC and Agents to Comply with Bankruptcy Code § 543(b) [Bankruptcy Docket No.109] (herein, "June 13, 2023 Turnover Order")

None of the Defendants have fulfilled their fiduciary obligation to account for what they did with the Custodial Property in their possession, custody or control during the Custodial Period.[4] Defendants Paul and ALPS will undoubtedly argue they have accounted by the filing on June 12, 2024 of a, "Section 543(B)(2) Accounting Report" [Bank. Doc Nos. 188 and 188-1], signed by Defendant Paul as "Receiver." As discussed below, however, this "Receiver Report" does not

---

[4] The Debtor is filing a separate motion (the "Receiver Sanctions Motion") in the Bankruptcy Case, seeking sanctions for the continuing violation of Bankruptcy Code §§543(b)(2), and the June 13, 2023 Order by Defendant Paul. To assure the accounting of Defendant Paul is consistent in form and substance with the accounting of the other Defendants, Plaintiff proposes the relief on the Receiver Sanctions Motion be limited to the monetary sanctions, and the accounting to be required of Defendant Paul be part of the equitable relief sought on this Motion, and in the form and substance of the proposed order submitted with this Motion.

come close to satisfying the requirements of a proper accounting by a receiver under Pennsylvania law or a custodian under Bankruptcy Code §543(b)(2).

The Defendants' possession, custody and control of all or some of the Custodial Property, their fiduciary obligations and their failure to account, are sufficient grounds for the relief sought herein.[5] An alternative basis for ordering them to account is the complicated nature of the accounts at issue.[6]

There are particularly compelling reasons demonstrating the need for an accounting in this case – material circumstances that raise questions about what the Defendant-fiduciaries did and did not do during the Custodial Period, and why or why not. As set forth in the Motion, there were, in this time period, (i) dramatic increases in the expense of management and operation of the Debtor Properties; (ii) similarly dramatic declines in the net rents accounted for; (iii) unexplained vacancies and uncollected rents; (iv) catastrophic property damage found upon recovery of the properties by the Debtor; and (v) a precipitous decline in the market value of the Debtor Properties during a period of increasing property values in the relevant market. (See Motion at ¶¶41-42)

The Debtor's current estimate is that over the entire course of the Custodial Period some $1,555,000 in lost asset value is unaccounted for. (Motion, ¶42)

The impact of all this is illustrated graphically in the chart attached hereto as Exhibit "A."

These particulars are more relevant to the content of the Defendants accounting – identifying the sorts of questions that need to be answered by them, and the restitution and surcharges to be considered by the Court in its adjudication of their accounts – than the obligation to account itself, which exists because of their exercise of dominion over Custodial Property

---

[5] See part II.1.a of Legal Argument, below.
[6] See part II.1.b of Legal Argument, below.

coupled with either (i) the fiduciary obligations they assumed in that context and/or (ii) the complicated nature of the accountings required.

Before addressing the elements of the accounting claim and the cause for injunctive relief, Plaintiff thinks it is appropriate to emphasize that the obligation to account in equity is not limited to providing information, as in discovery in an adversarial proceeding. It is, rather, a remedy that awards a plaintiff restitution for the unaccounted-for loss of value of property while in the custody of others who are obligated to account because of the plaintiff's interest in the property. See, Eichengrun, *Remedying the Remedy of Accounting*, 60 Indiana L.J. 463 (1985) ("Eichengrun, *Accounting*").[7] Not only does an equitable accounting include the remedy of restitution of the unaccounted-for loss, recovery of excessive or improper expenditures and surcharge for mismanagement and waste; it also provides for the application of special burden-shifting principles, consistent with the obligations of a fiduciary, in adjudicating such relief:

> When the accounting remedy is granted, the burden of proof is allocated to the plaintiff on certain fact issues and to the defendant on others. The plaintiff must establish some substantive basis for an accounting. He must also prove all gross amounts claimed from the defendant. Thus, the plaintiff must show that some property was entrusted to the defendant's care, so that there is something to account for, and he must also show the amount or value of that property. If profits from the use of the property are sought, the plaintiff has the burden of proof to establish the gross amount of such profits. The defendant, in turn, has the burden of proof to establish expenses, losses or other deductions which it is claimed reduce the amount due the plaintiff. It will be presumed that funds or property unaccounted for were misappropriated, and expenses unexplained were not incurred, with all inferences resolved against the defendant on these issues. The operation of the burdens of proof can be simply illustrated. If, for example, the plaintiff establishes a fiduciary relationship entitling him to an accounting of the defendant but fails to prove the amount of funds delivered to the defendant or the defendant's gross profits, the plaintiff recovers nothing because he has failed to meet his burden of proof. Conversely, if

---

[7] A copy of Eichengrun, *Accounting* is attached hereto as Exhibit "B," for its concise explanation of the nature of this remedy and the principles underlying its application. These same attributes and principles are described, with reference to applicable case law, below; but the *Accounting* article is helpful for its comprehensive summary on the subject.

> the defendant claims expenses but fails to support these claims with adequate evidence, the plaintiff recovers the gross amount proven because the defendant has failed to meet his burden of proof.

(Eichengrun, *Accounting,* at 469-470, citations omitted).  As this passage suggests, the accounting remedy is the product of a particular process that *starts with* a non-adversarial (i.e., fiduciary) and understandable (i.e., not burdensome or technical) explanation by the defendant of what was done with the plaintiff's property; and *ends with* the adjudication of the accounting by a court, applying equitable principles to the allowance and disallowance of charges, the award of restitution for any unaccounted for loss and the surcharge of the defendant-fiduciary for mismanagement, waste and other improprieties in the administration of the property at issue.[8]

Once it is understood that the claim of equitable accounting is not just about providing information to an adversary, but about accounting as a fiduciary, and submitting the accounting to a process of adjudication applying equitable principles and resulting in a monetary award, it is easily seen that neither the reports and data the Defendants have provided to date, nor discovery under the Rules of Civil Procedure, can be adequate substitutes for the accounting process.  The loss of that equitable process and the special relief it offers, would cause irreparable harm to the Debtor and the Bankruptcy Estate.

## II.    ARGUMENT

<u>Preliminary Injunction Standard</u>

The issuance of an injunction under section 105(a) is governed by the standards generally applicable to the issuance of injunctive relief in non-bankruptcy contexts.  *Lane v. Phila. Newspapers, LLC (In re Phila. Newspapers, LLC),* 423 B.R. 98, 105 (E.D. Pa. 2010).  In order to be entitled to a preliminary injunction, the burden is upon the moving party to satisfy the following

---

[8] See discussion of Pa.R.C.P. No 1534; Bankruptcy Rule 6002, below.

factors: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest. *Lane v. Phila. Newspapers, LLC (In re Phila. Newspapers, LLC)*, 423 B.R. 98, 106 (E.D. Pa. 2010).

### 1. Debtor has a reasonable probability of success on the merits of its equitable accounting claims as Defendants stood in fiduciary relationships and the accounts are highly complicated.

"An accounting is an essentially equitable remedy, the right to which arises generally from the defendant's possession of money or property which, because of some particular relationship between himself and the plaintiff, the defendant is obliged to surrender." *Am. Air Filter Co. v. McNichol*, 527 F.2d 1297, 1300 (3d Cir. 1975); *see also Holmes v. Wakelin*, 48 Pa. Super. 643, 646 (1912) ("The obligation to account arises out of the relation and situation of the parties. [...] To create such liability [to account] it must appear that the person to be charged has received property of some kind not belonging to himself which he is in duty bound to pay over or account for to the plaintiff"). "The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is [...] the absence of an adequate remedy at law." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478, 82 S. Ct. 894, 900 (1962). The Bankruptcy Rules recognize the importance of accounting by those holding debtor property because accountings allow the Court to "determine the propriety of the administration, including the reasonableness of all disbursements." Fed. R. Bankr. P. 6002(b).

Debtor can demonstrate a reasonable likelihood of success on the accounting claim on either of two bases: (i) fiduciary relationship of Defendants and (ii) the complexity of the accounts; each of which independently make any remedy at law inadequate.

### a. *Defendants' fiduciary relationships alone give rise to Debtor's right to an equitable accounting.*

A fiduciary relationship alone sufficiently demonstrates lack of an adequate remedy at law and is grounds to compel an equitable accounting. *See Kirschner v. W. Co.*, 300 F.2d 133, 136 (3d Cir. 1962) ("the existence of a fiduciary or confidential relationship between the parties will sustain the jurisdiction of equity to grant an accounting" (citations omitted)); *Barkauskie v. Indian River Sch. Dist.*, 951 F. Supp. 519, 543 (D. Del. 1996) ("One type of relationship from which a duty to account may arise is the relationship of a fiduciary to his principal" (citations omitted); *Ahearn v. Forman*, No. 83-3739, 1985 U.S. Dist. LEXIS 16811, at *8 (E.D. Pa. Aug. 15, 1985) ("[W]hen a fiduciary relation exists between the parties it is clear that a bill for an accounting will be granted (citations and quotations omitted)).[9] The same holds true in Pennsylvania courts. *See Williams v. Finlaw, Mueller & Co.*, 292 Pa. 244, 249, 141 A. 47, 49 (1928) ("Where a well recognized fiduciary relation exists, […] it is clear that a bill for an accounting will be granted"); *Graham v. Cummings*, 208 Pa. 516, 532, 57 A. 943, 948 (1904) ("A court of equity's jurisdiction over matters of account" is based on, *inter alia*, "the existence of a fiduciary or trust relation"); *Universal Film Exchs., Inc. v. Budco, Inc.*, 44 Pa. D. & C.2d 695, 706 (C.P. Bucks Cty. 1968) ("The instances in which the legal remedies are held to be inadequate and, therefore, a suit in equity for an accounting proper, are: […] where a fiduciary relationship exists between the parties and a duty rests upon defendant to render an account").[10]

---

[9] See also, 1 *Am Jur 2d Accounts and Accounting* §53 ("Where a fiduciary or trust relationship exists, an action for an accounting is considered equitable in nature without regard to other considerations"), and citations listed.
[10]*See also, Martin v. Heinold Commodities*, 163 Ill. 2d 33, 78-79, 205 Ill. Dec. 443, 465, 643 N.E.2d 734, 756 (1994) ("It has been further held that courts of equity have jurisdiction to compel an accounting, although the complainant has an adequate remedy at law, where fiduciary relations exist [. …] This is due to the fact that equity [has traditionally] recognized and enforced fiduciary duties, so it naturally [gives] an accounting remedy against fiduciaries" (citations and quotations omitted).

### i. *Fiduciary duties of Defendants Wilmington Trust and BMG.*

Debtor has plainly shown that Defendants Wilmington Trust and BMG held a fiduciary duty to account for Custodial Property during the Wilmington Trust/BMG Custodial Period.

Wilmington Trust is obligated under Section 1.02 of the Mortgages (see Complaint, Exhibits "D" and "E") to account for application of any rents it received – whether to the indebtedness on the Loan or other purposes. Its obligations do not end there, however, where it is deemed to be a mortgagee in possession – either constructive or actual. For the reason set forth below, it is submitted that, during the Wilmington Trust/BMG Custodial Period, Defendant Wilmington Trust was in actual possession, and subject to the full panoply of fiduciary obligations imposed upon a mortgagee in possession, due to its actual control of the management and operation of the properties through its agent, BMG.

A mortgagee in possession is a "mortgagee who has obtained possession of property from the mortgagor with the consent of the latter." *Myers-Macomber Eng'rs v. M. L. W. Constr. Corp.*, 271 Pa. Super. 484, 488, 414 A.2d 357, 359 (1979). A mortgagee in possession is a "quasi trustee" with a fiduciary duty "to comport with the same standard of conduct as a prudent owner, i.e., he must manage the property in a reasonably prudent and careful manner so as to keep it in a good state of preservation and productivity." *Id.* at 360 (citations omitted). "Moreover, the mortgagor is entitled to an accounting from his mortgagee who has taken possession." *Id.* at 360 (citations omitted).

"A mortgagee can obtain 'possession' of realty and […] in two ways: (1) by entering into 'actual possession' of the real estate through foreclosure or by acting as a mortgagee in possession; or (2) by taking 'constructive possession' of the realty by serving demand notices on the mortgagor's tenants. *In re SeSide Co.*, 152 B.R. 878, 883 (E.D. Pa. 1993). While "[t]he law is not clear as to whether an identical set of responsibilities falls upon a mortgagee who assumes only

constructive possession of premises" it is clear that where there is actual possession, the mortgagee take[s] on the full array of responsibilities assigned to a mortgagee-in-possession," whereas "a mortgagee in constructive possession of premises assumes at the least a duty to account for the rents to the mortgagor and apply the rents to payment of the debt." *In re Dupell*, 235 B.R. 783, 792 (Bankr. E.D. Pa. 1999) (citations omitted).

"Actual possession" exists where an agent for the mortgagee collects rents on a mortgaged property in default and pays out of the rents such expenses as plumbing repairs, plastering repairs, and service for notices of eviction, even without paying taxes. *See Zisman v. Duquesne*, 18 A.2d 95, 98 (Pa. Super 1941). In such circumstances, "[i]ndubitably [the] agent exercised such control over the property as would place his principal in possession thereof, as he did everything an owner in possession and control of similar premises could do, except pay taxes." *Id.* Because the agent "exercised such acts of dominion and control over the premises in question as would make [...] his principal, the mortgagee in actual possession and control of the premises." *Id.* at 99. *See also Ignatowicz v. City of Pittsburgh*, 375 Pa. 352, 100 A.2d 608 (1953); *Miner v. City of Pittsburgh*, 363 Pa. 199, 69 A.2d 384 (1949); *Guyton v. City of Pittsburgh*, 155 Pa. Superior Ct. 76, 38 A.2d 383 (1944); and compare *Monroe v. Penn Ram Motor Inn*, 285 Pa. Super. 644, 427 A.2d 1234 (1980) (mortgagee exercised dominion and control through property manager, liable as mortgagee in possession to third parties injured on premises).

Here, BMG acted as an agent for Wilmington Trust in such fashion as to exercise dominion and control over the Debtor Properties on behalf of Wilmington Trust, thereby placing Wilmington Trust in actual possession as principal, making Wilmington Trust a mortgagee in possession and quasi trustee with corresponding fiduciary duties. Wilmington Trust's action on November 30, 2020 not only directed BMG to receive and hold all the rents of the Debtor

Properties as agent for Wilmington Trust, but at the same time deprived the Debtor of its only source of cash, leaving Debtor unable to pay for the management, operation, and care of the Debtor Properties.  Moreover, as set forth in the Motion, BMG not only used the rents it held as Wilmington Trust's agent in the operation of the Debtor Properties, but did so in a manner that materially changed the ordinary course of operations that had prevailed in the previous months, when BMG acted as agent for the Debtor.  (See Motion at ¶41. a. through d.)  As such, Wilmington Trust not only "received the rents" – something that, by itself, mandates and accounting for the rents themselves; but intentionally allowed or directed its agent, BMG, to use and apply those rents to the management and operation of the Debtor Properties, thus exercising actual possession, dominion and control over the Debtor Properties as mortgagee in possession. *Zisman*, supra.; *Monroe v. Penn Ram Motor Inn*, supra.

Even without actual possession, Wilmington Trust is expressly obligated to account for the rents it collects both pursuant to exercises constructive possession control and pursuant to the Mortgage.

"Constructive possession" occurs when the mortgagee "serv[es] demand notices on the mortgagor's tenants." *In re SeSide Co.*, supra, at 883; *see also Sovereign Bank v. Schwab*, 414 F.3d 450, 453 (3d Cir. 2005) (quoting same). "[A] mortgagee in constructive possession of premises assumes at the least a duty to account for the rents to the mortgagor and apply the rents to payment of the debt." *In re Dupell*, 235 B.R. 783, 792 (Bankr. E.D. Pa. 1999) (citations omitted).

The actions of Wilmington Trust and BMG further manifested assent between Wilmington Trust and BMG that BMG would act for Wilmington Trust subject to Wilmington Trust's control. *See Bradney v. Sakelson*, 325 Pa. Super. 519, 523, 473 A.2d 189, 191 (1984) ("The basic elements of agency are the manifestation by the principal that the agent shall act for him, the agent's

acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking"). Wilmington Trust and BMG continued to act, respectively, as mortgagee in possession and agent until Wilmington Trust succeeded in having Paul/ALPS appointed as receiver of the Debtor Properties on March 10 and 18, 2022.

### ii. *Fiduciary duties of Defendants Paul and ALPS*

"A receiver owes a fiduciary duty to the owners of the property under his care." *Sovereign Bank v. Schwab*, 414 F.3d 450, 454 (3d Cir. 2005). "The legal status of a receiver, his authority and duty, is clear[;]" a receiver holds a "duty is to protect and preserve, for the benefit of the persons ultimately entitled to it, an estate over which the court has found it necessary to extend its care." *Warner v. Conn*, 347 Pa. 617, 619, 32 A.2d 740, 741 (1943); *see also MBMK Prop. Holdings, LLC v. Wilmington Tr., N.A.*, Nos. 22-13121-MDC, 23-00062-MDC, 2024 Bankr. LEXIS 1499, at *45-46 (Bankr. E.D. Pa. June 25, 2024) ("A receiver, appointed by the court, […] is an agent, representative, arm, fiduciary, or officer of the appointing court")

There is no question that Defendant Paul owes fiduciary duties to account as a direct consequence of his role as court-appointed Receiver of the Custodial Property between March 10 and 18, 2022 and June 13, 2023. See, Pa.R.C.P.1534; *Gerber v. Weinstock,* 453 A.2d 1043 (Pa. Super. 1982); *Petition of Andrews,* 25 F.2d 450, 452 (3d Cir. Pa. 1928); *Pangburn v. American Vault, Safe & Lock,* 205 Pa. 93, 100 (1903). There is also no question that upon the filing of the instant Bankruptcy Case, Defendant was a custodian, now obligated to account to this Court under Bankruptcy Code ¶543(b); and this Court specifically ordered Defendant Paul, as Receiver and custodian, to do so in the June 13, 2023 Turnover Order.

In the context of the evidence of Defendants Paul and ALPS acting as a common enterprise as Receiver, and the clear reliance of Defendant Paul on ALPS' employees and agents in possession, custody and control of the Custodial Property, it is appropriate that the relief of an

equitable accounting be granted as to both Defendants Paul and ALPS for the James Paul/ALPS Custodial Period.

Thus, Debtor has shown a fiduciary relationship and duty to account as to each of Defendants Paul, ALPS, Wilmington Trust, and BMG. For this reason alone, Debtor has accordingly shown a likelihood of success on the merits of an equitable accounting claim.

### b. *In the alternative, the complexity of the accounting also gives rise to Debtor's right to an equitable accounting.*

In addition, and in the alternative, Debtor has shown a likelihood of success on an equitable accounting claim due to the complexity of the accounts.

"Equity will take jurisdiction on the ground of account [...] if it is so complicated as seriously to embarrass the remedy at law[.]" *Holland v. Hallahan*, 211 Pa. 223, 225, 60 A. 735, 736 (1905). *See also Crennell v. Fulton*, 574, 88 A. 783, 784 (Pa. 1913) (holding that facts of record "clearly justifie[d] the exercise of equity jurisdiction" to compel an equitable accounting due to "complexity" of case involving the "whole business" of defendant that hired plaintiff to scope out coal properties); *Graham v. Cummings*, 208 Pa. 516, 532, 57 A. 943, 948 (1904) ("A court of equity's jurisdiction over matters of account is based upon three grounds," including "the complicated character of the account"); *Universal Film Exchs., Inc. v. Budco, Inc.*, 44 Pa. D. & C.2d 695, 706 (C.P. Bucks Cty. 1968) (noting equitable accounting proper where "where the accounts are all on one side but there are circumstances of great complication or difficulties in the way of adequate relief at law"). "[W]here the matter to be determined involves the accounts of different parties, to which debit and credit items attach and are intermingled, it can generally be held that a jury would not be qualified to state such an account" and the remedy at law inadequate. *Williams v. Finlaw, Mueller & Co.*, 292 Pa. 244, 248, 141 A. 47, 49 (1928).

The accounts required here are deeply complex, because of the need to account for the operations and management of thirteen pieces of residential rental properties over a period of some 30 months, under the care of four different Defendants, and resulting in over a million dollars in unaccounted-for loss. Compare, *Daniel G. Kamin Anaheim LLC v. Howard Kadish LLC*, 2019 Pa. Dist. & Cnty. Dec. LEXIS 7093, *1 (Comm. Pleas Allegheny, 2019) (granting motion for accounting where claimant met elements for equitable accounting and respondents' misplacing of one million dollars indicated inadequate monitoring and thus supported need for accounting).

The Receiver Orders charged Defendant Paul with taking possession and control of the following Custodial Property:

a) The real properties located at 245 Burmont Road, Drexel Hill, PA 19082; 347 Avon Road, Upper Darby, PA 19082; 355 Avon Road, Upper Darby, PA 19082; 37 Walnut Street, Clifton Heights, PA 19018; 412 Long Lane, Upper Darby, PA 19082; 4690 State Road, Drexel Hill, PA 19026; 8513 Lansdowne Avenue, Upper Darby PA 19082; 419 Glendale Avenue, Upper Darby, PA 19082; 526 Timberlake Road, Upper Darby, PA 19082; 418 Timberlake Road, Upper Darby, PA 19082; 599 Timberlake Road, Upper Darby, PA 19082; and 2131 Brighton Street, Philadelphia, PA 19149 and 40 E. Rittenhouse Street, Philadelphia, PA 19144 (collectively the "Real Property");
b) Contract rights; bank accounts; tax accounts; escrow accounts; receivables; and causes of action; all assets associated with or derived therefrom; all income generated from the Real Property;
c) Deposits, rents, and proceeds derived from the Real Property;
d) Any deposits held in escrow, the location of the escrow account, any escrow agreements, and all correspondence and agreements concerning such escrow funds;
e) Agreements of sale, leases, purchaser lists, prospective purchaser lists, tenant lists, tenant files, rent payment records, sale records, deposit records, and any and all correspondence with tenants and/or buyers;
f) Equipment leases, employment agreements, supply or service agreements, and other contracts affecting the Real Property or items used in association with the Real Property;
g) All contracts and agreements with parties holding mechanic's liens on the Real Property;
h) Insurance certificates and policies and correspondence with agents and insurance companies regarding coverages for the Real Property;
i) Banking documents and statements for all funds, revenues, deposits, and expenses administered for or concerning the Real Property;
j) Bills and account statements for items or services acquired from vendors or suppliers through the course of the Custodial Period;
k) Real estate tax bills and all tax sale notices related to the Real Property;
l) Notices of assessment or re-assessment for the Real Property;

m) Notices of taking or of eminent domain proceedings affecting the Real Property;

n) Notices and correspondence regarding any violation of local, State or Federal law regarding the Real Property;

o) A list of account numbers for all utilities serving the Real Property;

p) A list of any pending proceedings in any court regarding or relating to leases or contracts on the Real Property;

q) All inventory and equipment lists;

r) Books and records pertaining to accounts payable and accounts receivable with respect to the Real Property;

s) all environmental reports and test results in Defendants' possession relating to the Real Property or any portion thereof;

t) copies of cumulative monthly operating statements for the Real Property generated over the Custodial Period;

u) All architectural plans, engineering plans, surveys, electrical plans, and site plans for the Real Property;

v) All documents relating to legal actions between Defendants and any tenant or vendor arising out of any services, property or interest pertaining to the Real Property; and

w) All such other items, records or documents that the Court may reasonably require to determine the reasonableness and propriety of the custody.

(Receiver Orders, Complaint Exhibits "M" and "N"). Without proper accounting and inventory for each Defendant, we do not know how much of this Custodial Property Defendants James Paul and ALPS acquired following the entry of the Receiver Orders, or how much of that property Defendants Wilmington Trust and BMG had to provide to Defendants Paul and ALPS, but the Receiver Orders set a high bar for the extent and variety of property to be accounted for by the Defendants.

The complexity of the accounting needed in this case is perhaps best demonstrated by the 655 page "Receiver Report" filed in the Bankruptcy Case on June 12, 2024 [Bank. Doc Nos. 188 and 188-1]. Defendants Paul and ALPS will undoubtedly argue they have accounted by the filing on this "Receiver Report", signed by Defendant Paul as "Receiver." As discussed below, it does not even come close to the form or substance of an accounting required of a Receiver under applicable state law, or Bankruptcy Code §545(b) (2). It dumps 655 pages of information on the Court and bids the Court and parties to figure out why approximately $1,055,000 in asset value was lost during the Custodial Period. The task of digesting and understanding all that data is

complicated, and equity properly requires the Defendants who have that information and oversaw that Custodial Property in that time of loss, to provide a reasonable, fair and understandable explanation of what happened.

**2. *Debtor will be irreparably harmed by the denial of the injunctive equitable relief as denial will invert Defendants' fiduciary duties to deprive Debtor of its underlying right to receive an account, and will leave Debtor with an inadequate remedy at law.***

Debtor will be irreparably harmed if it is forced to proceed without accountings form these Defendants, as it will be deprived of the essential benefits of the accounting process, including: (i) the receipt of a fair, understandable and good faith explanation from the Defendants of what occurred in their use, possession, management, care, custody and/or control of Custodial Property; and (ii) the adjudication of the Debtor's rights to restitution and surcharge under the equitable standards applicable to the accounting process. If denied these benefits of the remedy of an equitable accounting, the Debtor will have to rely on discovery in this Adversary Proceeding, bearing the burden to not only to uncover through adversarial discovery, but digest, interpret and prove what the Defendants did or did not do with Custodial Property, and how they caused the net asset value loss. What is irreparable in the denial of the relief of an equitable accounting is not merely the expense of the discovery process, but the adversarial posture of it and the burdens placed on the Debtor to find, understand and prove which the Defendants, as fiduciaries, are affirmatively required to explain, fairly and in good faith. These are the benefits alluded to in Eichengrun, *Accounting,* at 469-470, also found in the principles applicable to fiduciary accounting under Pennsylvania law, generally applicable Federal law and Bankruptcy Code §545(b), discussed further below.

"The right to an accounting is to aid a beneficiary's oversight of a trustee's actions so that the beneficiary has the information that is reasonably necessary to enable them to enforce their

rights under the trust." *Fletcher v. United States*, 26 F.4th 1314, 1326 (Fed. Cir. 2022) (quotations omitted, citing Restatement (Second) of Trusts § 173 cmt. c). An account must therefore contain "sufficient detail and [be] sufficiently itemized to give the [beneficiary] accurate and full information as to [the fiduciary's] conduct of the business[.]" *Mechanics' Tr. Co. v. Ensminger Lumber Co.*, 27 F.2d 877, 880 (3d Cir. 1928). The information must be such that the parties and the Court "may or may not conclude that [the] receivers fully and faithfully discharged their duty, and will be in position to determine intelligently whether or not it should except to any specific item." *Id.* It is fundamentally critical that the accounts provide essential and useful information in an understandable manner to interested parties and the Court so as to allow parties and the Court to determine the reasonableness and propriety of actions taken. *See*, Fed. R. Bankr. P. 6002 (requiring that Court, upon filing of the account, "determine the propriety of the administration, including the reasonableness of all disbursements"); *Estate of Meriano v. C.I.R.*, 142 F.3d 651, 660 (3d Cir. 1998) ("Fiduciaries who pay out funds in their hands without an audit of their accounts do so at their own risk" and court "may direct the estate's fiduciary to reimburse the estate if, upon auditing the estate's final account, the court finds the fiduciary's prior distributions to be improper or unreasonable[,]" citing 20 Pa.C.S. 3532); Pa.R.O.C.P. Rule 2.1(c) (adopting Uniform Fiduciary Accounting Principles[11] which require accounts from trust and estate fiduciaries be stated in "a manner that is understandable to persons who are not familiar" with fiduciary accounts); Restatement (Second) of Trusts, § 173 (trustees must provide "complete and accurate information as to the nature and amount of the trust property, and to permit [beneficiary] to inspect the subject matter of the trust and the accounts and vouchers and other documents relating to the trust").

---

[11] *See National Fiduciary Accounting Standards Project – 1983 Report of Fiduciary Accounting Standards Committee*, available at https://www.pacourts.us/forms/for-the-public/orphans-court-forms and attached hereto as Exhibit "C".

As stated by the Fiduciary Account Standards Committee: "[t]he fundamental objective of an account should be to provide essential and useful information in a meaningful form to the parties interested in the accounting process." (Exhibit "C" at 2)  Further, "the relationship of trust and confidence [...] is itself important and [such that] the account should not be presented in an adversary format that will unnecessarily impair this relationship." *Id. See also Fletcher*, 854 F.3d at 1206 ("a duty to account is a duty to account, not a duty to respond to and disprove any and all potential breaches of fiduciary duty a beneficiary might wish to pursue once the accounting information is in hand").

In furtherance of these objectives, accounts routinely provide clear understandings and explanations of three categories of information: (1) the extent and value of the property at commencement, or beginning inventory, (2) events that changed the extent and value of that property, or receipts and disbursements, and (3) the resulting extent and value of the property at termination, or final inventory. *See, e.g.*, 20 Pa.C.S. § 3301(a)("[e]very personal representative [of an estate] shall file with the register a verified inventory"); Pa.R.O.C.P. 2.1(b)(requiring, *inter alia*, separate schedules setting forth all receipts, gains, losses, sales, disbursements, distributions, investments made, and changes in holdings); *Mechanics' Tr. Co. v. Ensminger Lumber Co.*, 27 F.2d 877, 880 (3d Cir. 1928) ("[R]eceivers should clearly state in their final account what became of the assets which they set out in their first account -- whether they sold some, collected others, were unable to collect or dispose of others, and what became of them" (emphasis added)); *Lerner v. Arista Trouser Corp.*, 12 F. Supp. 83, 84 (E.D. Pa. 1935) ("Receivers are accountable for the receivership assets which come into their hands. To fix this responsibility, an appraisement is made. In their account they should debit themselves with the sum of this inventory and appraisement increased by whatever they received above it, if any, or with a credit for any loss

suffered."). An account must delineate all expenses incurred, all compensation, and all proceeds, offspring, rents or profits. 11 U.S.C.S. 543(b)(2); *In re R. Brown & Sons*, No. 13-10449, 2013 Bankr. LEXIS 3010, at *16 (Bankr. D. Vt. July 25, 2013); *see also* Pa.R.O.C.P. 2.1(b).

Finally, the fiduciary must explain losses or uncollected amounts due, or suffer a surcharge for the amount of unexplained loss. *See In re Estate of Westin*, 874 A.2d 139, 145 (Pa. Super. 2005)(observing that "when 'a patent error has occurred' or when 'a significant discrepancy appears on the face of the record[,]'" then "the burden shifts to the [fiduciary] to present exculpatory evidence" or face a surcharge (citations omitted)); *see also Tenth Nat'l Bank v. Smith Const. Co.*, 242 Pa. 269, 288, 89 A. 76, 82 (1913)("A receiver is no[sic] only chargeable with moneys actually received by him but is equally chargeable and will be surcharged where moneys are due to the estate which are collectible and which have not been collected or attempted to be collected by him").

To force Debtor to proceed without an account and solely rely on discovery would prevent Debtor from enforcing its rights, prevent the Court from properly and efficiently adjudicating the accounts, including any restitution owed and surcharges warranted, and improperly shift the Defendants' fiduciary duties and burdens to Debtor, as Plaintiff in this action, to discover, digest, interpret and prove that which the Defendants are obligated to account for.

To require Debtor to proceed and rely on discovery in this Adversary Proceeding is not an adequate substitute for an equitable accounting, as it violates the principle that fiduciaries should account in a non-adversarial format. (*See* Exhibit "C" at 2)

This problem is plainly demonstrated by the "Receiver Report" filed by Defendants Paul and the ALPs Group on June 12, 2024 [Bankr. Docs 188 an 188-1]. Despite being 655 pages, nowhere is there a summary stated in a sufficiently clear and understandable manner to as allow

this Honorable Court, the Debtor or other parties in interest, to "determine the propriety of the administration" of the Custodial Property.  Nowhere in the account is there an inventory or appraisement of property received or relinquished, or a balance sheet summarizing assets or liabilities at any point.  Nowhere is there an understandable summary of the chronology of transactions or actions taken for a given property. Nowhere is there a statement of liabilities owed to or amounts paid toward indebtedness to Wilmington Trust. Nowhere is there a statement regarding what management decisions were made or why. Instead, the purported "account" merely contains nominally modified versions of the reports filed in the state court and a document dump of ALPs Group's invoices, bank statements, bills and utilities, and tenant communication records.

This "account"—in reality, an adversarial discovery dump—obfuscates the events that occurred during ALPs Group's receivership and obscure any insight into business decisions made. It inverts the fiduciary duties of ALPs Group by placing the burden on the Court and the Debtor to put the pieces together and violates basic principles for accounting. Further, to leave Debtor to rely on discovery such as the "account" would require Debtor (and the Court) to expend dozens of hours deciphering vague, disjointed, and obscure documents for 13 properties over multiple years between four different parties before even gaining a glimpse into the events of the custodial period all without any of the familiarity and firsthand knowledge of the history that Defendants hold. Such a result is wholly unjust in light of Defendants' fiduciary obligations to the Debtor properties, the Debtor, and the Court to account.

Any doubt that this 655-page "Receiver Report" is not a proper accounting is clear in its failure to submit anything to this Court for adjudication – an essential part of the accounting process that allows this Court to determine issues of restitution, disallowance and surcharge, under applicable equitable principles, after notice and opportunity of the parties in interest to he heard.

Compare, *Gerber v. Weinstock,* 453 A.2d 1043 (Pa. Super. 1982), citing Pa.R.C.P. 1534 (a receiver's report is not sufficient to satisfy requirement of an accounting under Pa.R.C.P. 1534); 20 Pa.C.S.A. §§3519 and 7999.2 (requiring adjudication and decree of court to confirm and account; Pa.R.O.C.P. 2.4 and 2.5) (regarding necessity of petition on notice to adjudicate an account; *In re 29 Brooklyn Ave., LLC,* 535 B.R. 36, 42 (Bankr. E.D.N.Y. 2015) (discussing the process of adjudication and surcharge under Bankruptcy Code §545(b)(2)); and discussion in Eichengrun, *Accounting,* supra., at 469-470.

Defendants uniquely hold the best understanding of the information regarding actions such as these during the Custodial Period and are duty-bound (i) to provide that information in an understandable manner and (ii) submit to the adjudication of their accounts and liability for restitution or surcharge before this court. Denial of the relief sought herein, and forcing reliance on adversarial processes of discovery and litigation in this Adversary Proceeding, irreparably deprives the Court, the Debtor and other parties in the Debtor's Bankruptcy case of the unique benefits of the accounting in equity that the Defendants are obligated to provide.

### 3. Preliminary injunctive relief in the form of an equitable accounting will not result in greater harm to Defendants as it will merely impose upon them the ordinary duties entailed by a fiduciary relationship.

Preliminary relief will not result in greater harm to Defendants. Defendants hold the duty to account. Merely directing them to abide by the duty to which they were already obliged creates no harm whatsoever. Any costs associated with such relief are costs that should have been incurred years ago in the adherence to duty. Defendants collectively controlled the Debtor Properties, and any excess complexity in explaining their actions through joint and several accountings is simply the result of their own collective conduct.

**4. Preliminary injunctive relief is in the interest of the public as it promotes the fundamental notion that fiduciaries are accountable for property entrusted to their possession and will be held accountable for failure to discharge the duties imposed upon them by law.**

Finally, granting the preliminary relief is in the public interest. The public has interest in the reassurance that those who receive property with fiduciary duties to maintain it and return it will be held to abide by those duties or suffer consequences. The public places significant trust in fiduciaries. Persons grant fiduciaries powerful authority to control significant portions of their lives in their stead on the knowledge that the fiduciary is legally bound to loyally act in their best interest. *See, e.g.*, Restatement (Third) of Agency, § 8.01. It also serves the public interest in the just, equitable and efficient resolution of issues that will otherwise require more extensive, expensive and time-consuming litigation in the Adversary Proceeding. A large portion of the claims in the Complaint in this Adversary Proceeding related to the unaccounted-for losses in the value of the Debtor Properties, leases and rents during the Custodial Period, and ordering a proper accounting in equity will at least provide the Court, the Debtor and other parties in interest with a proper starting point for the definition of those issues, if not their actual resolution by adjudication of the accounts, restitution and surcharge.

**5. The Court should require Defendants to account in a manner that complies with fundamental principles of accounting for the entirety of the "Custodial Property."**

Debtor has prepared a proposed Order that is designed to provide this Court, the Debtor and all parties in interest with a complete, cohesive accounting for the entirety of the Custodial Period, with each Defendant accounting for their own use, possession, management, care, custody and/or control of Custodial Property during the Custodial Period attributed to them. The core relief is set forth in paragraph 4 of the proposed Order, which is repeated below with annotations tying the provisions to the applicable standards of equitable accounting under applicable law –

Pennsylvania law and Federal law, including Bankruptcy Code §545(b)(2) and Bankruptcy Rule 6002:

    4.     The Accounting of each Defendant shall provide the following, verified under oath, in a form and substance understandable to a reasonably literate ordinary person,[12] so as to allow the Court to determine the reasonableness and propriety of each Defendant's use, possession, management, care, custody and/or control of Subject Property, and any material transactions relating to same, during the Accounting Period ascribed to such Defendant in paragraph 3:[13]

    a.  an inventory and valuation of all Subject Property at the beginning of such Accounting Period;[14]

    b.  a statement of liens, liabilities and obligations encumbering the Subject Property at the beginning of such Accounting Period;[15]

---

[12] *See, e.g.*, Pa.R.O.C.P. Rule 2.1(c) (adopting Uniform Fiduciary Accounting Principles which provide that "[t]he fundamental objective of an account should be to provide essential and useful information in a meaningful form to the parties interested in the accounting process" and that they be stated in "a manner that is understandable to persons who are not familiar" with fiduciary accounts, available at https://www.pacourts.us/forms/for-the-public/orphans-court-forms); Restatement (Second) of Trusts, § 173 (trustees must provide "complete and accurate information as to the nature and amount of the trust property, and to permit [beneficiary] to inspect the subject matter of the trust and the accounts and vouchers and other documents relating to the trust").

[13] In essence, defendants are obligated to provide (1) the extent and value of the property at commencement, or beginning inventory, (2) events that changed the extent and value of that property, or receipts and disbursements, and (3) the resulting extent and value of the property at termination, or final inventory. *See, e.g.*, 20 Pa.C.S. § 3301(a)("[e]very personal representative [of an estate] shall file with the register a verified inventory"); Pa.R.O.C.P. 2.1(b)(requiring, *inter alia*, separate schedules setting forth all receipts, gains, losses, sales, disbursements, distributions, investments made, and changes in holdings); *Mechanics' Tr. Co. v. Ensminger Lumber Co.*, 27 F.2d 877, 880 (3d Cir. 1928)("[R]eceivers should clearly state in their final account what became of the assets which they set out in their first account -- whether they sold some, collected others, were unable to collect or dispose of others, and what became of them" (emphasis added)); *Lerner v. Arista Trouser Corp.*, 12 F. Supp. 83, 84 (E.D. Pa. 1935)("Receivers are accountable for the receivership assets which come into their hands. To fix this responsibility, an appraisement is made. In their account they should debit themselves with the sum of this inventory and appraisement increased by whatever they received above it, if any, or with a credit for any loss suffered.").

[14] *See, e.g.* 20 Pa.C.S. § 3301(a); *Lerner*, *supra*.

[15] *See* Pa.R.O.C.P. 2.1(b)(requiring, *inter alia*, separate schedules setting forth all receipts, gains, losses, sales, disbursements, distributions, investments made, and changes in holdings); *Mechanics' Tr. Co.*, *supra*.

    c.  an accounting of all rents and other income received, disbursements made, obligations incurred, losses or damages incurred and other material transactions affecting the Subject Property during such Accounting Period;[16]

    d.  an inventory and valuation of the Subject Property at the end of such Accounting Period;[17]

    e.  a statement of liens, liabilities and obligations encumbering the Subject Property at the beginning of such Accounting Period;[18]

    f.  such other information as is necessary to explain any loss, damage or diminution in the value of any Subject Property during such Accounting Period;[19] and

    g.  documentation of the foregoing (including vouchers, receipts, payroll records, bank statements and similar records) as is customarily provided in support of fiduciary accounts to verify the accuracy of the accounting information;

all the foregoing to be filed with and subject to examination before this Court, including the right of the Debtor or any creditors or party in interest in Debtor's Bankruptcy Case to take exception to such accounts and request disallowance of

---

[16] *See, e.g.*, fn. 4, *supra*.

[17] *See, e.g.*, *Mechanics' Tr. Co.*, *supra*.

[18] *See, e.g.* 20 Pa.C.S. § 3301(a); *Lerner, supra*.

[19] *See, e.g.*, Fed. R. Bankr. P. 6002 (requiring that Court, upon filing of the account, "determine the propriety of the administration, including the reasonableness of all disbursements"); *Fletcher v. United States*, 26 F.4th 1314, 1326 (Fed. Cir. 2022)("The right to an accounting is to aid a beneficiary's oversight of a trustee's actions so that the beneficiary has the information that is reasonably necessary to enable them to enforce their rights under the trust." (quotations omitted, citing Restatement (Second) of Trusts § 173 cmt. c)). Restatement (Second) of Trusts, § 173 (trustees must provide "complete and accurate information as to the nature and amount of the trust property, and to permit [beneficiary] to inspect the subject matter of the trust and the accounts and vouchers and other documents relating to the trust")

claims and compensation, avoidance of improper transfers, recovery of damages for mismanagement, neglect or waste, surcharge of the Defendants or other appropriate relief.

Debtor would respectfully request this honorable Court enter said order.

## IV.    CONCLUSION

Accordingly, Debtor respectfully requests this Honorable Court enter an order the form of the attached proposed order directing Defendants to file accountings for their actions taken in connection with the Debtor Properties during their respective Custodial Periods, and to file said accounting in such format as to allow the Court to review the reasonableness and propriety of all actions taken by Defendants in connection with the Debtor Properties and whether surcharge is necessary for any improper or excessive disbursements.

Respectfully Submitted,

**FOEHL & EYRE, P.C.**

Dated: 10/22/2024          BY: _____

Robert B. Eyre, Esquire
ATTORNEY I.D. #41990
Stacey H. Main, Esquire
ATTORNEY I.D. #312315
432 North Easton Rd.
Glenside, PA 19038
Attorneys for Plaintiff