# EXHIBIT "B"

<a>
<b>
</b>
</a>



**User Name:** Robert Eyre

**Date and Time:** Saturday, August 3, 2024 3:40:00PM EDT

**Job Number:** 230353249

## Document (1)

1. ARTICLE: Remedying the Remedy of Accounting, 60 Ind. L.J. 463
   **Client/Matter:** 629.02

# ARTICLE: Remedying the Remedy of Accounting

Summer, 1985

**Reporter**
60 Ind. L.J. 463 *

**Length:** 11137 words

**Author:** Joel Eichengrun *

* Associate Professor, Wake Forest University School of Law, A.B. 1969, Colgate University; J.D. 1972, Harvard Law School.

## Text

 **[*463]**  INTRODUCTION

The accounting would seem to be a straightforward, traditional remedy used against the errant fiduciary.  The true accounting remedy yields a restitutionary award of the defendant's profits wrongfully obtained from the use of the plaintiff's property.  The plaintiff must establish some basis for the obligation to account, the defendant is ordered to account, and the plaintiff then gets an order directing payment of the sum of money found due.  However, there are several different remedies called an "accounting," similar only in that all end in an order or judgment for the payment of money.  In addition to the true accounting, another remedy called an "accounting" functionally grants a non-jury trial where accounts are complex or mutual, and a now obsolete remedy, also called "accounting," granted discovery in cases of disputed accounts.  There has been a tendency among courts and writers to lump together these situations and to describe all of them as cases where an "accounting" is granted.  The accounting has thus been surrounded by a certain amount of confusion, which obscures the nature of the remedy, its practical advantages, and the logic of extending the true accounting remedy to non-fiduciary cases.

The purpose of this article is threefold: to untangle some of this confusion; to refocus attention on the advantages and significance of the original remedy; and to suggest some further applications of it.  This article consists of four sections, the first supplying a general historical overview.  The second section sets straight the semantic confusion by clearly defining what accounting is and is not.  The third section discusses the allocation of the burdens of proof when an accounting is granted, and demonstrates the advantages and significance of the accounting when it is properly understood.  These advantages have been obscured by the traditional analysis and applications of the remedy.  With this interpretation in mind, the fourth and final section urges a clarification in the law to include cases outside the scope of the traditional fiduciary relationship.  This would extend the benefit of the accounting to functionally identical situations, where the law should operate consistently.

I.  ORIGINS AND DEVELOPMENT

The accounting evolved from a simple legal remedy to recover the income from real property, held in a custodial relationship, to a broad equitable  **[*464]**  remedy for the recovery of profits from the wrongful use of any property, whether real or personal.  This section traces the historical development of the modern accounting from the twelfth century common law action of **account** through the **equitable** remedy of **accounting** which superseded it.  This

section of the paper shows the purpose for which account was created; the operation of the accounting process; the theoretical basis of the action, which is carried down to the present day remedy; and the procedural loopholes at law which led to the development in equity of the modern accounting remedy. This evolution both explains certain ambiguities in the application of the remedy as it now exists and suggests certain opportunities for expanding the remedy to meet modern needs -- topics that are considered in later sections.

The common law action of account was created in the twelfth or thirteenth century in response to the need for a mechanism to allow recovery of an unliquidated sum of money. [1] The particular problem that spawned account was the inability of the feudal landowner to recover the net rents from one who was in effect an agent appointed to manage the property and collect the rents. In the practice of the time, lands would be granted out to the agent, called a bailiff, who was obligated to account for the rents and profits, less expenses. Although this obligation was a matter of custom and perhaps oral agreement, nothing was reduced to writing. If the bailiff refused to account for the net rents, no existing action contemplated recovery where the landowner could not claim a definite, liquidated sum of money (debt); specific, tangible personal property (detinue, replevin); or show a written agreement under seal (covenant). [2]

The remedy in Account was a money judgment for the income or profit earned from plaintiff's property. It involved a two-step procedure that could be both long and complex. A plaintiff first had to plead and prove a relationship obligating a defendant to account. If the plaintiff prevailed at the first stage, an interlocutory judgment was entered ordering the defendant to account for the income produced by the property. The actual process of accounting to determine the amount due required a second proceeding. Both parties appeared before auditors who conducted the proceeding like an **[*465]** informal business meeting. Each party was required to support claims he made as to sums or credits due him; claims which were in doubt were submitted to a jury for determination. After the auditors considered and settled all of the items presented, a final computation was made. If the result showed a balance in favor of the plaintiff, it was submitted to the court and judgment was rendered for the plaintiff. If, however, there was a balance in favor of the defendant, the action was dismissed. The defendant could then bring an action of debt for the balance determined, the finding of the auditors being regarded as capable of liquidating the affairs either way. [3] The basic outline of this procedure remains a characteristic of the modern accounting remedy, where, as section III shows, each party has the burden of proof to establish the credits or offsets he claims.

The common law action of account is noteworthy as the earliest example of a restitutionary action, imposing on the defendant the obligation to disclose and return profits from the use of the plaintiff's property to prevent unjust enrichment. [4] The modern remedy retains this restitutionary feature. The theory of the common law action was that the obligation to account arose out of the relationship created between the parties where one received the property of another to use and manage in the latter's behalf. [5] To establish this obligation, it was necessary to

---

[1] Belsheim, *The Old Action of Account,* 45 HARV. L. REV. 466, 467-72 (1932).

[2] *Id.* The term "bailiff" was a label used to describe the relationship between the owner of property and the agent to whom it was entrusted for the purpose of managing the property to produce income for the owner. The legal consequence of the label was a finding that the agent, as bailiff, was obligated to account for the income or profits from the property in question. This usage, now antiquated, was common in England but not in the United States. Langdell, *A Brief Survey of Equity Jurisdiction,* 2 HARV. L. REV. 241, 244-45 (1889), *reprinted in book form in* A BRIEF SURVEY OF EQUITY JURISDICTION (1908). (Langdell writes about the later, **equitable** remedy of **accounting**, but his comparisons with the action of account are useful.) For a discussion of the fine points of who was and was not a bailiff, see Belsheim, *supra* note 1, at 479-85.

[3] Belsheim, *supra* note 1, at 494-99.

[4] 3 W. HOLDSWORTH, A HISTORY OF ENGLISH LAW 426-28 (3d ed. 1923); Barbour, *The History of Contract in Early English Equity,* in 4 OXFORD STUDIES IN SOCIAL AND LEGAL HISTORY 13, 13-14 (1914).

[5] Belsheim, *supra* note 1, at 472-75; B. SHIPMAN, COMMON LAW PLEADING 144-47 (ed ed. 1923). The relationship which supports the obligation to account has been characterized as creating a "common law trust," midway between a trust

show both a fiduciary relationship between the parties and the receipt of some property belonging to the plaintiff. The latter requirement was detailed: the plaintiff had to own the property in the defendant's possession; the defendant had to have some obligation beyond being a mere bailee (otherwise the obligation would be to return the property); and the defendant had to receive possession and control of the property, since custody as a servant of the owner was insufficient. [6] Once these requirements were satisfied, the obligation to account was imposed as a matter of law, quite independently of whether or not the parties had actually agreed to an accounting at the inception of their relationship.

 [*466]  Account expanded from its origins as an action against manorial bailiffs and was held to lie in a variety of other situations where an owner of real or personal property delivered it to another to be used or employed for the owner's benefit. [7] As the action became more widely used, the procedure at law for enforcing the order to account broke down. Even though specific enforcement was available at law, it was ineffective. The law courts could issue a writ of *capias,* ordering the defendant seized and imprisoned until the accounting was completed; however, the defendant could obtain release by posting bail and might thereby avoid accounting (if willing to forfeit the bail). [8] Without an accounting, a plaintiff could not show a liquidated sum due him, and without a liquidated sum, there could be no recovery. Thus, the remedy could be thwarted by precisely the circumstances that necessitated its creation in the first place.

Even when the defendant appeared for the accounting, the procedure might become so cumbersome that it denied effective relief. This was partly a function of the then-existing system of trial by jury and partly a function of a more general inflexibility of common law procedure in the face of the need for change. Each item disputed before the auditors was framed as a separate issue for the jury, and trial by wager of law was still possible. [9] The common law jury itself was hardly an asset. Originally, evidence of facts in issue in common law actions was gathered from jurors themselves, who were thought of as witnesses who judged from facts within their knowledge. This concept of the jurors' function continued into the fifteenth century, when feudal society had become more mobile, and in reality jurors might no longer have firsthand knowledge of the dispute. Venue was limited, because the common law courts refused to take cognizance of acts or transactions which occurred abroad. Similarly, neither joinder of parties plaintiff nor joinder of multiple causes of action was permitted. Thus, account was hampered by problems associated with all common law actions of the time, some of which were particularly troublesome in commercial cases where the action was increasingly brought. [10]

Chancery began to take jurisdiction of cases for an accounting at the end of the fifteenth century, offering a remedy that avoided the disadvantages of the legal action, and eventually the common law action of account declined into obsolescence. [11] Equity could enforce the order to account without difficulty, for it had well-developed authority and procedures for specific enforcement. If a defendant were imprisoned for failure to account, there he stayed

---

relationship and an agency relationship. Lile, *Bills for Account,* 8 VA. L. REV. 181, 193 (1922). It is analogous to the modern trust which is also based on receipt of the property of another to be used in the other's behalf. Indeed, account was one of the two sources from which equity courts later developed the trust. *See generally* 1 A. SCOTT, THE LAW OF TRUSTS § 12 (3d ed. 1967). Technically, the distinction between the relationship which gives rise to the obligation to account and that of the trust relationship turns on who has title to the property in question. If title is in the one who receives the property a trust may arise, *id.* at § 2.6, but if title remains with the entruster, the obligation to account arises. Langdell, *supra* note 2, at 245.

[6] Langdell, *supra* note 2, at 243-50.

[7] Belsheim, *supra* note 1, at 476-85; J. AMES, *Lecture XI, Account,* in LECTURES IN LEGAL HISTORY 116, 117-18 (1913).

[8] Belsheim, *supra* note 1, at 472, 496-97.

[9] *See* Belsheim, *supra* note 1, at 497-500.

[10] 5 W. HOLDSWORTH, *supra* note 4, at 278-88 (1924).

[11] *Id.*

until he obeyed the order.  Equity also offered a remedy that was relatively quick, without technical pleading or venue requirements, where  **[*467]**  evidence was obtained from the parties and their witnesses under oath, and where joinder of both multiple parties and multiple claims was permitted.  Mechanically, the actual accounting process in equity differed little from that at law.  A plaintiff had first to establish a basis for the remedy, and disputed issues of fact might be sent to the law courts for determination by jury trial.  The case was then referred to a master in equity, rather than to auditors at law, for the actual accounting process.  [12] The accounting thus evolved into a general equitable remedy to recover the income from another's property wrongfully retained by the fiduciary.  The procedure remains essentially the same when an accounting is sought today.  [13]

## II.  THE MODERN ACCOUNTING REMEDY

This section relates the origins of the accounting remedy to ambiguities in its application today, and in so doing elucidates various commonly accepted meanings of "an accounting." As the remedy expanded in equity, so, too, did the use of the term "accounting." By the nineteenth century, the remedy had taken on a different shape, and the term "accounting" was used to describe what were in fact several different remedies.  No longer was accounting limited to cases where a fiduciary refused to account for income or profits from the use of another's property.  It developed into a general remedy to determine and recover an unliquidated sum of money and was widely used in cases of disputed accounts in commercial situations.  [14] These might be cases where the accounts between the parties were complicated or where there were mutual accounts, or cases where discovery was needed.  Each of these fact situations came to be recognized as further categories where equity would grant "an accounting."  [15]

 **[*468]** The relief granted is different in cases where profits are sought from a fiduciary for the use of property, on the one hand, and in cases of disputed accounts, on the other hand.  [16] But for the fact that the ultimate relief in both situations is an order to pay money, one might say there are two or three distinct remedies subsumed under the name of "accounting." The succeeding parts of this section discuss these remedies in turn, starting with the one applied in fiduciary relationships.  This is the purest and simplest example of the accounting, and the one most in

---

[12]  Langdell, *supra* note 2, at 258.

[13]  The modern procedure is described in section II(A) and its advantages analyzed in section III.  For a good description of the accounting process in operation, see Metro-Goldwyn-Mayer, Inc. v. Antioch Theatre, 52 Ill. App. 3d 122, 367 N.E.2d 247 (1977).

[14]  1 J. POMEROY, POMEROY'S EQUITY JURISPRUDENCE § 186(a) (5th ed. 1941); Devlin, *Jury Trial of Complex Cases: English Practice at the Time of the Seventh Amendment,*  80 COLUM. L. REV. 43, 70 (1980).

[15]  *E.g.,* 4 J. POMEROY, *supra* note 14, § 1421 ("The instances in which the legal remedies are held to be inadequate, and therefore a suit in equity for an accounting proper, are:  1.  Where there are mutual accounts between the plaintiff and the defendant. . . .  2.  Where the accounts are all on one side, but there are circumstances of great complication, or difficulties in the way of adequate relief at law. . . .  3.  Where a fiduciary relation exists between the parties, and a duty rests upon the defendant to render an account."); J. STORY, COMMENTARIES ON EQUITY JURISPRUDENCE 423-504 (1836) (reprint ed. 1972); 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2310 (1971); *accord*  Stuyvesant Ins. Co. v. Keystate Ins. Agency, Inc., 420 Pa. 578, 581, 218 A.2d 294, 296 (1966) ("Appellant's brief correctly states that 'Equity takes jurisdiction only when the accounts are mutual or complicated or when discovery is needed and is material to the relief.'. . . [But] [i]n the instant case, the working relationship of the parties necessarily imposed a trustee's obligation on the agent to account to the principal for money collected."); *see also,*  Goffe & Clarkener v. Lyons Milling Co., 26 F.2d 801 (D. Kan. 1928); Lorsch v. Gibraltar Mut. Casualty Co., 127 Ill. App. 2d 350, 262 N.E.2d 313 (1970);  State v. Cote, 95 N.H. 428, 65 A.2d 280 (1949); Huebener v. Chinn, 186 Or. 508, 207 P.2d 1136 (1949);  1 AM. JUR. 2D *Accounts and Accounting* § 51 (1962); 1 C.J.S. *Accounting* § 14 (1936).

[16]  Part of the confusion surrounding the accounting remedy is the dual use of the word "account." The word "account" is used to signify the remedy in question ("an accounting"), but it is also used in the commercial sense of an account receivable or account payable.  There is no way around this confusion except the understanding that the term "accounting" describes both a remedy which awards the profits of a wrongdoer as well as a quite different remedy which resolves disputed accounts between the parties.  This will become clearer as the different remedies are described below.

conformity with historical principles. Next, two other situations are considered where it is commonly said that an "accounting" is granted: where accounts are complex and where accounts are mutual. The real remedy in these cases is not an accounting, but rather a settlement of a dispute over accounts, in equity, with a non-jury trial. Thus, these situations differ from the traditional fiduciary accounting which grants a restitutionary award of a defendant's profits. Finally, consideration is given to a group of cases where an "accounting" was a means of discovery, that is, cases where there was little or no relationship between the use of the term accounting and the technical remedy it was originally meant to describe.

*A. Distinguishing the Real Remedy: Accounting for Profits Where the Defendant Is a Fiduciary*

The traditional use of the accounting is in cases brought against the express trustee, who may be compelled to give an account of his stewardship. [17] However, the remedy is of much broader application today, since it is available whenever the defendant is a fiduciary who has been entrusted with property of some kind belonging to the plaintiff. Legion are the cases where a party found to occupy a fiduciary relationship may be held to account for the profits or income of property received. [18] These cases are in one sense the direct descendants of the old action of account, although the history **[*469]** of the modern law of fiduciaries is a more complex tale. [19] In any event, equity would grant the accounting remedy whenever a fiduciary relationship was established, and this remains a basis for obtaining an accounting today.

An examination of the basis for a fiduciary relationship is beyond the scope of this article, but a few highlights are useful to flesh out the range of situations where the accounting may be profitably sought. Virtually any kind of relationship may be deemed fiduciary on the facts of a particular case, be it a social, business, or public relationship. The following have been held to account as fiduciaries: express trustee, guardian, executor or administrator, agent, servant, employer, employee, joint venturer, co-owner of property (joint tenant/tenant in common), real estate broker, stockbroker, investment advisor, mortgagee in possession, escrow holder, pledgee, corporate officer or director, and government office holders. [20] And, in some circumstances, even a third-party wrongdoer who knowingly profits from the breach of a fiduciary's duty may also be held to account. [21]

---

[17] *See* G. BOGERT, THE LAW OF TRUSTS AND TRUSTEES §§ 963-68 (rev. 2d ed. 1983).

[18] Cases are collected in 1 AM. JUR. 2D *Accounts and Accounting* § 52 (1962); 1 C.J.S. *Accounting* § 19 (1936); Langdell, *supra* note 2, at 259-67; RESTATEMENT OF AGENCY §§ 382, 339 (1933); RESTATEMENT (SECOND) OF AGENCY § 436 (1957); Annot., 81 A.L.R.2D 1420 (1962); Annot., 65 A.L.R.2D 521 (1959); Annot., 55 A.L.R.2D 1391 (1957); Annot., 3 A.L.R.2D 1310 (1949); Annot., 169 A.L.R. 946 (1947); Annot., 153 A.L.R. 663 (1944); Annot., 143 A.L.R. 1211 (1943); Annot., 79 A.L.R. 201 (1932); Annot., 53 A.L.R. 815 (1928); Annot., 50 A.L.R. 1301 (1927); Annot., 46 A.L.R. 138 (1927); Annot., 45 A.L.R. 519 (1926); Annot., 7 A.L.R. 1365 (1920); *see also*, Douthwaite, *Profits and Their Recovery,* 15 VILL. L. REV. 346 (1970).

[19] *See generally* Frankel, *Fiduciary Law,* 71 CALIF. L. REV. 795 (1983); Shepherd, *Towards a Unified Concept of Fiduciary Relationships,* 97 L.Q. REV. 51 (1981).

[20] A good survey of the cases is contained in G. BOGERT, *supra* note 17, § 481 (rev. ed. 1978).

[21] *E.g.,* County of Cook v. Lynch, 560 F. Supp. 136 (N.D. Ill. 1982) (realtor who bribed county tax assessor to obtain lower rates and charged clients a percentage of the savings must account for profits); Belcher v. Birmingham Trust Nat'l Bank, 348 F. Supp. 61 (N.D. Ala. 1968) (various third parties who profited from use of assets of express trust held accountable); Mullaney, Wells & Co. v. Savage, 78 Ill. 2d 534, 402 N.E.2d 574 (1980) (partner of employee who breached fiduciary duty by acquiring business opportunity must also account for profits); Kelley v. Porter, 357 Mass. 780, 260 N.E.2d 147 (1970) (purchaser of trust property accountable for profits made on resale); Marcus v. Marcus, 92 A.D.2d 887, 459 N.Y.S.2d 873 (1983) (husband and third party to whom he transferred marital property must account to wife); *accord,* G. BOGERT, *supra* note 16, § 868 (rev. 2d ed. 1982).

When the accounting remedy is granted, the burden of proof is allocated to the plaintiff on certain fact issues and to the defendant on others. The plaintiff must establish some substantive basis for an accounting. [22] He must also prove all gross amounts claimed from the defendant. Thus, the plaintiff must show that some property was entrusted to the defendant's care, so that there is something to account for, [23] and he must also show the amount or value of that property. [24] If profits from the use of the property are sought, [*470] the plaintiff has the burden of proof to establish the gross amount of such profits. [25] The defendant, in turn, has the burden of proof to establish expenses, losses or other deductions which it is claimed reduce the amount due the plaintiff. [26] It will be presumed that funds or property unaccounted for were misappropriated, and expenses unexplained were not incurred, with all inferences resolved against the defendant on these issues. [27] The operation of the burdens of proof can be simply illustrated. If, for example, the plaintiff establishes a fiduciary relationship entitling him to an accounting of the defendant but fails to prove the amount of funds delivered to the defendant or the defendant's gross profits, the plaintiff recovers nothing because he has failed to meet his burden of proof. Conversely, if the defendant claims expenses but fails to support these claims with adequate evidence, the plaintiff recovers the gross amount proven because the defendant has failed to meet his burden of proof. This shared burden of proof offers tactical advantages to the plaintiff, advantages which make the accounting an attractive remedial choice. These are discussed in section III.

B. *Settling Disputed Accounts: An "Accounting" Because Accounts Are Too Complex for a Jury To Understand*

---

[22]  *e.g.,*  **Hughes Tool Co. v. Meier, 489 F. Supp. 354 (D. Utah 1977);** Cafritz v. Corporation Audit Co., 60 F. Supp. 627 (D.D.C. 1945); Worley v. Worley, 388 So. 2d 502 (Ala. 1980); Donahue v. Barnes, 6 Conn. Cir. Ct. 64, 265 A.2d 87 (1969), *petition denied,*  **158 Conn. 656, 259 A.2d 139 (1969);** Couco v. Galante, 6 N.J. 128, 77 A.2d 793 (1951); Stockmen's Ins. Agency, Inc. v. Guarantee Reserve Life Ins. Co., 217 N.W.2d 455 (N.D. 1974), *cert. denied,*  **419 U.S. 869 (1974);** Dobry v. Dobry, 324 P.2d 534 (Okla. 1958); Doyle v. Jack Mathis Gen. Contracts, Inc., 253 Or. 57, 453 P.2d 174 (1969); Kohr v. Kohr, 271 Pa. Super. 321, 413 A.2d 687 (1979).

[23]  *E.g.,*  Bruce Lincoln-Mercury Inc. v. Universal C.I.T. Credit Corp., 325 F.2d 2 (3d Cir. 1963); Warren County v. Elmore, 250 Iowa 348, 93 N.W.2d 756 (1958); **Physicians & Hospitals Supply Co. v. Johnson, 231 Minn. 548, 44 N.W.2d 224 (1950).**

[24]  *E.g.,*  Hodson v. Hodson, 292 So. 2d 831 (La. App. 1974); **Physicians & Hospitals Supply Co. v. Johnson, 231 Minn. 548, 44 N.W.2d 224 (1950);** Dobry v. Dobry, 324 P.2d 534 (Okla. 1958).

[25]  *E.g.,*  Pallma v. Fox, 182 F.2d 895 (2d Cir. 1950) (L. Hand, C.J.) ("Nor does the defendants' failure to account for the 'bulk revenues' throw any burden of proof on [defendants]. . . . Upon any accounting, [the defendant] does indeed have the burden of proving any credits, if they are challenged; but the [plaintiff] has the burden of proving all 'surcharges' and in the case at bar we are concerned only with those. Therefore the plaintiffs had the burden throughout." *Id.* at 900. "Surcharge" is an old equity term meaning those items claimed by the party seeking the accounting.); Bennett v. Gardner, 133 Colo. 33, 291 P.2d 705 (1955); Thamert v. Carter, 72 Idaho 515, 245 P.2d 145 (1952); Potts v. Lux, 168 Kan. 387, 214 P.2d 277 (1950); Barar v. Phillips, 328 Mich. 267, 43 N.W.2d 846 (1950); Bednarsh v. Winshall, 2 Mich. App. 355, 139 N.W.2d 889 (1966); Barthuly v. Barthuly, 192 Neb. 610, 223 N.W.2d 429 (1974); Vinlis Constr. Co. v. Roreck, 30 A.D.2d 668, 291 N.Y.S.2d 924 (1968),  *modified,*  27 N.Y.2d 687, 262 N.E.2d 215, 314 N.Y.S.2d 8 (1970).

[26]  *E.g.,*  Mollohan v. Christy, 80 Ariz. 141, 294 P.2d 375 (1956); Craig v. Baggs, 64 Ga. App. 850, 14 S.E.2d 156 (1941); Dunn v. Baugh, 95 Idaho 236, 506 P.2d 463 (1973); Meier v. Johannsen, 242 Iowa 665, 47 N.W.2d 793 (1951); Anderson v. Clemens Mobile Homes, Inc., 214 Neb. 283, 333 N.W.2d 900 (1983); Vinlis Constr. Co. v. Roreck, 30 A.D.2d 668, 291 N.Y.S.2d 924 (1968),  *modified,*  27 N.Y.2d 687, 262 N.E.2d 215, 314 N.Y.S.2d 8 (1970); Watson v. Fulk, 19 N.C. App. 377, 198 S.E.2d 730 (1973); Simper v. Scorup, 78 Utah 71, 1 P.2d 941 (1931); Haueter v. Budlow, 256 Wis. 561, 42 N.W.2d 261 (1950).

[27]  *See*  Meier v. Johannsen, 242 Iowa 665, 47 N.W.2d 793 (1951); Vinlis Constr. Co. v. Roreck, 30 A.D.2d 668, 291 N.Y.S.2d 924 (1968),  *modified,*  27 N.Y.2d 687, 262 N.E.2d 215, 314 N.Y.S.2d 8 (1970); Simper v. Scorup, 78 Utah 71, 1 P.2d 941 (1931).

Equity took jurisdiction over cases of disputed accounts to grant "an accounting" when the accounts were complex or mutual and as a result the dispute could not be effectively settled at law.  Such a remedy remains available today, but it is not the same as the true accounting just discussed.  While the court determines the amount due and grants an order for the payment of money in these cases, the real remedy is a non-jury trial.  There is no question of accounting for the income or profits from a plaintiff's  [*471]  property as in the fiduciary cases.  Today a non-jury trial still may be obtained on either of these grounds in state courts.  The complex account cases are discussed first, and a discussion of the mutual account cases follows.

The process of accounting developed in fiduciary cases was useful for settling disputed commercial accounts.  It was a process in which an account could be examined, the various items of charge and credit resolved, and judgment entered for a single, liquidated balance due from one side or the other.  However, as shown in the introductory section, the process available in the common law action of account at law might be extraordinarily time consuming.  [28] Auditors were appointed to take the account, but, as late as the eighteenth century, each disputed item still had to be framed as a separate issue for trial by jury.  If there were numerous items there might be numerous trials, with the possibility of different juries reaching inconsistent results.  Thus, the English courts of chancery took jurisdiction over complex cases of disputed accounts to grant a more effective remedy because of procedural difficulties at law.   [29] The case was referred to a master who would go through the entire account, noting disputed items and reserving them for later resolution as a whole by the court.

The American courts, beginning in the nineteenth century, detached the accounting process from its fiduciary moorings and made it available whenever accounts were too difficult for a jury to understand.  The name of the process became the name of the remedy, and a new remedy called "accounting" was created.  The basis for relief today is different from that in the earlier English cases.  An "accounting" is now granted whenever accounts are so complex that a jury cannot understand them.  [30] As Mr. Justice Harlan explained in one early case:

The complicated nature of the accounts between the parties constitutes itself a sufficient ground for going into equity.  It would have been  [*472]  difficult, if not impossible, for a jury to unravel the numerous transactions involved in the settlements between the parties, and reach a satisfactory conclusion as to the amount of drawbacks to which Alexander & Co. were entitled on each settlement. . . .  Justice could not be done except by employing the methods of investigation peculiar to courts of equity.  [31]

---

[28]  See supra text accompanying notes 3-10.

[29]  Arnold, *A Historical Inquiry Into the Right to Trial by Jury in Complex Civil Litigation,*  128 U. PA. L. REV. 829, 847-48 (1980); Devlin, *Jury Trials of Complex Cases: English Practice at the Time of the Seventh Amendment,*  80 COLUM. L. REV. 43, 65-68 1980). These articles examine the early English accounting cases as part of an effort to answer the question of whether there is a historical basis for a general "complexity exemption" to the constitutional right to a jury trial.  Lord Devlin argues for such an exception, and Professor Arnold argues against it.  However, both agree that the English chancery courts of the eighteenth century found the remedy in the common law action of account inadequate because of the jury trial procedures, *not* because of the jurors' inability to understand the issues.

On the broader question of an exception to the constitutional right of trial by jury in complex civil litigation, the Third Circuit in an antitrust case had held there may be such an exception, In re Japanese Elec. Prods. Antitrust Litig., 631 F.2d 1069 (3d Cir. 1980), while the Ninth Circuit in a securities case has held there is no such exception, In re U.S. Fin. Sec. Litig., 609 F.2d 411 (9th Cir. 1979),  *cert. denied sub nom.*  **Grant v. Union Bank, 446 U.S. 929 (1980).** The issue has generated a substantial debate in the academic journals, much of it collected and summarized in Kirst, *The Jury's Historic Domain in Complex Cases,* 58 WASH. L. REV. 1 (1982).

[30]  The early cases are collected in 4 J. POMEROY, *supra* note 14, § 1421; 1 AM. JUR. 2D *Accounts and Accounting* § 53 (1962); 1 C.J.S. *Accounting* 18(c) (1936).

[31]  Kirby v. Lake Shore & Mich. S. Ry., 120 U.S. 130, 134 (1887).

This new "accounting" remedy is similar in appearance to the true accounting; the accounting process is used and, like the true accounting, it ends in a money award once the accounts are settled. However, in contrast to the true accounting, the remedy in cases of complex accounts is not restitutionary; that is, there is no award of a defendant's profits from the wrongful use of another's property. Complexity of accounts also becomes something of a catch-all category for equity settling cases of disputed accounts. Avoiding a multiplicity of lawsuits was once a ground for equitable relief, and sometimes cases of disputed accounts which would otherwise require multiple suits at law were heard in equity under the rubric of complex accounts. [32] The "accounting" remedy in such cases is now obsolete, since liberal joinder of both parties and claims is now generally permitted.

Subject to evolving constitutional jury trial requirements, complexity of accounts remains a basis for obtaining a non-jury trial in state courts. [33] There is no clear standard for determining when a case is too complex for a jury. The question is decided on a case-by-case basis, and the results seem to reflect differing individual views of jury competence. The courts which grant a non-jury trial tend to focus on the facts which they feel put the case beyond the jury's understanding: two hundred separate accounts each requiring numerous entries and calculations; [34] several thousand accounts; [35] forty-five separate insurance policies written by twenty-two insurance companies covering a large amount and variety of personal property; [36] or work [*473] performed on a cost-plus basis under eight different trade names for six different state institutions over a two-year period. [37] The courts which deny an "accounting," and thus deny a non-jury trial, have more of a tendency to generalize what is and what is not complex for a jury. Some of the reasons given include: numerous items or a long account alone do not a complex account make; [38] calculations which involve only simple arithmetic do not alone make for complexity; [39] and a jury trial will not be denied merely because there are complicated questions of fact involving figures difficult to carry into the mind. [40] While one might speculate that the more recent cases would show a greater willingness to let the jury decide difficult issues, no such pattern emerges.

---

[32]   Minch v. Winters, 122 Kan. 533, 253 P. 578 (1927);   Raleigh County Court v. Cottle, 81 W. Va. 469, 94 S.E. 948 (1918);   see County of Dallas v. Timberlake, 54 Ala. 403 (1875);   Dyer Bros. Golden West Iron Works v. Central Iron Works, 182 Cal. 588, 189 P. 445 (1920);   J. DAWSON & G. PALMER, CASES ON RESTITUTION 146-48 (2d ed. 1969); cf Pennefeather v. Baltimore Steam-Packet Co., 58 F. 481 (C.C.D. Md. 1893).

[33]   Comer v. Birmingham News Co., 218 Ala. 360, 118 So. 806 (1928);   McGraw, Perkins & Webber Co. v. Yates, 175 Ark. 220, 298 S.W. 1001 (1927);   Ely v. King-Richardson Co., 265 Ill. 148, 106 N.E. 619 (1914);   Metro-Goldwyn-Mayer, Inc. v. Antioch Theater, 52 Ill. App. 3d 122, 367 N.E.2d 247 (1977);   Williams v. Herring, 183 Iowa 127, 165 N.W. 342 (1917);   Lapham v. Kan. & Tex. Oil, Gas & Pipeline Co., 87 Kan. 65, 123 P. 863 (1912);   Johnson & Higgins, Inc. v. Simpson, 165 Md. 83, 166 A. 617 (1933);   Kimmerle v. Dowagiac Gas Co., 159 Mich. 34, 123 N.W. 565 (1909);   McKinley v. Durbin, 231 S.W.2d 286 (Mo. App. 1950);   State v. Cote, 95 N.H. 428, 65 A.2d 280 (1949);   Huebener v. Chinn, 186 Or. 508, 207 P.2d 1136 (1949);   Corbin v. Madison, 12 Wash. Ct. App. 318,   529 P.2d 1145 (1974);   Dankmer v. City Ice & Fuel Co., 111 W. Va. 676, 163 S.E. 430 (1932);   see   Second Mich. Coop. Hous. Assoc. v. First Mich. Coop. Hous. Assoc., 358 Mich. 252, 99 N.W.2d 665 (1959);   Stuyvesant Ins. Co. v. Keystate Ins. Agency, 420 Pa. 578, 218 A.2d 294 (1966).

[34]   Lorsch v. Gibralter Mut. Casualty Co., 127 Ill. App. 2d 350, 262 N.E.2d 313 (1970).

[35]   Comer v. Birmingham News Co., 218 Ala. 360, 118 So. 806 (1928).

[36]   Jay-Bee Realty Corp. v. Agricultural Ins. Co., 320 Ill. App. 310, 50 N.E.2d 973 (1943).

[37]   State v. Cote, 95 N.H. 428, 65 A.2d 280 (1949).

[38]   Williams v. Herring, 183 Iowa 127, 165 N.W. 342 (1917);   Huebener v. Chinn, 186 Or. 508, 207 P.2d 1136 (1949).

[39]   Schneider v. Wilmington Trust Co., 310 A.2d 897 (Del. Ch. 1973),  rev'd on other grounds,   320 A.2d 709 (Del. 1974).

[40]   Gatudy v. Acme Constr. Co., 196 Wash. 562, 83 P.2d 889 (1938).

The willingness of courts to grant a non-jury trial because of the difficulty of accounts is changing, and as a result the presence of complex accounts no longer guarantees a non-jury trial. At least in the federal courts, one may now conclude that the remedy of an "accounting" no longer exists in cases of complex accounts. Such is the clear implication of the United States Supreme Court's decision in *Dairy Queen Inc. v. Wood.* [41] The Court held that the defendant was constitutionally entitled to a jury trial of the plaintiff's claim for an accounting for the wrongful use of a trademark, sought as incidental to an injunction. Heavy reliance was placed on Rule 53(b) of the Federal Rules of Civil Procedure, which provides for the use of a master to aid the jury in actions where the issues are complicated. [42] The master's findings in such cases are admissible as evidence and may be read to the jury, but the ultimate determination of the issues remains with the jury. [43] The Court reasoned that with the master to aid a jury, "it will indeed be a rare case" in which the issues are too complicated for jury trial. [44] Subsequent lower court decisions have found few, if any, such cases. [45] The **[*474]** impact of the *Dairy Queen* reasoning in state courts is unclear. About half of the states have a provision identical or nearly identical to Rule 53 for dealing with complex issues without denying a jury trial. [46] To the extent that state courts follow the federal approach to jury trial questions, [47] they may reach the same result when confronted with questions of complex accounts.

*C. Settling Disputed Accounts: An "Accounting" Because Accounts Are Mutual*

---

[41] 369 U.S. 469 (1962).

[42] FED. R. CIV. P. 53(b) provides as follows:

A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition required it.

[43] FED. R. CIV. P. 53(e)(3) provides as follows:

In an action to be tried by a jury the master shall not be directed to report the evidence. His findings upon the issues submitted to him are admissible as evidence of the matters found and may be read to the jury, subject to the ruling of the court upon any objections in point of law which may be made to the report.

[44] 369 U.S. at 478.

[45] The cases are collected in 5 J. MOORE, J. LUCAS & J. WICKER, MOORE'S FEDERAL PRACTICE § 38.25 (2d ed. 1985) [hereinafter cited as MOORE'S FEDERAL PRACTICE]; 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2310 (1971).

[46] There are 22 states that follow FED. R. CIV. P. 53 and provide for jury trial in complex cases. In addition, four other states provide for jury trial in cases where the remedy of an accounting is sought. The states following the pattern of Federal Rule 53 are: Alabama, ALA. R. CIV. P. 53; Arizona, ARIZ. R. CIV. P. 53; Colorado, COLO. R. CIV. P. 53; District of Columbia, D.C. CODE ANN. § 11-946 (1970); Idaho, IDAHO R. CIV. P. 53; **Indiana**, IND. RULES TRIAL P. 53; Kansas, KAN. STAT. ANN. § 60-253 (1964); Maine, ME. R. CIV. P. 53; Massachusetts, MASS. R. CIV. P. 53; Minnesota, MINN. R. CIV. P. 53; Missouri, MO. R. CIV. P. 68; Montanna, MONT. R. CIV. P. 53; Nevada, NEV. R. CIV. P. 53; New Jersey, N.J. R. CIV. P. 4:41; New Mexico, N.M. R. CIV. P. 53; North Dakota, N.D. R. CIV. P. 53; Rhode Island, R.I. R. CIV. P. 53; South Dakota, S.D. COMP. LAWS ANN. § 15-6-53 (1966); Utah, UTAH R. CIV. P. 53; Vermont, VT. R. CIV. P. 53; Wisconsin, WIS. STAT. ANN. § 805.06 (West 1976); Wyoming, WYO. R. CIV. P. 53.

The four states which provide for jury trial in accounting cases, though not in the manner of Federal Rule 53, are: North Carolina, N.C. GEN. STAT. § 1A-1, Rule 53 (1983); Pennsylvania, 42 PA. CONS. STAT. ANN. § 1513 (Purdon 1975) (advisory jury can be used in equity cases); South Carolina, S.C. CODE ANN. §§ 15-31-10, 15-31-30 (Law. Co-op. 1976); West Virginia, W. VA. CODE §§ 56-7-1, 56-7-10 (1966).

[47] For an analysis of the constitutional right to jury trial and the different approaches adopted by federal and state courts, see F. JAMES & G. HAZARD, CIVIL PROCEDURE §§ 8.1-8.11 (2d ed. 1977).

Equity also took jurisdiction over cases of disputed accounts to grant "an accounting" when there were mutual accounts between the parties.  Accounts are mutual when each of the parties has an account with the other and there are mutual demands, which is to be distinguished from the case where there is one account with both debits and credits.   [48] Paralleling complex accounts, the mutual account is another situation where the process of accounting is used to resolve disputed accounts which could not be effectively settled at law.  Here, too, the name of the process becomes the name of the remedy, and a new kind of "accounting" is created.  Functionally, the real relief is a non-jury trial, granted whenever a court feels the dispute is beyond the understanding of jurors.

Mutual accounts present a problem of complex accounts, in the sense that the process of offsetting the respective demands is intricate and difficult.  As in cases of complex accounts, the "accounting" remedy here utilizes the accounting process to settle these mutual demands and to award the victor a money judgment.  No fiduciary relationship need be shown, nor is there any restitutionary award of a defendant's profits.  The test applied by the [*475] American courts to determine whether to grant an "accounting" is the same in both situations.  When mutual accounts are in dispute, an **equitable** "**accounting**" is granted if the issues are thought to be too difficult for a jury to understand.   [49] The standard again is subjective, and the decisions again reflect differing views of confidence in the jury.  One problem particular to the mutual account cases is that occasionally a court will get caught up in discussing mutual accounts and lose sight of the underlying issue of whether a jury can follow the matter.  For example, this seems to have occurred in one case involving a dispute over monies due under a construction contract.   [50] The plaintiff-contractor sued for the balance of the contract price, and the defendant-owner counterclaimed for sums due him under the contract.  The court held there was no right to a jury trial because the case was properly one for an "accounting," but the court appears to have been overly concerned with the mutuality of the accounts.  The case as described, involving only the set-off of two claims, seems easily understood by a jury:

Looking to all of the allegations of these pleadings, we cannot escape the conclusion that they raise issues determinable as for an accounting by a court of equity.  These items are numerous and complicated and consist of mutual demands made by the parties, each against the other. . . .  That these items claimed by each of the parties against the other are items of mutual account, in a legal sense, seems plain when we remember that, by the very terms of the contract above noticed, it was manifestly contemplated that such claims, so far as they are just and valid, should be regarded as mutual; that is, that they should be offset in favor of each party against the other for purpose of determining any balance due from either party to the other.   [51]

Overall, the use of the "accounting" remedy to settle mutual accounts is no longer very significant.  While mutuality of accounts is frequently discussed,   [52] there are relatively few cases where an "accounting" is actually sought on this ground.   [53] From a reading of the decisions, it seems that the courts are more receptive to the argument that a

---

[48]   Goffe & Clarkener v. Lyons Milling Co., 26 F.2d 801 (D. Kan. 1928);   Wright v. Saddler, 255 Ala. 101, 50 So. 2d 235 (1951);   Lapham v. Kan. & Tex. Oil, Gas & Pipeline Co., 87 Kan. 65, 123 P. 863 (1912); 4 J. POMEROY, *supra* note 14, § 1421.

[49]   Goffe & Clarkener v. Lyons Milling Co., 26 F.2d 801 (D. Kan. 1928);   Wright v. Saddler, 255 Ala. 101, 50 So. 2d 235 (19541);   Schneider v. Wilmington Trust Co., 310 A.2d 897 (Del. Ch. 1973),  *rev'd on other grounds,*  320 A.2d 709 (Del. 1974);   Richman v. Richman, 190 Iowa 462, 180 N.W. 182 (1920);   Gresty v. Briggs, 127 Kan. 151, 272 P. 178 (1928);   Lapham v. Kan. & Tex. Oil, Gas & Pipeline Co., 87 Kan. 65, 123 P. 863 (1912);   Garey v. City of Pasco, 89 Wash. 382, 154 P. 433 (1916);   *see*  Dunigan v. First Nat'l Bank, 118 Miss. 809, 80 So. 276 (1919).

[50]   Garey v. City of Pasco, 89 Wash. 382, 154 P. 433 (1916).

[51]   Id. at 385, 154 P. at 434.

[52]  *E.g.,*   Williams v. Finlaw, Mueller & Co., 292 Pa. 244, 141 A. 47 (1928).

[53]  *See* cases cited *supra* note 49.

non-jury trial should be granted on the ground that the accounts are complex, [54] perhaps because it **[*476]** goes more directly to the underlying issue.  In addition to the paucity of decisions, this remedy is now obsolete in the federal courts.  An "accounting" to settle mutual accounts is functionally indistinguishable from an "accounting" to settle complex accounts, where a jury trial is now constitutionally required.  [55] Since the real remedy in mutual account is a non-jury trial, one must conclude that this "accounting" remedy no longer exists in the federal courts.

D.  Settling Disputed Accounts: An "Accounting" To Order Discovery

Equity also granted the remedy of an "accounting" when one of the parties to an action at law sought discovery in a case of disputed accounts.  This is but one of many situations where equity took jurisdiction to order discovery in the days before the procedure at law was reformed to provide for pretrial disclosure.  [56] The court would order the disclosure sought and then usually dismiss the case.  [57] Use of the term accounting here is coincidental, and describes a class of cases where discovery would be ordered.  It would be preferable, though more cumbersome, to refer to "the granting of discovery in cases of disputed accounts."

One would imagine this basis for an accounting to be obsolete today, with the need for relief gone.  Even in those jurisdictions retaining separate law and equity courts, the same discovery is usually available in both.  [58] Yet, some confusion remains.  Occasionally a party will seek an "accounting" on the ground that he is unable to determine an amount due where the opponent has the relevant books and records.  The courts have usually been quick to point out that discovery is available and deny an accounting for that purpose only.  [59]

This section has shown that the modern accounting remedy is actually several different remedies collected under the same name.  The true accounting is the restitutionary remedy which awards to the plaintiff the defendant's profits from the use of the plaintiff's property.  The "accounting" in cases of complex or mutual accounts is a device to obtain a non-jury trial, now obsolete in federal courts.  The "accounting" to obtain discovery, now also obsolete, had nothing to do with accounting and all to do with discovery.  The sections that follow focus on the true accounting remedy, consider **[*477]** its practical advantages, and then suggest that the remedy be extended to other situations where theoretically it should also be available.

III.  PRACTICAL ADVANTAGES OF THE ACCOUNTING: SHARED BURDEN OF PROOF

---

[54]   Goffe & Clarkener v. Lyons Milling Co., 26 F.2d 801 (D. Kan. 1928) (accounts not mutual but too complex for a jury); Farr v. Southern Supply Co., 253 Ala. 281, 44 So. 2d 247 (1950) (accounts mutual and complex; either ground supports non-jury trial); Richman v. Richman, 190 Iowa 462, 180 N.W. 182 (1920) (accounts must be both mutual and complex for equity to take the case); Lapham v. Kan. & Tex. Oil, Gas & Pipeline Co., 87 Kan. 65, 123 P. 863 (1912) (account not mutual but it is a long (e.g., complex) account; no right to jury trial).

[55]   See supra text accompanying notes 41-45.

[56]   1 J. POMEROY, supra note 14, §§ 191-200.

[57]   Id. §§ 223-30.

[58]   E.g., DEL. CHANCERY RULES 26-37 (patterned on FED. R. CIV. P. 26-37).

[59]   Arnold Productions, Inc. v. Favorite Films Corp., 298 F.2d 540 (2d Cir. 1961); Kirksey Motors, Inc. v. General Acceptance Corp., 276 Ala. 270, 161 So. 2d 475 (1964); Burr v. State Bank, 344 Ill. App. 332, 100 N.E.2d 773 (1951); Terner v. Glickstein & Terner, Inc., 283 N.Y. 299, 28 N.E.2d 846 (1940); Huebener v. Chinn, 186 Or. 508, 207 P.2d 1136 (1949); see Wheeler v. Benson-Taylor, Inc., 394 P.2d 523 (Okla. 1964); Winslow v. Winslow, 255 Wis. 347, 38 N.W.2d 430 (1949).  Contra Matusow Mfg. Co. v. Weinraub, 81 Pa. D. & C. 96 (1952).

The true accounting remedy, properly understood, offers tactical advantages to the plaintiff. One advantage for the state court plaintiff is the opportunity for a non-jury trial. [60] This, however, is relatively minor compared to the tactical benefit offered by the shared burden of proof. The prior discussion of the true accounting remedy in section II(A) shows that the burdens of proof are allocated in a way that relieves the plaintiff of the need to prove the precise, net amount claimed. [61] The plaintiff must establish the right to an accounting and prove the gross amount claimed; the defendant must then prove all offsetting expenses, losses and other deductions that he claims. The significance of this depends upon the purpose for which the accounting is sought and the extent to which it is difficult or impossible to establish the various offsets claimed. Often, the plaintiff recovers where otherwise he would lose.

The basic advantage of the shared burden of proof is that the plaintiff gets judgment for the gross amount proven if the defendant fails or refuses **[*478]** to account. There are two different situations in which the plaintiff would seek an accounting, and the degree of advantage that can be obtained depends on the kind of case. Sometimes the plaintiff wants to compel the defendant to account for the principal sum received, [62] and sometimes the plaintiff wants to compel an accounting for profits made from the use of his property. [63] The advantage of the remedy to the plaintiff varies inversely with the plaintiff's burden of proof, decreasing as his burden increases. While the plaintiff's burden generally is greater in the profits cases, and accordingly there is a greater risk of recovering nothing, still there is a significant advantage to the remedy in such cases. It is often harder to establish deductions and offsets than the gross profits themselves, and the defendant bears the risk that this will not be possible. Thus, once gross profits are established, the plaintiff is assured of some recovery.

Two examples will illustrate these points. Suppose *P* delivers eight million dollars to an agent, *X,* to acquire mineral leases. *X* makes the purchase, but *P* suspects that he spent only four million and pocketed the balance. *P* may

---

[60] Framing a case as one of an **equitable accounting** permits a plaintiff to select a non-jury trial in states using a historical test to decide when the constitutional right to jury trial is preserved. However, in the federal courts, the decision in Dairy Queen, Inc. v. Wood, 369 U.S. 469 (1962), has all but eliminated the ability to use an accounting to obtain a non-jury trial. The impact of that decision on the "accounting" to settle complex or mutual accounts is discussed above. *See supra* text accompanying notes 41-45. Even when the true accounting remedy is sought, it is only in very limited circumstances that a jury trial may be avoided if the defendant wishes one. If there is no issue of fact in common with a legal claim, a jury trial still can be avoided when an accounting is sought against a trustee, a mortgagee, or in other cases where the obligation to **account** is of **equitable**, as distinguished from legal, origin. Local No. 92, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers v. Norris, 383 F.2d 735 (5th Cir. 1967) (trustee); Bonnell v. Commonwealth Realty Trust, 63 F.R.D. 616 (E.D. Pa. 1974), *aff'd mem.,* 511 F.2d 1392 (3d Cir. 1975) (action against mortgagee in possession to account for rents received); Coca-Cola Co. v. Cahill, 330 F. Supp. 354 (W.D. Okla. 1971) (injunction and accounting for trademark infringement and unfair competition); Coca-Cola Co. v. Wright, 55 F.R.D. 11 (W.D. Tenn. 1971) (same); Nedd v. Thomas, 316 F. Supp. 74 (M.D. Pa. 1970) (trustee); *accord* 5 MOORE'S FEDERAL PRACTICE, *supra* note 45, § 38.25; 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2310 (1971). The authors of the first cited treatise assert that there is no right to a jury trial if the case or issue for an accounting is one formerly within the exclusive jurisdiction of equity "or is an incident to a case or issue over which there is equity jurisdiction." 5 MOORE'S FEDERAL PRACTICE, *supra* note 45, § 38.25, at 38-208. This quoted assertion seems wrong in light of an express statement to the contrary in *Dairy Queen:*

At the outset, we may dispose of one of the grounds upon which the trial court acted in striking the demand for trial by jury -- that based upon the view that the right to trial by jury may be lost as to legal issues where those issues are characterized as "incidental" to equitable issues -- for our previous decisions make it plain that no such rule may be applied in the federal courts.

369 U.S. at 470.

[61] *See supra* text accompanying notes 22-27.

[62] *E.g.,* **Hughes Tool Co. v. Meier, 489 F. Supp. 354 (D. Utah 1977);** Cafritz v. Corporate Audit Co., 60 F. Supp. 627 (D.D.C. 1945); and cases cited *supra,* notes 22-23.

[63] *See, e.g.,* cases cited *supra* note 25.

compel an accounting for the principal sum delivered to *X*. Proof of this amount should be relatively easy, and *P* gets judgment for the difference between eight million and the value of the leases purchased where *X* cannot, or will not, show that the full amount was spent or otherwise used for the plaintiff's purpose. [64] In contrast, when the plaintiff seeks an accounting to recover profits made from the use of his property, his burden of proof is greater. He must prove the defendant's gross profits, and what he cannot prove, he cannot recover. Still, the accounting offers a significant advantage because it relieves the plaintiff of the need to prove net profits.

Suppose *A* and *B* agree to farm a small tract of land, *A* to supply the land and capital and *B* to supply the labor, profits and losses to be shared equally. After the growing season ends, *B* gives *A* the sum of $ 1,000 as his share, offering no explanation of expenses. *A* may compel an accounting for profits; upon proving that the crop was sold for $ 6,000, *A* get judgment for his share, one-half that amount, where *B* cannot or will not prove the claimed expenses. [65] Obviously, this is a simple example, but the same advantage obtains in complicated cases as well. Often there are intricate questions of allocation of profits between those made from the plaintiff's property and those made from other sources, as well as intricate questions of appropriate deductions from gross profits. When an accurate calculation of net **[*479]** profits is difficult or impossible, the party with the burden of proof -- the defendant who must account -- loses. [66]

The operation of the accounting when the defendant fails to establish expenses and other deductions from gross profits is explicitly spelled out in the copyright and trademark statutes, offering further illustration of the advantage of the shared burden of proof. The Copyright Act of 1976 allows recovery of the infringer's profits, carrying forward an earlier codification of the accounting remedy in such cases. [67] The statute provides that "[i]n establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." [68] This preserves for the copyright plaintiff the advantages of the accounting. [69] The federal trademark law, which also allows recovery of the infringer's profits, is similarly explicit: "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or

---

[64] **Hughes Tool Co. v. Meier, 489 F. Supp. 354 (D. Utah 1977).**

[65] Watson v. Fulk, 19 N.C. App. 377, 198 S.E.2d 730 (1973).

[66] *E.g.,* Maltina Corp. v. Cawy Bottling Co., 205 U.S.P.Q. 489 (5th Cir. 1980); Lottie Joplin Thomas Trust v. Crown Publishers, Inc., 199 U.S.P.Q. 449 (2d Cir. 1978). *Maltina* was an action for infringement of the plaintiff's trademark for the beverage malta, "a dark, non-alcoholic carbonated beverage brewed similar to beer." 205 U.S.P.Q. at 490. The court held the plaintiff was entitled to the defendant's gross profits when defendant failed to prove claimed expenses or to prove that overhead expenses were increased by the infringement. *Lottie Joplin* was a copyright infringement action against a record company which, after having been refused a license, nonetheless included three Scott Joplin compositions in an album "Scott Joplin -- His Complete Works." The infringing material filled one side of a five record set. The court rejected the defendant's bald assertion that the plaintiff was entitled to only ten percent of the profits: "Absent evidence by defendant to dispute the contributions of these compositions to the marketability of the album, we hold that the award of one-half of the profits from the *complete* works was not unreasonable." 199 U.S.P.Q. at 453 (emphasis original). A good general discussion of the issues appears in D. DOBBS, REMEDIES 253-54, 273-77 (1973). These problems are usually considered in the context of specific wrongs where measurement of the defendant's profits becomes an issue. *See* id. at 450-56 (copyright infringement), 480-86 (trademark infringement); 1 G. PALMER, THE LAW OF RESTITUTION § 2.13 (apportionment generally), § 2.7 (patent, copyright and trademark infringement), § 2.8(b) (misappropriation of trade secrets) (1978).

[67] 1 G. PALMER, *supra* note 66, § 2.7(a).

[68] 17 U.S.C. § 504(b) (1982).

[69] *See generally* M. NIMMER, NIMMER ON COPYRIGHT § 14.01[A] (1985).

deduction claimed." [70] Here, too, the plaintiff obtains the advantages of the shared burden of proof of the accounting remedy. [71]

Looking to the reasons for which burdens of proof are allocated, and looking back to the theory of the true accounting remedy, a strong argument can be made that the entire burden of proof should be on the defendant. That is, the defendant should bear the burden of proving gross as well as net profits. This assertion is borne out by the two most common reasons for allocating the burden of proof on a particular issue: to place it upon [*480] the party with readier access to the information; and to place it in such a way as to further some policy of substantive law. [72] Both considerations point to the defendant. He is the one who has earned the profit and has the best information. He is also a wrongdoer who should be denied that profit in order to prevent unjust enrichment. [73] The present remedy does not fully accomplish this, particularly where the plaintiff seeks profits from the use of his property. The plaintiff's recovery is currently minimized where the amount of gross profits is uncertain, since all inferences are resolved against the party with the burden of proof. Thus the defendant keeps what the plaintiff cannot prove. This seems unwise as a matter of policy since it is the wrongdoer, and not the victim, who should bear the risk when there are questions about the fruits of the wrong. [74] With the modification proposed, the defendant has to prove both gross profits and all deductions claimed. If there is uncertainty as to the amount of gross profits the doubts are resolved against the defendant, and the plaintiff gets judgment for the maximum amount fairly shown by the evidence.

Occasionally, the courts seem to suggest such a rule without saying so directly. It is sometimes asserted that the burden of proof shifts to the defendant once the plaintiff establishes the right to an accounting. [75] While this is too broad a statement, as shown above, it may reflect the thought that the defendant should have to prove all profits. In addition, there is language in some opinions stating or suggesting that the accounting is only a form of discovery,

---

[70] Trademark (Lanham) Act of 1946 § 35, 15 U.S.C. § 1117 (1982).

[71] See generally 4 R. CALLMAN, THE LAW OF UNFAIR COMPETITION TRADEMARKS AND MONOPOLIES § 22.49 (4th ed. 1983).

[72] F. JAMES & G. HAZARD, CIVIL PROCEDURE 249-53 (2d ed. 1977); 9 J. WIGMORE, EVIDENCE § 2486 (1940).

[73] One must, of course, keep in mind that the plaintiff first has to establish some wrongful conduct by the defendant which entitles the plaintiff to a restitutionary remedy. See, e.g., cases cited supra note 22; 1 G. PALMER, supra note 66, §§ 2.1, at 50, 2.12, at 157-59, 164-65; **RESTATEMENT OF RESTITUTION §§ 151** comment f, 157 (1937). A separate issue in the law of restitution is whether restitution of profits should also be granted against the "innocent" wrongdoer, that is, one who commits an unintended wrong. The authorities generally support a mixed approach, keyed to the nature and degree of the wrong. E.g., D. DOBBS, HANDBOOK OF THE LAW OF REMEDIES § 4.5 (1973); 1 G. PALMER, supra note 66, §§ 2.12, at 165-66, 2.14(b); **RESTATEMENT OF RESTITUTION §§ 151** comment f, 154, 155, 202 comment c, 203 (1937).

[74] See Hamilton-Brown Shoe Co. v. Wolf Bros. & Co., 240 U.S. 251 (1916), where the court in a common law trademark infringement action held that the burden of proof was on the defendant to show an apportionment of profits. The court noted that the allocation is often impossible, and the wrongdoer should not profit at the expense of the victim. The point is one of broader application and logically suggests the burden of proving all profits should be on the defendant.

[75] E.g., Rosenak v. Poller, 290 F.2d 748, 750 (D.C. Cir. 1961) ("[the] burden cannot rest upon plaintiff, but must shift to defendant once facts giving rise to a duty to account have been alleged and admitted"); Dunn v. Baugh, 95 Idaho 236, 506 P.2d 463 (1973); see Randolph Foods, Inc. v. McLaughlin, 253 Iowa 1258, 115 N.W.2d 868 (1962); Lile, supra note 5, at 189 (The author characterizes the accounting remedy as a "true bill for an account" when sought in fiduciary cases, and distinguishes it from other uses of the remedy in this way: "There are several striking contrasts between other bills for account and the true bill for an account. For instance, in the former the burden is ordinarily on the plaintiff to establish the amount due, whereas in the latter the burden is uniformly on the defendant to present the account, and to sustain its correctness by proper evidence." No authority is cited for this proposition.).

and that it is available whenever the plaintiff lacks **[*481]** information about the amount due him. [76] In one sense, this confuses the granting of discovery in cases of disputed accounts, now obsolete, with the accounting for profits made from another's property. Yet there are elements of compulsory disclosure when the true accounting is ordered, [77] since the defendant must prove his claimed deductions or else suffer judgment in the gross amount proved by the plaintiff. These cases may also reflect the thought that this should be taken one step further and the defendant be required to prove all profits.

A practical obstacle might be noted in response to the suggestion that the defendant be required to prove all profits. What if the defendant fails or refuses to account? There is no evidence of the amount due, so there can be no judgment for the plaintiff. This is not the problem it would seem to be, for two reasons. First, since the **accounting** is an **equitable** remedy, the contempt power may be used to enforce the order to account. While such power is inherent in the court's authority, today many jurisdictions have statutes that expressly authorize the use of contempt to compel an accounting. [78] This should be quite sufficient, for the court may order the defendant imprisoned for an indefinite term until he complies with the order to account. Alternatively, if contempt enforcement is thought too harsh under the circumstances, a receiver may be appointed to take possession of the defendant's books and records and render the accounting. [79] Second, in the unlikely event the defendant chooses prison over accounting, there is nothing to prevent the plaintiff from proving gross profits as he must do under the current remedy. And, the plaintiff might so choose in any event if this is quicker and less costly than bringing a contempt proceeding.

This section has examined a practical aspect of the accounting, noting its advantages for maximizing the plaintiff's recovery. The suggestion that the allocation of the burdens of proof be modified prompts consideration of the theory underlying the remedy, and that subject is the focus of the next section.

**[*482]** IV. THEORETICAL BASIS FOR EXTENDING THE SCOPE OF THE ACCOUNTING

This final section complements the preceding practical discussion of the value of the traditional remedy of accounting by exploring from a more theoretical perspective its extension into other areas of law. Traditionally, the rule was that an accounting was limited to fiduciary cases and cases where the remedy was sought as incidental to other equitable relief such as an injunction, [80] recission, [81] or specific performance. [82] With the merger of courts

---

[76] Rosenak v. Poller, 290 F.2d 748, 750 (D.C. Cir. 1961); Remme v. Herzog, 222 Cal. App. 2d 863, 865-66, 35 Cal. Rptr. 586, 588 (1964); Brea v. McGlashan, 3 Cal. App. 2d 454, 460, 39 P.2d 877, 880 (1935); see Anderson v. Clemens Mobile Homes, Inc., 214 Neb. 283, 288-89, 333 N.W.2d 900, 904 (1983); Bartoi v. Bartoi, 20 Misc. 2d 262, 266-67, 190 N.Y.S.2d 257, 261 (N.Y. Sup. Ct. 1959).

[77] One court sustained a claim of fifth amendment privilege against self-incrimination raised by a defendant ordered to account, drawing an analogy to cases where discovery is sought. **Hughes Tool Co. v. Meier, 489 F. Supp. 354, 372-73 (D. Utah 1977).**

[78] *E.g.,* FED. R. CIV. P. 53(d)(2) (master to whom case is referred to take account may punish "as for contempt" failure of witness to appear or give evidence); CONN. GEN. STAT. ANN. § 52-402(c) (West 1982) (If the accounting party refuses to be sworn or answer questions, "the auditors may commit him to a community correction center, there to continue until he consents to be sworn and answer all proper interrogatories."). Money orders directing the defendant to pay the amount due may also be enforceable by contempt in lieu of execution. *See, e.g.,* R. C. Gluck & Co. v. Tankel, 12 A.D.2d 339, 211 N.Y.S.2d 602 (1961).

[79] O'Connor v. O'Connor, 320 S.W.2d 384 (Tex. Civ. App. 1959).

[80] Edwards v. Lee's Adm'r, 265 Ky. 418, 96 S.W.2d 1028 (1936) (injunction and accounting for trespass to real property); A. Hollander & Son, Inc. v. Imperial Fur Blending Corp., 2 N.J. 235, 66 A.2d 319 (1949) (injunction and accounting for profits for misappropriation of trade secret); Schechter v. Friedman, 141 N.J. Eq. 318, 57 A.2d 251 (1948) (injunction and accounting for tortious interference with contractual relations).

of law and equity, the traditional procedural constraints limiting the accounting to fiduciary cases no longer apply. It seems rather clear that the rule was a matter of jurisdictional accommodation between equity and law in a dual system that has for the most part vanished today. [83] Since there is no functional distinction between fiduciary and other cases where the defendant has profited from the wrongful use of the plaintiff's property, the accounting should be extended accordingly.

Nonetheless, the courts have occasionally suggested that the old rule limiting the accounting still applies in a few cases of copyright infringement, [84] **[*483]** trademark infringement, [85] and fraud. [86] In one line of New York cases, the rule seems to have been applied although it is never mentioned: it is generally held that an accounting is unavailable absent a fiduciary relationship where a contract of sale, licensing agreement or employment contract provides for payment as a percentage of gross or net profits. [87] Thus, for example, an accounting cannot be had by the patent holder who sells for a percentage of net profits; [88] or by the National Committee on the Observance of Mother's Day, licensing its prestige and experience for a percentage of sales; [89] or by the commission sales agent. [90] These decisions are technically correct if the theory of the accounting, as carried down from the common law action of account, is strictly applied. In none of these cases does the plaintiff have technical legal title to any property in the defendant's possession; thus, under traditional principles, no accounting is available. In identical

---

[81] Reiter-Foster Oil Corp. v. Bennett, 104 F. Supp. 951 (S.D.N.Y. 1951) (rescission of contract for purchase of land); Lang v. Giraudo, 311 Mass. 132, 40 N.E.2d 707 (1942) (rescission of contract for sale of land); Brooks v. Conston, 364 Pa. 256, 72 A.2d 75 (1950) (rescission of sale of business).

[82] Bailly v. Betti, 241 N.Y. 22, 148 N.E. 776 (1925) (agreement to perform as the Flonzaley Quartet).

[83] United States v. Bitter Root Dev. Co., 200 U.S. 451 (1906); Root v. Lake Shore & Mich. S. Ry. Co., 105 U.S. 189 (1882). In the *Bitter Root* case, the Court denied an accounting to recover for timber wrongfully cut and taken from government lands. There was no allegation of a fiduciary relationship nor that specific timber or proceeds were traceable to the defendant. The Court held that equity could not compel an accounting for the wrongdoer's profits from a tort, the appropriate remedy being an action at law for damages. In *Root,* a bill for an accounting was brought to recover the profits of a patent infringer. No injunction was sought because the patent had expired. The Court held that the remedy was unavailable: "But it is nowhere said that the patentee's right to an accounting is based upon the idea that there is a fiduciary relationship created between him and the wrong-doer by the fact of the infringement, thus conferring jurisdiction on a court of equity to administer the trust and to compel the trustee to account. That would be a *reductio ad absurdum,* and, if accepted, would extend the jurisdiction of equity to every case of tort, where the wrong-doer had realized a pecuniary profit from his wrong." 105 U.S. at 214.

[84] F.W. Woolworth Co. v. Contemporary Arts, Inc., 193 F.2d 162 (1st Cir. 1951), *aff'd,* 344 U.S. 228 (1952).

[85] Tubular Heating & Ventilating Co. v. Mt. Vernon Furnace & Mfg. Co., 2 F.2d 982 (E.D. Ill. 1924).

[86] Reynolds v. Whitin Mach. Works, 167 F.2d 78 (4th Cir. 1948), *cert. denied,* **334 U.S. 844 (1948);** Merchants Importing, Inc. v. Kuhn & Schneider, Inc., 27 A.D.2d 709, 276 N.Y.S.2d 923 (1967); Richman v. Security Sav. & Loan Assoc., 57 Wis 2d 358, 204 N.W.2d 511 (1973). Earlier cases are collected in Annot., 53 A.L.R. 815 (1928).

[87] Reichert v. N. MacFarland Builders, Inc., 85 A.D.2d 767, 445 N.Y.S.2d 264 (1981) (employment agreement); Moscatelli v. Nordstrom, 40 A.D.2d 903, 337 N.Y.S.2d 575 (1972) (employment agreement); Freeman v. Miller, 157 A.D. 715, 142 N.Y.S. 797 (1913) (employment agreement); Willier v. Dauber, 12 Misc. 2d 974, 171 N.Y.S.2d 615 (N.Y. Sup. Ct. 1958) (patent licensing agreement).

[88] Sinkwich v. E.F. Drew & Co., 2 A.D.2d 788, 153 N.Y.S.2d 648 (1956).

[89] National Comm. on the Observance of Mother's Day, Inc. v. Kirby, Block & Co., 17 A.D.2d 390, 234 N.Y.S.2d 432 (1962).

[90] Sanshoe Trading Corp. v. Mitsubishi Int'l Corp., 122 Misc. 2d 585, 470 N.Y.S.2d 991 (N.Y. Sup. Ct.), *aff'd,* 104 A.D.2d 337, 479 N.Y.S.2d 149 (1984).

circumstances, however, if the dealings between the parties establish a fiduciary relationship, a salesman [91] or a comic strip artist [92] can compel his employer to account. Functionally, the right to an accounting should not turn on the presence or absence of a fiduciary relationship which was once a jurisdictional prerequisite in now obsolete courts of equity.

Professor Palmer has observed that courts often grant restitution of the wrongdoer's profits today without addressing the law-equity distinction, [93] and this modern view should be uniformly, and expressly, adopted. If any further demonstration of the wisdom of extending the accounting is necessary, the extension of the constructive trust remedy provides an analogy for a similar extension of the accounting remedy. The constructive trust and the **accounting** are both **equitable** restitutionary remedies originally developed in cases against fiduciaries. [94] The constructive trust has been broadened beyond its fiduciary origins, and is now recognized as a general remedy for the prevention of unjust enrichment. As such, it is available against the fiduciary and non-fiduciary alike when the plaintiff seeks specific restitution of the identifiable proceeds of his misappropriated property. [95] The accounting should **[*484]** be recognized in an analogous way as another general remedy for prevention of unjust enrichment, available when the plaintiff seeks a money judgement for the defendant's profits from the wrongful use of the plaintiff's property.

A well-known New York decision implicitly recognized this approach in granting an accounting against a non-fiduciary. In *Fur & Wool Trading Co. v. Fox,* [96] the New York Court of Appeals held that an accounting was available where a tortfeasor wrongfully profited from the use of another's property. Goods taken from the plaintiff were received and sold at a profit by the defendant, who was aware of the theft. The plaintiff did not know the sale price, and made no allegation that it could trace its property into any identifiable proceeds in the defendant's hands. An accounting was sought to compel the defendant to reveal and pay over the proceeds of the sale. The court held that the accounting was available, notwithstanding the adequacy of legal remedies and notwithstanding the availability of discovery to determine the sum received. The court reasoned that the defendant still could be deemed a constructive trustee because this was necessary to protect the rights of the owner. As such, the defendant was obligated to account:

The method by which equity proceeds in all these cases is to turn the wrongdoer into a trustee. If it may do so for the purpose of subjecting identified funds to the claim of the defrauded party, I do not see why it should not pursue the same method whenever it is necessary to protect the rights of the original owner. In the case of an actual trustee the cestui que trust may not only reclaim the trust property if he is able to trace it, but, failing to trace it, he is entitled to an accounting and personal judgement against the trustee. [97]

In short, the reference to constructive trust may be read as suggesting an analogy: just as the court will declare a wrongdoer to be fictitious, "constructive" trustee so, too, the court will impose the obligation to account on a

---

[91] Domay Constr. Corp. v. Doric Co., 221 Md. 145, 156 A.2d 632 (1960); Stuyvesant Ins. Co. v. Keystate Ins. Agency, Inc., 420 Pa. 578, 218 A.2d 294 (1966).

[92] Boyle v. Wegman, 25 Misc. 2d 193, 200 N.Y.S.2d 82 (N.Y. Supp. Ct. 1960).

[93] 1 G. PALMER, *supra* note 66, § 2.12, at 165.

[94] The fiduciary origins of the constructive trust are discussed in 1 G. PALMER, *supra* note 66, § 1.3, at 11-12. For a corresponding discussion of the fiduciary origins of the accounting, see *supra* text accompanying notes 4-13. *See also* 1 G. PALMER, *supra* note 66, § 1.5, at 24-27.

[95] 1 G. PALMER, *supra* note 66, § 1.3, at 11-13.

[96] 245 N.Y. 215, 156 N.E. 670 (1927).

[97] Id. at 219, 156 N.E. at 671 (quoting Lightfoot v. Davis, 198 N.Y. 261, 91 N.E. 582 (1910)).

wrongdoer when it is appropriate to order monetary restitution of profits from the wrongful use of property. Admittedly, the court's statement that the defendant may be declared a constructive trustee is ambiguous, insofar as some identifiable fund or asset has always been thought essential for a constructive trust. [98] But, interpreted in another way, the decision is useful in suggesting that the accounting be used generally in non-fiduciary cases. In the interest of uniformity and consistency, the accounting remedy should be available whenever property is wrongfully obtained, by a fiduciary or a non-fiduciary, if the circumstances make it unfair to permit retention of profits made from the wrong.

 [*485]  CONCLUSION

The accounting remedy has thus been surrounded by a certain amount of semantic confusion as the name of the remedy and the process of accounting became synonymous. It is shown that there are several different remedies called an "accounting," similar only in that all end in an order or judgment for the payment of money. The true accounting yields a restitutionary award of a defendant's profits; the "accounting" to settle complex or mutual accounts functionally grants a non-jury trial; and a now obsolete remedy also called an "accounting" compelled discovery in cases of disputed accounts. The true accounting remedy, understood in historical context, offers the practical advantage of the shared burden of proof: the plaintiff, after establishing gross profits, wins by default if the defendant cannot prove offsets or deductions claimed. Looking at this tactical advantage, and looking further at the theory behind the accounting as a restitutionary remedy to deprive the defendant of profits wrongfully obtained, it is suggested that the entire burden of proof be placed on the defendant. This would reverse the current situation, where the plaintiff loses if gross profits cannot be established, and cast the risk of loss upon the defendant-wrongdoer.

Finally, a theoretical consideration of the accounting suggests that the remedy be expanded to include the situation where a non-fiduciary has profited from the wrongful use of another's property. The courts often grant an accounting in such cases, but there is some suggestion that it still applies only to fiduciaries. This point should be clarified, so that the same remedy is equally available in functionally identical situations.

**Indiana Law Journal**

Copyright (c) 1994 Trustees of **Indiana** University

**End of Document**

---

[98] Professor Palmer criticizes the case on this ground. 1 G. PALMER, *supra* note 66, § 1.5(c).